UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE NACLERIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DOCGO INC., STAN VASHOVSKY, ANTHONY CAPONE, ANDRE OBERHOLZER, NORMAN ROSENBERG, and LEE BIENSTOCK,<br><br>Defendants. | Case No.  1:23-cv-09476-KPF |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOE NACLERIO FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 6

I.    NACLERIO SHOULD BE APPOINTED LEAD PLAINTIFF ...................................... 6

    A.    Naclerio Is Willing to Serve as Class Representative ............................................ 7

    B.    Naclerio Has the "Largest Financial Interest" in the Action ................................ 7

    C.    Naclerio Otherwise Satisfies the Requirements of Rule 23 .................................. 8

    D.    Naclerio Will Fairly and Adequately Represent the Interests of the Class and
      Is Not Subject to Unique Defenses ......................................................................... 11

II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 11

CONCLUSION ...................................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................9

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) .........................................................................................10

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)............................8

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................10

*Fischler v. AMSouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997)....................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................10

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .........................8

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)....................................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ............................................................................................12

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................8, 9

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ....................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................9

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ...................................................................................9

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) .....................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) .................................................................................12

*Klein v. Altria Group, Inc. et al*,
    No. 3:20-cv-00075 (E.D. Va.) .....................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)....................................7, 8

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................12

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................................ *passim*

Joe Naclerio ("Naclerio") respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Naclerio as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities who purchased or otherwise acquired DocGo Inc. ("DocGo" or the "Company") securities between November 8, 2022 and September 17, 2023, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. DocGo investors, including Naclerio, incurred significant losses following the disclosure of Defendants' alleged fraud, which caused DocGo's share price to fall sharply, damaging Naclerio and other DocGo investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Naclerio purchased 500 shares of DocGo stock, expended $3,866 on his purchases, retained 500 of his shares of DocGo stock, and, as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $1,016 in connection with his Class Period transactions in DocGo securities. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Naclerio believes that he has the largest financial interest in the relief sought in this Action. Beyond his

1

considerable financial interest, Naclerio also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Naclerio has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Naclerio respectfully requests that the Court enter an Order appointing Naclerio as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, DocGo offers mobile health and medical transportation services for various health care providers in the U.S. and the United Kingdom.  In that capacity, the Company purports to leverage its proprietary technology platform to "provide [its] services in collaboration with leading healthcare organizations, via long-term relationships that are intended to drive meaningful revenue, help provide efficient and effective capital allocation and create low-risk opportunities for significant growth."

In November 2022, DocGo announced that Defendant Anthony Capone ("Capone") would be succeeding Defendant Stan Vashovsky ("Vashovsky") as Chief Executive Officer ("CEO") effective January 1, 2023.  In a press release detailing the leadership transition, Defendant Vashovsky was quoted stating, in relevant part, "[w]e are very fortunate to have

2

someone with [Defendant Capone's] skill set and track record to take the reigns as CEO next year, and I have every confidence in the continued growth and success of this company."

In spring 2023, several thousand international migrants arrived in New York City seeking, among other things, employment and/or asylum. In response, New York City Mayor Eric Adams ("Mayor Adams") announced a new policy calling for the city to relocate migrants outside of New York City's five boroughs. To oversee the relocation program, New York City awarded DocGo a no-bid $432 million contract (the "Relocation Contract") that took effect in early May 2023. The contract required DocGo to house migrants and provide them with services including case management, medical care, food, transportation, lodging, and round-the-clock security.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) DocGo's executive hiring processes were inadequate to fully review and vet the professional and academic backgrounds of job candidates; (ii) the foregoing increased the likelihood of disruptive executive turnover; (iii) contrary to its representations to investors, DocGo had overstated the efficacy of its mobile health and medical transportation services, the very services contemplated by the Relocation Contract; (iv) all of the foregoing, once revealed, was likely to subject DocGo to significant reputational and/or regulatory scrutiny that would negatively impact the Company's financial position and/or prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On July 30, 2023, the *New York Times* published an article reporting on a "rocky" start to DocGo's migrant relocation efforts in New York City. The *New York Times* article reported that

asylum-seekers have complained of threats and "broken promises" after New York City awarded DocGo the Relocation Contract. Specifically, the article stated that "[l]ocal authorities have expressed frustration at the lack of coordination between DocGo and agencies that could provide services to the migrants; local security guards hired by DocGo have repeatedly threatened the migrants; and finding steady work has been nearly impossible[.]" DocGo's $432 million contract nearly matches the Company's total 2022 revenue of roughly $441 million.

