**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Tel 202.955.8500
gibsondunn.com

Jason J. Mendro
Direct: +1 202.887.3726
Fax: +1 202.530.9626
JMendro@gibsondunn.com

April 17, 2024

VIA ECF

The Honorable Katherine Polk Failla
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

Re:    *Naclerio v. DocGo Inc., et al.*, 1:23-cv-09476-KPF (S.D.N.Y.)

Dear Judge Failla:

We write on behalf of Defendants DocGo Inc. ("DocGo" or the "Company"), Stan Vashovsky, Andre Oberholzer, and Anthony Capone respectfully to request a pre-motion conference regarding Defendants' proposed motion to dismiss all claims in the Amended Complaint filed on March 18, 2024 (the "Complaint" or "AC").[1]  Pursuant to the Court's Individual Rules of Practice, and this Court's January 25, 2024 Order, below is a summary of the grounds that Defendants anticipate raising in their proposed motion, which Plaintiff would oppose. Defendants' analysis of the claims is ongoing, and they therefore reserve the right to raise additional grounds not summarized here in their proposed motion.

**Background**.  DocGo is an innovative healthcare delivery platform that includes mobile health services, virtual care management, and ambulance services.  With approximately 8 million patient interactions since 2015, DocGo's mission is to provide high quality, highly accessible healthcare for all.  DocGo has been a publicly-traded company since November 2021. Messrs. Vashovsky, Oberholzer, and Capone are current or former executives of DocGo.

**Claims**.  The Complaint asserts two counts under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), purportedly on behalf of a class of investors who purchased DocGo common stock from November 5, 2021, through September 15, 2023.  Each claim contends that Defendants misled investors through two categories of statements: (1) statements about the educational degrees earned by DocGo's former CEO, Anthony Capone (the "Education Statements"), *see* AC ¶¶ 69–85, 87, and (2) statements made in a live interview with an analyst on August 9, 2023, regarding DocGo's efforts to build its business by seeking to win a contract with U.S. Customs and Border Protection ("CBP") and helping asylum seekers register with the New York State Medicaid Managed Care Plan (the "Interview Statements"), *see* AC ¶¶ 89, 91.  Each count should be dismissed under Rule 12(b)(6) for failure to state a claim and for failure to satisfy the exacting pleading requirements of Rule 9(b)

---

[1] Plaintiff first filed the AC on March 18, 2024, but re-filed on March 20, 2024 to correct procedural deficiencies.  *See* Dkt. Nos. 41–43.  All references to the AC herein are to Docket Number 43.

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · Riyadh · San Francisco · Singapore · Washington, D.C.

GIBSON DUNN

The Honorable Katherine Polk Failla
April 17, 2024
Page 2

and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

As further summarized below, the claims should be dismissed because they fail to adequately allege any material misrepresentation or omission made with scienter that caused Plaintiff's economic loss. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). The Complaint also fails to state a claim against most Defendants because nearly all of the challenged statements were "made" by Mr. Capone. *None* were made by Mr. Vashovsky or Mr. Oberholzer, and there is no liability for Defendants who did not "make" a challenged statement. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Plaintiff's sporadic use of their word "scheme" does not change this. It neither asserts a separate "scheme" claim nor identifies conduct that could constitute a securities fraud scheme separate from the alleged misstatements. *See SEC v. Rio Tinto plc*, 41 F.4th 47, 54 (2d Cir. 2022) ("misstatements and omissions alone are not enough for scheme liability").

**Falsity.** No challenged statement was actionably false or misleading when made. The Education Statements, though incorrect, are inactionable because they were immaterial as a matter of law. Mr. Capone's "educational background could not be said to alter the 'total mix' of [the] information" that was "publicly available to reasonable investors." *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 658 (4th Cir. 2004).

