**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

April 22, 2024

<u>VIA ECF</u>

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Naclerio v. DocGo Inc., et al.*, No. 1:23-cv-09476 (S.D.N.Y.)

Dear Judge Failla:

  We write on behalf of lead plaintiff Genesee County Employees' Retirement System ("Plaintiff"), in opposition to the April 17, 2024 pre-motion conference letter (ECF 44) ("Ltr.") of defendants DocGo Inc. ("DocGo" or the "Company"), Stan Vashovsky ("Vashovsky"), Andre Oberholzer ("Oberholzer"), and Anthony Capone ("Capone") (collectively, "Defendants") purporting to identify bases for dismissing the Amended Complaint for Violations of the Federal Securities Laws filed on March 20, 2024 (the "Complaint") (paragraphs of which are cited as "¶__" or "¶¶__") (ECF 43).

  Plaintiff brings claims under the Securities Exchange Act of 1934 on behalf of purchasers of DocGo common stock between November 5, 2021 and September 15, 2023 (the "Class Period"). ¶1. Plaintiff alleges that Defendants made false and misleading statements concerning: (1) Capone's educational background (¶¶31-47, 69-88); (2) the value of a contract with U.S. Customs and Border Protection ("CBP") (¶¶59-68, ¶¶89-90); and (3) DocGo's enrollment of migrants into Medicaid programs (¶¶60, 68, 91-92).

  On September 10, 2023, investors learned through a *Times Union* article that Capone's representations regarding the value of the CBP contract were false. ¶67. The same article reported Capone's statements about signing migrants onto Medicaid were false. ¶67. DocGo's stock declined 10.76% on this news. ¶95. On September 14, 2023, investors learned through another *Times Union* article that Capone had fabricated his educational credentials, which he had incessantly touted to investors, resulting in Capone's resignation the next day and a decline of more than 25% in DocGo's stock price. ¶98.

  ***Janus* and Scheme**. Defendants' *Janus* contentions fail. Vashovsky was the "maker," of the false proxy statements which bore his signature. ¶¶72, 84; *In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2012); *SEC v. Mercury Interactive*, LLC, 2011 WL 5871020, at *2 (N.D. Cal. Nov. 22, 2011). Oberholzer was the "maker" of the false Form 8-K he signed. ¶77; *SEC v. Carter*, 2011 WL 5980966, at *3 (N.D. Ill. Nov. 28, 2011). With respect to scheme liability, the Complaint does plead "something extra," *SEC v. Rio Tinto plc*, 41 F.4th 47, 54

4876-6918-9816.v1

200 31st Avenue North Nashville, TN 37203 Tel 615-244-2203 Fax 615-252-3798 rgrdlaw.com

Robbins Geller
Rudman & Dowd LLP

(2d Cir. 2022), including that Capone and Vashovsky separately misled DocGo's customers about Capone's credentials in order to secure competitive contracts.  ¶¶4, 36-37, 96.

**Falsity**.  Defendants concede, as they must, that the Complaint pleads falsity with respect to Capone's falsified credentials but wrongly contend such statements were immaterial as a matter of law.  The Court is well aware of the legal standard for pleading materiality.

> At the pleading stage, a plaintiff need not establish that each of the alleged misstatements or omissions "is [materially] misleading in and of itself"; rather, a plaintiff must only allege that "the defendants' representations, taken together and in context, would have misled a reasonable investor."  Because materiality is a mixed question of law and fact, "a complaint may not properly be dismissed on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  Making this determination is a fact-specific inquiry that "necessarily depends on all relevant circumstances," "judged according to an objective standard."

*In re Barclays PLC Sec. Litig*., 2024 WL 757385, at *10 (S.D.N.Y. Feb. 23, 2024) (alteration in original and internal citations omitted).

DocGo marketed itself as a technology-driven healthcare company that differentiated itself with a proprietary AI platform.  ¶¶31-34.  In order to bolster this narrative, Defendants fabricated Capone's master's degree in computational learning theory, a subset of AI and purportedly DocGo's greatest competitive strength.  ¶¶35-47.  Defendants' suggestion that Capone's falsified credentials – *which he highlighted on at least ten different occasions* – would be """"so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance""" is absurd, and courts in this District have held the exact opposite on weaker allegations.  *In re Initial Pub. Offering Sec. Litig*., 358 F. Supp. 2d 189, 211 (S.D.N.Y. 2004) (rejecting contention that a board member's falsified resume claiming a computer engineering degree was immaterial).  Even Defendants' own out-of-circuit authority does not support their contentions.  *Greenhouse v. MCG Cap. Corp*., 392 F.3d 650, 658 (4th Cir. 2004) ("[W]e do not hold as a matter of law that a key manager's education could never be material.").