Following publication of the *New York Times* article, DocGo's stock price fell $0.53 per share, or 6.29%, to close at $7.89 per share on July 31, 2023.

Then, on August 22, 2023, the *Albany Times Union* published an article reporting that the New York Attorney General ("AG") had opened an investigation into DocGo and cautioned the Company to cease limiting migrants' speech or movement. Specifically, the AG's Civil Rights Bureau sent a letter sent to DocGo's attorneys detailing "serious concerns" it had regarding potential violations of state and federal laws in its handling of the Relocation Contract.

Then, on September 6, 2023, New York City Comptroller Brad Lander ("Comptroller Lander") announced that his office was declining to approve the Relocation Contract. Comptroller Lander noted in a letter to Department of Housing & Preservation Development commissioner Adolfo Carrión Jr. that his decision to reject the Relocation Contract was "due to numerous outstanding concerns" including "[i]nsufficient budget detail to justify over $432 million in contract value," "[i]nconclusive reasoning as to the selection of the vendor and contradictory statements about their fiscal ability to provide contracted services," "[i]nadequate vendor responsibility determination, contract oversight and subsequent questions about proper service delivery," and "[i]nadequate information regarding the selection of subcontractors."

Mayor Adams had the authority to proceed with the Relocation Contract over Comptroller Lander's objections and ultimately did so.

On this news, DocGo's stock price fell $0.61 per share, or 7.47%, to close at $7.55 per share on September 6, 2023.

Then, on September 14, 2023, the *Albany Times Union* published an article reporting that Defendant Capone had falsified portions of his professional biography regarding his educational history. On the following day, September 15, 2023, DocGo disclosed Capone's resignation as CEO in a filing with the U.S. Securities and Exchange Commission.

On this news, DocGo's stock price fell $0.76 per share, or 11.76%, to close at $5.70 per share on September 15, 2023.

Finally, on September 18, 2023, Comptroller Lander announced that his office was commencing a real-time audit of operations and invoices incurred by DocGo in connection with the Relocation Contract. Specifically, Comptroller Lander noted that his office has "serious concerns about the selection of this vendor and its performance of contract duties."

On this news, DocGo's stock price fell $0.41 per share, or 7.19%, to close at $5.29 per share on September 18, 2023.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Naclerio and other Class members have suffered significant losses and damages.

ARGUMENT

## I.    NACLERIO SHOULD BE APPOINTED LEAD PLAINTIFF

Naclerio should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

6

As set forth below, Naclerio satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.    Naclerio Is Willing to Serve as Class Representative

On October 27, 2023, Pomerantz, counsel for plaintiff in the Action caused the statutorily required Notice of this Action to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that this Action had been filed against DocGo and other defendants, and which advised investors in DocGo securities that they had until December 26, 2023—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. B.

Naclerio has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Naclerio satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.    Naclerio Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Naclerio has the largest financial interest of any DocGo investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during

the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Naclerio: (1) purchased 500 shares of DocGo stock; (2) expended $3,866 on his purchases; (3) retained 500 of his shares of DocGo stock; and (4) as a result of the disclosure of Defendants' alleged fraud, incurred losses of approximately $1,016 in connection with his Class Period transactions in DocGo securities.  *See* Lieberman Decl., Ex. A. To the extent that Naclerio possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.      Naclerio Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[1] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

In making its determination that a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification.  Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018) ); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296.  Here, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Naclerio.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v.*

9

*Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Naclerio's claims are typical of those of the Class. Naclerio alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning DocGo, or by omitting to state material facts necessary to make the statements they did make not misleading. Naclerio, like other Class members, purchased DocGo securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove DocGo's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Naclerio has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Naclerio is also represented by the Portnoy Law Firm in this Action. There is no evidence of antagonism or

conflict between Naclerio's interests and those of the Class. Moreover, Naclerio has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Naclerio has submitted a signed Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

> D.    Naclerio Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Naclerio as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Naclerio's ability and desire to fairly and adequately represent the Class has been discussed above. Naclerio is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Naclerio should be appointed Lead Plaintiff for the Class.

## II.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead

11

plaintiff's choice if necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Naclerio has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Naclerio's counsel, Pomerantz, has the skill, knowledge, expertise, and

12

experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Naclerio's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Naclerio respectfully requests that the Court issue an Order: (1) appointing Naclerio as Lead Plaintiff for the Class; and (2) approving Naclerio's selection of Pomerantz as Lead Counsel for the Class.

Dated: December 26, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Joe Naclerio and Proposed Lead
Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Joe Naclerio*

13