The Complaint also fails to allege that any of the Interview Statements were false or misleading when made. Mr. Capone's statements regarding his expectations for an unawarded CBP contract, AC ¶¶ 89–90, were forward-looking and subject to protection by the PSLRA's safe harbor, because they were "identified [as forward-looking] and accompanied by meaningful cautionary language." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 210 (S.D.N.Y. 2022). The Complaint certainly does not allege that the statements were "made with actual knowledge that [they] w[ere] false or misleading." *Id.* (citation omitted); *see also* 15 U.S.C. § 78u–5(c). The Complaint does not even purport to plead any fact that Mr. Capone—or anyone at DocGo—knew at the time of the Interview Statements that was contrary to his projection that the contract was "worth o[ve]r $4 billion." AC ¶ 89 (alteration in original). Instead, Plaintiff argues that this statement was false or misleading based solely on cherry-picked portions of a *Times Union* article published a month later. AC ¶ 67. In fact, an analyst report *Plaintiff* cites, *see* AC ¶ 99, *agreed* that the CBP contract could be worth over $4 billion, *see* David Larsen, *DCGO, Buy, $13 PT*, BTIG Healthcare IT and Digital Health Equity Research, Sept. 19, 2023, at 1, 3.

Plaintiff's remaining argument regarding Mr. Capone's comments about "sign[ing] up" DocGo clients for Medicaid is a red herring. AC ¶¶ 91, 94. It is true, and Plaintiff does not dispute, that DocGo in fact *facilitates* patients' registrations with Medicaid and then "ha[s] the ability to become their primary care provider." AC ¶ 91. That was the clear meaning of Mr. Capone's statements during his live interview with an analyst. Plaintiff's claim appears to be that Mr. Capone should have been more precise in his extemporaneous comments

# GIBSON DUNN

The Honorable Katherine Polk Failla
April 17, 2024
Page 3

because DocGo does not literally "enroll" patients in Medicaid, but "Section 10–b is not concerned with such subtle disagreements over . . . semantics." *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 298 (S.D.N.Y. 2013).

**Scienter.** The Complaint makes no serious effort to "separately ple[a]d and individually support[] as to each defendant" "particularized facts [] giv[ing] rise to a 'strong' inference of . . . . an intent to 'deceive, manipulate, or defraud.'" *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *5–6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015). Other than the implicit allegation that Mr. Capone knew his own educational background, the Complaint is bereft of scienter allegations. There is not so much as a single conclusory assertion that any Defendant other than Mr. Capone was aware of any inaccuracy in the Education Statements or that any Defendant had reason to believe the Interview Statements were inaccurate when they were made.

**Loss Causation.** Plaintiff also has not adequately alleged (1) a corrective disclosure that revealed the falsity of each challenged statement and (2) a corresponding drop in stock price. *Lentell v. Merrill Lynch & Co.* 396 F.3d 161, 175 & n.4 (2d. Cir. 2005). For example, Plaintiff fails to plead that any drop in stock price occurred in connection with the public correction of Mr. Capone's academic credentials. Instead, Plaintiff points to a decline in the Company's stock price after DocGo announced Mr. Capone's resignation. And the alleged corrective disclosure with respect to the Interview Statements—a September 10, 2023 *Times Union* article—does not correct the statements; it merely criticizes them based on "already-public information." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *cf. In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270–71 (3d Cir. 2005) (holding that *The Wall Street Journal*'s analysis of public information is not a corrective disclosure).

**Section 20(a) Claim.** Because Plaintiff's predicate claims under Section 10(b) fail, its secondary claims under Section 20(a) necessarily fail as well. *See Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010) ("Any claim for 'control person' liability under § 20(a) of the Exchange Act must be predicated on a primary violation of securities law."). Moreover, Plaintiff fails to plead that any Defendant "was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).[2]

Defendants look forward to the pre-motion conference and to filing the motion to dismiss.

---

[2] "[A] party cannot be held liable for both a primary violation and as a control person." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009).

**GIBSON DUNN**

The Honorable Katherine Polk Failla
April 17, 2024
Page 4

Respectfully submitted,

Jason J. Mendro

*CC: All counsel of record (via ECF)*