Capone's CBP statement is not covered by the safe harbor because it was not identified as forward-looking, was not accompanied by *any* cautionary language, and was in any event not forward looking at all, but rather a "statement[] about present or historical facts, whose accuracy can be determined at the time [it was] made." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016).  And contrary to Defendants' contentions, it is not clear Capone was referring to facilitating Medicaid sign ups, and such an interpretation cannot be credited as true for purposes of ruling on a motion to dismiss.

**Scienter**.  Scienter is pled by a strong inference of "conscious misbehavior or recklessness." *Barclays*, 2024 WL 757385, at *16.  This can include allegations that defendants "'knew facts or

2

Robbins Geller
Rudman & Dowd LLP

had access to information suggesting that their public statements were not accurate[,] or failed to check information they had a duty to monitor.'" *Id.* Defendants do not dispute Capone had actual knowledge of his own credentials. Vashovsky and Oberholzer acted with at least recklessness by making (false) statements about Capone's education without bothering to check that the information was accurate. *See* ¶41. In a day and age where background checks are ubiquitous, the failure to check Capone's credentials before appointing him as CEO of a $700+ million public company and making (mis)representations regarding his qualifications is, at minimum, "'highly unreasonable, representing an extreme departure from the standards of ordinary care.'" *Barclays*, 2024 WL 757385, at *16. Finally, Capone is the only defendant accused of making misstatements regarding the CBP contract and DocGo's Medicaid enrollment (¶¶89-92), and the allegations are more than sufficient to establish Capone's motive, opportunity, and recklessness in light of the crisis DocGo was facing at that time and the magnitude of the opportunity about which he dissembled. ¶¶62-63.

**Loss Causation**. "'A plaintiff's burden to plead loss causation is "not a heavy one."'" *Saskatchewan Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 2024 WL 775195, at *32 (S.D.N.Y. Feb. 26, 2024). "[T]o establish loss causation, 'a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) (ellipsis in original). The Complaint alleges that: (i) on September 14, the *Times Union* revealed Capone had fabricated his credentials; and (ii) on September 15, DocGo announced Capone's resignation, and the *Times Union* published an additional article regarding Capone's fabrication and resignation. ¶¶96-97. DocGo's stock declined by more than 25% between September 14 and September 18. ¶98. It is not the case that "Plaintiff points to a decline in the Company's stock price after DocGo announced Mr. Capone's resignation." Ltr. at 3. Rather, the decline encompasses both the revelation of his misconduct and his resignation. *Id.* Moreover, Defendants' distinction is irrelevant because Capone's resignation was connected to, and a foreseeable consequence of, the revelation of the alleged misstatements. *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95-99 (2d Cir. 2001) (allegations that the total collapse of defendant's business was a foreseeable consequence of defendant's misrepresentations regarding his background were sufficient to plead loss causation). With respect to the Analyst Day misstatements, the *Times Union* article does not merely "criticize" Capone's statements based on "'already-public information.'" Ltr. at 3. Indeed, the article is titled "***DocGo CEO's comments on migrant contracts appear inaccurate***," and it quoted both a CBP spokesman and "multiple sources familiar with the bidding process" to support its reporting. ¶94. In any case, Defendants' reliance on *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010), is unavailing as it "concerned a motion for summary judgment. On a motion to dismiss, all that is required is 'some indication of the loss and the causal connection that the plaintiff has in mind.'" *In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 343 (S.D.N.Y. 2015).

**Section 20(a) Claim**. Because Plaintiff's §10(b) claims are sufficiently pled, its §20(a) claims should also be upheld. Further, "[w]hile a party cannot be held liable for both a primary violation and as a control person, alternative theories of liability are permissible at the pleading stage." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 241 (S.D.N.Y. 2009).

3

**Robbins Geller
Rudman & Dowd** LLP

Respectfully submitted,

CHRISTOPHER M. WOOD

CMW:drd

cc:    All counsel of record (via ECF)

4