UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| JOE NACLERIO, Individually and on Behalf of All Others Similarly Situated, | x : : : : : | |
| Plaintiff, | : : | No. 1:23-cv-09476-KPF |
| v. | : : | |
| DOCGO INC., STAN VASHOVSKY, ANTHONY CAPONE, and ANDRE OBERHOLZER, | : : : : | |
| Defendants. | : x | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### DEFENDANTS DOCGO INC., VASHOVSKY, AND OBERHOLZER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

   I.  Allegations of Fact. .................................................................................................. 3

   II.  Procedural History. .................................................................................................. 6

LEGAL STANDARDS ........................................................................................................... 7

ARGUMENT ........................................................................................................................... 7

   I.  The Court Should Dismiss All Challenges To Statements Defendants Did Not Make (Count I). ........................................................................................................... 8

      A.  Messrs. Vashovsky And Oberholzer Should Be Dismissed Because They Did Not Make Any Challenged Statement. ................................................................... 8

      B.  The Court Should Dismiss All Claims Before April 29, 2022. ................................ 10

   II.  The Complaint Fails To Plead Any Actionable Misstatement (Count I). ......................... 11

      A.  The Education Statements Are Inactionable. ................................................................ 11

      B.  None Of The Interview Statements Were False Or Misleading When Made. ............. 13

      C.  The Interview Statements Concerning The As-Then Unawarded CBP Contract Are Protected By The PSLRA's Safe Harbor For Forward-Looking Statements. ............ 17

   III.  Plaintiff Fails To Plead Facts Raising A Strong Inference Of Scienter (Count I). ........... 19

      A.  Plaintiff Fails To Plead That DocGo, Mr. Vashovsky, Or Mr. Oberholzer Had Any Idea That The Education Statements Were Inaccurate. ............................................. 21

      B.  Plaintiff Fails To Plead Scienter For The Interview Statements. ................................ 23

   IV.  Plaintiff Fails To Plead A Section 20(a) Claim (Count II). ............................................. 24

CONCLUSION ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)........................................................................................24

*Barrett v. PJT Partners Inc.*,
   2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)..........................................................23

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..............................................................................................12, 13

*Bratusov v. Comscore, Inc.*,
   2020 WL 3447989 (S.D.N.Y. June 24, 2020) ...........................................12, 15, 23

*In re CarLotz, Inc. Sec. Litig.*,
   667 F. Supp. 3d 71 (S.D.N.Y. 2023)........................................................................11

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   957 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................................16

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) ...................................................................9

*In re Dynagas LNG Partners LP Sec. Litig.*,
   504 F. Supp. 3d 289 (S.D.N.Y. 2020).....................................................................18

*Fid. Bank, Nat'l Ass'n v. Avrutick*,
   740 F. Supp. 222 (S.D.N.Y. 1990)............................................................................22

*In re Gen. Elec. Co. Sec. Litig.*,
   857 F. Supp. 2d 367 (S.D.N.Y. 2012).....................................................................15

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010)......................................................................18

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................15

*Glazer v. Formica Corp.*,
   964 F.2d 149 (2d Cir. 1992).......................................................................................12

*Gluck v. Hecla Mining Co.*,
   657 F. Supp. 3d 471 (S.D.N.Y. 2023)......................................................................17

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020)................................................................18, 19

*Greenhouse v. MCG Cap. Corp.*,
    392 F.3d 650 (4th Cir. 2004) ......................................................................12, 13, 16

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)........................................................................................7

*Inst. Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)....................................................................................18

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ........................................................25

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011).........................................................................................2, 7, 8, 9

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..............................................................................20, 24

*Kalnit v. Eichler*,
    85 F. Supp. 2d 232 (S.D.N.Y. 1999)......................................................................13

*Levy v. Gutierrez*,
    2017 WL 2191592 (D.N.H. May 4, 2017)................................................................9

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)......................................................................11

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)................................................................14, 20

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011).....................................................................................................7

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002)......................................................................7

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
    54 F.4th 82 (2d Cir. 2022) ......................................................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006).....................................................................................................7

*In re Neustar Sec. Litig.*,
    83 F. Supp. 3d 671 (E.D. Va. 2015) ................................................................15, 17

*New Equity Sec. Holders Comm. for Golden Gulf, Ltd. v. Phillips*,
    97 B.R. 492 (E.D. Ark. 1989)................................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................11, 20, 24

iii

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
    369 F.3d 27 (2d Cir. 2004).................................................................................................10

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)..............................................................................................24

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
    548 F. App'x 16 (2d Cir. 2013) .........................................................................................17

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
    898 F. Supp. 2d 673 (S.D.N.Y. 2012).................................................................................14

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013).................................................................................................12

*Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*,
    665 F. Supp. 3d 522 (S.D.N.Y. 2023).................................................................................18

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..............................................................................................15

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009).............................................................................................20, 24

*S.S. Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*,
    --- F. Supp. 3d ----, 2023 WL 8287681 (S.D.N.Y. Nov. 30, 2023) .........................................19

*SEC v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) ..............................................................................................9, 10

*In re ShengdaTech, Inc. Sec. Litig.*,
    2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014).......................................................................25

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)..............................................................................................21

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020).................................................................................21

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010)........................................................................................18, 19, 24

*In re Stemline Therapeutics, Inc. Sec. Litig.*,
    313 F. Supp. 3d 543 (S.D.N.Y. 2018).................................................................................15

*Stoneridge Inv. Partners, LLC v. Sci.-Atl., Inc.*,
    552 U.S. 148 (2008).......................................................................................................7, 11

*Stream SICAV v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013).................................................................................23

*In re SunEdison, Inc. Sec. Litig.*,
    300 F. Supp. 3d 444 (S.D.N.Y. 2018).................................................................................25

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008)......................................................................................20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).............................................................................................20, 23

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)......................................................................18

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020)..........................................................14, 20, 21, 24

*Weintraub v. Texasgulf Inc.*,
    564 F. Supp. 1466 (S.D.N.Y. 1983)..........................................................................22

*In re WRT Energy Sec. Litig.*,
    1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) ...........................................................22

*Xu v. Gridsum Holding Inc.*,
    624 F. Supp. 3d 352 (S.D.N.Y. 2022)..................................................................7, 8, 9

## Statutes

15 U.S.C. § 78j(b) .......................................................................................................10

15 U.S.C. § 78u–4..................................................................................................7, 11, 20

15 U.S.C. § 78u-5 .......................................................................................................17

## Other Authorities

Form 8-K, DocGo Inc. (Mar. 8, 2024), https://ir.docgo.com/static-files/2af2f58a-
    ef8b-4c89-b41a-f36a04b91dc5 .............................................................................4

Defendants DocGo Inc. ("DocGo" or the "Company"), Stan Vashovsky, and Andre Oberholzer, through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").    Defendant Anthony Capone joins Sections I(B), II, III(B), and IV of this Memorandum, as indicated in his separate motion to dismiss.

## INTRODUCTION

This is a proposed class action lawsuit that wrongly accuses DocGo and its officers of federal securities fraud based on statements a single executive, Anthony Capone, made at various times about his schooling and during one unscripted interview about DocGo's business-development efforts.  These accusations should be dismissed on several grounds.  Most glaringly, the Complaint fails to plead that Defendants made any statement that is actionable under the securities laws.  Most of the Defendants had no role in making the challenged statements, and Plaintiff's claims lack merit in any event:  Mr. Capone's statements about his education are immaterial as a matter of law, and Plaintiff fails to plead that any other statements were incorrect. Moreover, the Complaint falls far short of meeting its burden to plead with factual particularity that Defendants acted with scienter—the state of mind required for liability.  Indeed, there are no factual allegations whatsoever that the Defendants other than Mr. Capone had any idea that he misspoke about his education or that any Defendant doubted that his statements during the interview were entirely correct.  These pleading defects compel dismissal.

DocGo is an innovative mobile healthcare company that provided vital healthcare services in New York throughout the COVID-19 pandemic.  Plaintiff filed this securities fraud action against DocGo and Messrs. Capone, Vashovsky, and Oberholzer (collectively, "Defendants"), challenging two categories of statements made by Mr. Capone, DocGo's former CEO.  First,

Plaintiff challenges statements Mr. Capone made regarding his personal educational credentials (the "Education Statements").  Mr. Capone said on various occasions that he earned a graduate degree from Clarkson University, which was not true.  Second, Plaintiff challenges statements Mr. Capone made during a live fireside chat with a securities analyst about DocGo's efforts to develop business (the "Interview Statements").  Plaintiff claims that Mr. Capone's Interview Statements falsely estimated the future value of a contract that DocGo was bidding for (but had not won).  Plaintiff also argues that Mr. Capone falsely stated that DocGo could earn future business from patients it served by "signing them up" for Medicaid coverage, when in fact it helped them sign up through a third-party insurer.  These claims fail for several reasons.

*First*, a defendant can be liable for securities fraud only if he or she *made* a fraudulent statement.  *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141–42 (2011).  But Messrs. Vashovsky and Oberholzer did not make any challenged statement, and DocGo did not make any challenged statement before April 29, 2022, when it first published information about Mr. Capone's educational background in a proxy statement.  Even Mr. Capone's statements before then are inactionable because they had nothing to do with the purchase or sale of securities.

*Second*, the Complaint fails to plead that Defendants made any statement that was materially false or misleading.  The Education Statements are immaterial because no reasonable investor would have decided to invest in DocGo based on Mr. Capone's degrees.  And brushing aside the Complaint's rhetoric, there are no specific factual allegations pleading that the Interview Statements were false.  The Complaint does not plead a single fact to suggest that Mr. Capone doubted that a contract DocGo hoped to win could be worth $4 billion over five years.  In fact, an analyst report Plaintiff cites contained the same valuation.  Moreover, Mr. Capone's predictive estimate falls squarely within the protection of a safe harbor that the PSLRA provides for forward-

2

looking statements. Plaintiff's accusations about Mr. Capone's other Interview Statements are equally flawed. They misinterpret Mr. Capone to have said that DocGo itself literally enrolls people in Medicaid, but no reasonable investor could have thought that. DocGo is a healthcare provider, not an insurance company, and people can only enroll in New York Medicaid coverage through the state or an authorized managed care organization—which is why Mr. Capone accurately stated that patients would sign up "through United Healthcare." Although a local newspaper was unreasonably confused about this point, the Complaint pleads that DocGo candidly corrected the newspaper's misunderstanding. And Plaintiff does not deny that DocGo's former patients *could* become patients in the long term after enrolling in Medicaid. That was Mr. Capone's point, and Plaintiff does not dispute it.

*Third*, Plaintiff fails to plead particularized facts supporting a strong inference of scienter. Apart from the obvious implication that Mr. Capone knew where he went to school, the Complaint lacks any factual scienter allegations at all—a stark and fatal pleading defect.

*Finally*, because Plaintiff fails to state a claim for a primary violation of Section 10(b), its secondary claim for control person liability under Section 20(a) necessarily fails.

The Court should dismiss the Complaint with prejudice.

## BACKGROUND

### I.      Allegations of Fact.

DocGo is a "leading provider of mobile healthcare services." ¶ 25.[1] The Company "provides healthcare transportation and mobile services for hospitals and health systems, health plans, governments, and municipalities in the United States and the United Kingdom." *Id*. The

---

[1] Citations to the Complaint are styled as "¶ [paragraph number]." Citations to "Ex. [exhibit number]" are to the Exhibits attached to the Declaration of Jason J. Mendro, submitted herewith. As explained in the Request for Judicial Notice submitted herewith, these Exhibits are either incorporated by reference or subject to judicial notice.

Company's stock began trading publicly on November 5, 2021, following the merger of medical transportation provider Ambulnz, Inc. ("Ambulnz"), until then a private company, with the special purpose acquisition company Motion Acquisition Corp.  ¶¶ 26–29.

Before the merger, Messrs. Vashovsky, Capone, and Oberholzer were executives at Ambulnz.  Mr. Oberholzer now serves as DocGo's Executive Vice President of Strategy, and Mr. Vashovsky served as DocGo's CEO until January 2023 and as the Chairman of its Board of Directors (until March 2024).[2]  ¶¶ 16–18, 30.

Before the merger creating DocGo, Mr. Capone served as the Chief Technology Officer and Chief Product Officer at Ambulnz.  ¶ 17.  Since before DocGo existed, Mr. Capone claimed to have earned a "Masters of Computational Learning Theory from Clarkson University" and an undergraduate degree, with honors, from the State University of New York at Potsdam. ¶ 37.  For example, he included those credentials on a résumé submitted with an Ambulnz business proposal in June 2021.  *Id*.  He made similar representations in a podcast published on YouTube in September 2021.  ¶ 70.  When DocGo became a public company in November 2021, Mr. Capone transitioned into the role of its President, and in January 2023, he became its CEO.  ¶ 17.

Throughout the COVID-19 pandemic, DocGo provided critical COVID-19 testing and other related services.  ¶ 50.  "For example, during the pandemic, municipalities and municipal healthcare systems such as New York City and NYC Health + Hospitals engaged DocGo to provide COVID-19 testing and vaccinations for the homeless population."  *Id*.

As the pandemic waned, DocGo pursued other government contract opportunities.  ¶ 50. For example, in spring 2023, DocGo was awarded a $432 million no-bid contract with the New

---

[2] Mr. Vashovsky retired and stepped down as a director and Chairman of the Board, effective as of March 31, 2024.  *See* Form 8-K, DocGo Inc. (Mar. 8, 2024), https://ir.docgo.com/static-files/2af2f58a-ef8b-4c89-b41a-f36a04b91dc5.

York City Department of Housing Preservation and Development (the "HPD") that took effect in May 2023 and "required DocGo to house migrants and provide them with services including case management, medical care, food, transportation, lodging, and around-the-clock security." ¶ 55.

On August 9, 2023, Mr. Capone participated in a live interview with a securities analyst at the Canaccord Genuity Growth Conference about DocGo's performance and future plans. ¶ 59. Mr. Capone explained that DocGo was seeking new opportunities, including bidding on a contract with U.S. Customs and Border Protection ("CBP") to provide medical care for asylum seekers at the southern border. He estimated that the CBP contract could be worth $4 billion over five years. *Id*. Mr. Capone also observed that DocGo could leverage the credibility it earned from working on the HPD contract in its bid for the CBP contract. ¶¶ 59, 65, 89. Mr. Capone further explained that DocGo's work allowed it to build relationships with migrants who could become long-term patients, even after the HPD contract concluded, as they obtained healthcare coverage from "New York State Medicaid through United Healthcare": "[B]ecause we sign them up, now we have the ability to become their primary care provider and treat the preventable diseases on a long-term basis . . . . So even post this municipal [HPD] contract or this person's existence in that municipal contract, we can see long term revenue streams that come from it." ¶¶ 60–61.

On September 10, 2023, Albany's *Times Union* published an article that was highly critical of DocGo. The article cited reports that the proposed CBP contract—which DocGo never secured or claimed to have secured—would be worth much less than $4 billion. ¶ 67. The article acknowledged, however, that the value of the contract was evolving and that the bidding process was still ongoing. *Id*. The article also criticized Mr. Capone's statement that DocGo had "signed up" asylum seekers for "New York State Medicaid through United Healthcare," since DocGo does not itself directly enroll people in Medicare coverage. ¶ 68. The *Times Union* confirmed, however,

that it spoke with a DocGo spokesperson who clarified that DocGo "'does not enroll anyone in Medicaid programs.'"  *Id.*; *see also* ¶ 94.  DocGo's stock price declined on the next trading day. ¶ 95 (citing the lowest intraday trading price, instead of the closing price).

On September 14, 2023, the *Times Union* published another unfavorable story, this time reporting that Mr. Capone had misstated his educational background.  ¶¶ 45, 96.  Mr. Capone told the reporter that he takes "full responsibility" for his statements.  ¶ 45.  Mr. Capone resigned from DocGo the next day, on September 15.  ¶¶ 47, 97.  On the following trading day, DocGo's stock price declined again.  ¶ 98 (citing the lowest intraday trading price, instead of the closing price).

## II.    Procedural History.

Lawsuits followed almost immediately.  On October 27, 2023, a stockholder filed a putative securities class action.  On January 17, 2024, the Court appointed Lead Plaintiff Genesee County Employees' Retirement System ("Plaintiff") as the lead plaintiff under the PSLRA, and Plaintiff filed the operative Amended Complaint on March 18, 2024.

The Complaint asserts claims for securities fraud and controlling person liability under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), purportedly on behalf of a class of investors who purchased DocGo common stock from the very first day DocGo became a public company, November 5, 2021, through September 15, 2023 (the "Class Period").  The Complaint contends that Mr. Capone's statements regarding his educational background and certain statements made during his August 9, 2023 interview with Canaccord fraudulently inflated DocGo's stock price.  ¶¶ 4, 5.

The Complaint does not allege that anyone other than Mr. Capone had reason to believe the Education Statements were incorrect.  It does not plead any facts to allege that Mr. Capone or other Defendants believed that the Interview Statements were false when they were made.  And it

6

acknowledges that a Company spokesperson corrected a misunderstanding on the part of the *Times Union* reporter promptly when asked about the Interview Statements. ¶¶ 68, 94.

## LEGAL STANDARDS

Under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations, but "mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Neither do allegations that are contradicted by documents incorporated by reference or "that are integral to, or explicitly referenced in, the pleading." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *see also Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 359 (S.D.N.Y. 2022).

In 1995, Congress enacted the PSLRA to curb the abuses associated with vexatious securities fraud lawsuits. Among other things, the PSLRA "imposes heightened pleading requirements." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Together, Rule 9(b) and the PSLRA require plaintiffs to plead securities fraud claims with factual particularity, as further discussed below. *See infra* Sections II, III; 15 U.S.C. § 78u-4(b).

## ARGUMENT

To state a Section 10(b) claim, a plaintiff must sufficiently plead: "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atl., Inc.*, 552 U.S. 148, 157 (2008)).

The Court should dismiss the Section 10(b) claims for several, independent reasons. First, most of the Defendants are not alleged to have made the statements Plaintiff challenges. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Second, the Complaint fails to

plead with factual particularity that any Defendant made any material misrepresentation or omission that is actionable under the securities laws.  Third, the Complaint fails to plead scienter as to Defendants DocGo, Mr. Vashovsky, and Mr. Oberholzer as to any statement, and it also fails to plead scienter as to Mr. Capone for the Interview Statements.

Because the Complaint fails to plead a primary violation of Section 10(b), it necessarily fails to plead secondary liability under Section 20(a).

## I.     The Court Should Dismiss All Challenges To Statements Defendants Did Not Make (Count I).

Only the "maker" of a statement—i.e., "the person or entity with ultimate authority over the statement"—can be held liable under Section 10(b).  *Janus*, 564 U.S. at 142; *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 359 (S.D.N.Y. 2022).  Most of the Complaint should dismissed on this ground alone.

### A.     Messrs. Vashovsky And Oberholzer Should Be Dismissed Because They Did Not Make Any Challenged Statement.

The Section 10(b) claims against Messrs. Vashovsky and Oberholzer fail because neither of them made *any* challenged statement.  Plaintiff does not even attempt to claim that they made the Interview Statements; Plaintiff conceded in its pre-conference letter that Mr. Capone alone made those statements.  Dkt. 47 at 3.  Plaintiff asserts that Mr. Vashovsky "represented" that "Mr. Capone earned his undergraduate degree from the State University of New York College at Potsdam and his M.S. in Computer Science from Clarkson University" because that statement appeared in DocGo's April 29, 2022 and April 26, 2023 proxy statements, and Mr. Vashovsky signed the Notices of the Annual Meeting of Stockholders that attached those proxy statements. ¶¶ 72, 84.  Plaintiff asserts that Mr. Oberholzer also made the same "represent[ation]" because that statement appeared in a current report DocGo filed on Form 8-K on November 7, 2022, which Mr. Oberholzer signed.  ¶ 77.

These attempts to put words into Messrs. Vashovsky's and Oberholzer's mouths lack merit. Mr. Vashovsky's signatures on the Notices of the Annual Meeting of Stockholders were "purely ministerial," *Xu*, 624 F. Supp. 3d at 363, and the Notices themselves did not even contain the Education Statements.  Merely signing the Notices did not transform Mr. Vashovsky into the author of Mr. Capone's résumé.  *Id.* (CFO was not the "maker" of alleged misstatements in a press release simply because he signed the Form 6-K that attached the challenge release).

Mr. Oberholzer likewise did not "make" the Education Statements simply because he signed DocGo's November 7, 2022 current report on Form 8-K.  A "signer of Forms 8-K may be liable for misstatements contained in attachments to the Forms 8-K when they allegedly have *at least some authority* over the misleading statements."  *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *14, *16 (D.N.J. June 5, 2020) (emphasis added).  But if the signer lacks "'ultimate authority' over the alleged misstatements," he or she cannot be liable.  *Id*. at *16 (dismissing claims against Chief Legal and Corporate Affairs Officer); *accord Levy v. Gutierrez*, 2017 WL 2191592, at *12 (D.N.H. May 4, 2017) (general counsel who signed the Forms 8-K not maker of quoted misstatements contained in the attached press releases because the releases "contain[ed] statements by other . . . officers, not [the general counsel] himself").

Here, Mr. Oberholzer is not alleged to have had "ultimate authority" over Mr. Capone's statements about his personal educational history; at most, Mr. Oberholzer was "publish[ing] [the] statement on behalf of" Mr. Capone, which is not a basis for Section 10(b) liability.  *Xu*, 624 F. Supp. 3d at 363 (quoting *Janus*, 564 U.S. at 142).[3]

---

[3] Any argument that Messrs. Vashovsky and Oberholzer can be held liable for the alleged misstatements under the group-pleading doctrine is foreclosed because "after *Janus*, the group-pleading doctrine is no longer viable." *Xu*, 624 F. Supp. 3d at 363–64.

Plaintiff's effort to rebrand its claims against Messrs. Vashovsky and Oberholzer a "scheme" claim is a transparent attempt "to evade the pleading requirements imposed in misrepresentation cases" and the holding of *Janus*. *SEC v. Rio Tinto plc*, 41 F.4th 47, 55 (2d Cir. 2022) (quotation marks omitted). "[M]isstatements and omissions alone are not enough for scheme liability"; rather, a plaintiff must allege "*something extra* that makes a violation a scheme." *Id.* at 54 (emphasis added). But Plaintiff does nothing more to support its claim than mechanically recite the word "scheme." ¶ 24 ("Individual Defendants are liable as participants in a fraudulent scheme"). Plaintiff pleads no factual allegations that could support scheme liability.

The Court should dismiss Count I as to Messrs. Vashovsky and Oberholzer.

## B. The Court Should Dismiss All Claims Before April 29, 2022.

The Complaint also fails to allege that DocGo made any false statement before April 29, 2022, when it issued a proxy statement including information about Mr. Capone's educational background. ¶ 72. The statements Mr. Capone allegedly made in a proposal and a podcast in June and September 2021, ¶¶ 37, 70, occurred before the alleged class period, when DocGo did not yet exist. The Company could not possibly have "made" those statements under *Janus*.

Furthermore, Section 10(b) claims can only be predicated on misrepresentations or omissions made "in connection with the purchase or sale" of securities. *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (quoting 15 U.S.C. § 78j(b)). The statements Mr. Capone made in June and September 2021 obviously were not made in connection with the purchase or sale of DocGo securities because DocGo securities did not exist at those times, so those statements are not actionable against any Defendant. That Mr. Capone was then-president of Ambulnz, which later merged into DocGo as part of a de-SPAC transaction, does not alter this analysis. Courts consistently dismiss statements made about a private company before a de-SPAC transaction. *See, e.g.*, *Menora Mivtachim Ins. Ltd. v. Frutarom*

*Indus. Ltd.*, 54 F.4th 82, 89 (2d Cir. 2022) (holding in the pre-merger context that because plaintiffs "did not purchase the securities about which misstatements were made, . . . they did not have standing to sue under Section 10(b) or Rule 10b-5"); *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 78–79 (S.D.N.Y. 2023) (applying same in context of de-SPAC transaction).

In sum, all claims before April 29, 2022 must be dismissed.

**II.     The Complaint Fails To Plead Any Actionable Misstatement (Count I).**

Plaintiff fails to plead "a material misrepresentation or omission by the defendant." *Stoneridge Inv. Partners, LLC*, 552 U.S. at 157.  Under Federal Rule of Civil Procedure 9(b), "[a] complaint making" allegations of fraud "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quotation marks omitted).  The PSLRA further requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id*. at 307 (emphasis omitted) (quoting 15 U.S.C. § 78u–4(b)(1)).

Plaintiff fails to meet these standards.  First, the Education Statements are immaterial as a matter of law.  Second, Plaintiff does not allege that the Interview Statements were false when made, and some of them are protected by the PSLRA's safe harbor for forward-looking statements.

**A.     The Education Statements Are Inactionable.**

Although Mr. Capone inaccurately described his personal education, "[t]he securities laws . . . 'decidedly do *not* prohibit *any* misrepresentation—no matter how willful, objectionable, or flatly false—of *im*material facts, even if it induces reactions from investors that, in hindsight or otherwise, make the misrepresentation appear material.'"  *Lopez v. Ctpartners Exec. Search Inc.*,

11

173 F. Supp. 3d 12, 29–30 (S.D.N.Y. 2016) (quoting *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004)); *see also Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992) ("It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant.") (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)).  Rather, a misstatement is actionable only if it is material, meaning there is a "substantial likelihood that" the misstatement's "disclosure . . . would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231–32; *Bratusov v. Comscore, Inc.*, 2020 WL 3447989, at *7 (S.D.N.Y. June 24, 2020).

A reasonable investor would not view the details of Mr. Capone's educational background as "significantly alter[ing] the total mix of information already made available" about DocGo, so Plaintiff fails to clear the "materiality hurdle," and its claims challenging the Education Statements should be dismissed. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (alteration and emphasis omitted).

Other courts considering analogous allegations have confirmed that inaccuracies regarding an executive's educational history are immaterial.  In *Greenhouse*, the Fourth Circuit held that it was "not material" that an officer represented "that he was awarded a college degree when, in truth, he never obtained one" because "a reasonable investor would likely value information" like the officer's "years of management in financial institutions," "other board members'" experience, and the company's financials.  392 F.3d at 653, 656–58; *see also New Equity Sec. Holders Comm. for Golden Gulf, Ltd. v. Phillips*, 97 B.R. 492, 497 (E.D. Ark. 1989) (misrepresenting degree was "not . . . a significant factor to a reasonable investor when weighing the soundness of the entire investment").  The *Greenhouse* court reasoned that "if one imagine[d] a parallel universe of affairs where the one and only thing different was that [the company's] filings made no mention of [the

12

officer's] education (or, instead, said simply that he 'attended' Syracuse or 'studied economics' there) . . . it [would be] incredible to believe that [the company's] stock would be worth even a penny more to a reasonable investor." 392 F.3d at 661.

Just as in *Greenhouse*, it would be incredible to assume that DocGo's stock price would have been impacted if Mr. Capone had never made the Education Statements. These details about a single executive's educational history simply did not "significantly alter[] the 'total mix' of information made available" to a reasonable investor about DocGo, especially when considered in light of the other truthful information about Mr. Capone and DocGo's business. *Basic*, 485 U.S. at 232. "For example, a reasonable investor would likely value information found in [DocGo's] publicly filed statements and elsewhere including: [Mr. Capone's] years of management in [healthcare and technology] institutions; the other board members' and key managers' similar track record; the years of [DocGo's] earnings statements . . . ; the firm's debt/equity ratio; the general costs of capital and macroeconomic trends; the strength of [DocGo's] potential competitors; etc." *Greenhouse*, 392 F.3d at 658.[4]

"It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant." *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 238 (S.D.N.Y. 1999). Because the Education Statements were immaterial, the claims challenging them should be dismissed.

## B.    None Of The Interview Statements Were False Or Misleading When Made.

The only other statements that Plaintiff challenges were those made by Mr. Capone during a live, unscripted fireside chat during the Canaccord Genuity Growth Conference on August 9, 2023. These Interview Statements were not false when made. "[W]ithout contemporaneous falsity,

---

[4] Tellingly, Plaintiff fails to plead facts showing that DocGo's stock price declined promptly in response to news about Mr. Capone's education. Plaintiff instead strains to allege that the stock price dropped over several days, during which there was other confounding news, including about Mr. Capone's resignation. *See* ¶¶ 9–10, 97–98.

13

there can be no fraud." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (emphasis omitted); *see also In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 247 (S.D.N.Y. 2020).

*CBP Statements.* Mr. Capone said that DocGo was bidding for a "five-year contract worth over $4 billion," about "$1 billion a year," after earning credibility from its work on New York City asylum-seeking programs. ¶ 89 (alteration omitted). Plaintiff claims this statement is false for two reasons: (1) there were published criticisms of Mr. Capone's valuation; and (2) Mr. Capone "had no reasonable basis to believe" that the New York contracts gave DocGo "credibility to win the" CBP contract. ¶ 90. This is classic and impermissible fraud by hindsight. *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 690 (S.D.N.Y. 2012) (explaining that a change in circumstances "is not sufficient to show that the statements" made "months earlier were false when [defendant] made them").

Plaintiff has not pleaded a single fact to suggest that at the time Mr. Capone made this statement the contract was confirmed to be valued at less than $4 billion. To the contrary, Plaintiff expressly relies on an analyst report that observed that the CBP opportunity "could turn into ~$4B over ~5+ years." Ex. 2 at 1; *see also* Ex. 3 at 1 (describing the contract as "multi-billion"). Moreover, the same critical newspaper article that is the foundation for Plaintiff's claim makes clear that the future value of the contract was in flux. *See* ¶ 67 (reporting that "multiple sources familiar with the ongoing bidding process" stated that "the border medical services contract is valued at $2 billion, up from its initial, but later contested, award to a company in October for $1 billion"); *see also* Ex. 4.

Plaintiff also baselessly maligns Mr. Capone for saying that DocGo's work on the HPD contract gave it "'all of the credibility to win the border patrol RFP, which [DocGo] [had] been

14

working on for seven to eight months.'" ¶¶ 89, 90(b).  But Plaintiff does not dispute that DocGo had in fact been working on that RFP for months when Mr. Capone said it had.  ¶ 89.  And Mr. Capone's expressions of optimism about DocGo's credibility are "generalized aspirational statements" that constitute "statements of puffery or opinion."  *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 402 (S.D.N.Y. 2012).  Such statements are inactionable as a matter of law. *See id.*; *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (puffery is inactionable); *Bratusov*, 2020 WL 3447989, at *9 (same); *In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 680, 683 (E.D. Va. 2015) (dismissing as puffery statements that the company "continued to position" itself for a "successful" government contract renewal, and that its "capabilities and outstanding track record set" it "apart from other bidders").

Aside from being a matter of opinion, DocGo's credibility—on Plaintiff's theory—was a matter of public record.  Plaintiff claims that Mr. Capone "did not believe" DocGo had credibility because it was subject to "intense public scrutiny." ¶ 90(b).  But Mr. Capone could not have misled investors by expressing an opinion that was supposedly inconsistent with *public* scrutiny observable by anyone.  *See, e.g.*, *In re Stemline Therapeutics, Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 550 (S.D.N.Y. 2018) (opinion statements were inactionable where a reasonable investor would have known of background facts that opinion statements supposedly contradicted); *cf. Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) ("[P]laintiffs cannot rely on information generally known or available to the public to support . . . circumstantial scienter allegations.").

***Medicaid Statements.***  Plaintiff also attacks Mr. Capone's statement that DocGo had "signed up" migrants for "New York State Medicaid through United Healthcare," arguing that DocGo did not literally "enroll anyone . . . in New York State Medicaid programs" itself.  ¶¶ 91– 92.  This statement would not "mislead a reasonable investor."  *Rombach*, 355 F.3d at 173.  In

15

New York, an individual may only apply for Medicaid through (1) the Official Health Plan Marketplace for New York State, (2) a Managed Care Organization such as UnitedHealthcare, (3) the Medicaid Helpline managed by the New York State Department of Health, or (4) a New York State Local Department of Social Services. *See* Ex. 5. Thus, reasonable investors could have only understood Mr. Capone to be explaining that DocGo *facilitated* Medicaid sign-ups with UnitedHealthcare—a Managed Care Organization—which is why he expressly stated that the sign-ups occurred "through United Healthcare." *See Greenhouse*, 392 F.3d at 656 (stating that "a 'reasonable investor' is [not] an ostrich, hiding her head in the sand from relevant information"). That statement was true, and Plaintiff does not dispute it.

Moreover, Plaintiff does not deny that DocGo had the potential to earn future business from patients it previously served under the HPD contract after they obtained Medicaid coverage—including after DocGo completed its work on the HPD contract. That was the entire point of this discussion, and Plaintiff does not even attempt to quibble with its accuracy. To the extent Plaintiff claims that it devised a better way in hindsight to communicate the same truthful points Mr. Capone made extemporaneously during a live interview, those claims fail: "Section 10–b is not concerned with such subtle disagreements over adjectives and semantics." *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 298 (S.D.N.Y. 2013).

When a local newspaper with a history of criticizing DocGo inquired about Mr. Capone's statements, the Company immediately set the record straight. *See* ¶¶ 68, 92(b). Plaintiff itself pleads that DocGo explained that it "'does not enroll anyone in Medicaid programs.'" ¶ 68. There was no falsehood.

Plaintiff's claims challenging the Medicaid Statements should be dismissed.

16

**C.**    **The Interview Statements Concerning The As-Then Unawarded CBP Contract Are Protected By The PSLRA's Safe Harbor For Forward-Looking Statements.**

The Interview Statements about the estimated future value of the CBP contract (the "CBP Statements")—which DocGo was merely bidding for and had not won—also are inactionable under the PSLRA's "safe harbor" for forward-looking statements. 15 U.S.C. § 78u-5(c). Under the safe harbor, forward-looking statements are immune from liability under Section 10(b) if (1) the statements were "accompanied by meaningful cautionary statements"; (2) the plaintiff fails to plead particularized facts showing that the speaker spoke with "actual knowledge" that the statements were false; or (3) the statements were immaterial. *Id.* § 78u-5(c)(1)(A), (B)(i). The CBP Statements are protected under prongs one and two of the safe harbor.

For starters, these statements about the future value of a potential contract were clearly "forward-looking." A "forward-looking statement" is (1) "a statement containing a projection of revenues, income . . . , or other financial items," (2) "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer," or (3) "a statement of future economic performance." 15 U.S.C. § 78u-5(i)(1)(A)–(C). A company's discussions of its plans to grow its business constitute forward-looking statements "of future economic performance." *Gluck v. Hecla Mining Co.*, 657 F. Supp. 3d 471, 482, 484 (S.D.N.Y. 2023). The CBP Statements "were plainly forward looking" because "they were framed as an expectation or projection." *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 548 F. App'x 16, 18 (2d Cir. 2013); *see also In re Neustar*, 83 F. Supp. 3d at 682 (statements regarding defendant's "objective of being awarded the new [government] contracts" are forward-looking (quotation marks omitted)). "[T]o the extent that there are assertions of current fact in the statements proffered as fraudulent, they refer to the present only as a means for

17

gauging future possibilities.'"  *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010) (quoting *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009)).

The PSLRA's safe harbor protects the CBP Statements for two independent reasons.

*First*, they were accompanied by meaningful cautionary language.  Cautionary language is "meaningful," so long as it includes the "'important factors that could realistically cause results to differ materially.'"  *Robeco Cap. Growth Funds SICAV – Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 538 (S.D.N.Y. 2023) (quoting *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010)).  "The cautionary language need not directly precede or follow the forward-looking statement for it to be meaningful."  *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 392 (S.D.N.Y. 2020) (citing *Slayton*, 604 F.3d at 768–69). And "risk disclosures" in SEC filings can "constitute meaningful cautionary language."  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 215–16 (S.D.N.Y. 2022).

The CBP Statements were accompanied by meaningful cautionary language because the conference transcript provides that:

> companies may make projections or other forward-looking statements regarding a variety of items. Such forward-looking statements are based upon current expectations and involve risks and uncertainties. Actual results may differ materially from those stated in any forward-looking statement based on a number of important factors and risks, which are more specifically identified in the companies' most recent SEC filings. Although the companies may indicate and believe that the assumptions underlying the forward-looking statements are reasonable, any of the assumptions could prove inaccurate or incorrect and, therefore, there can be no assurance that the results contemplated in the forward-looking statements will be realized.

Ex. 6 at 8; *see also In re Turquoise Hill*, 625 F. Supp. 3d at 215 (holding that nearly identical language in an event transcript was meaningful cautionary language).

This transcript incorporated by reference the cautionary language in DocGo's SEC filings. *See In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289, 319 (S.D.N.Y. 2020)

18

("Courts in this Circuit routinely find that references to SEC filings that expound more fully on the risks suffice to adequately convey the risks."). These SEC filings, in turn, identified the very risks Plaintiff accuses Defendants of hiding. DocGo warned investors that it could lose current contracts, lose bids on contracts, and that the revenue it anticipates under contracts is never guaranteed and could be significantly reduced even if the contract is won. *See* Ex. 7 at 16, 25, 27 (explaining "DocGo's revenue could be adversely affected if it loses some or all of its business under existing contracts" and identifying factors that could "lead to adjustments to the amount . . . DocGo may be paid under [a contract]"); *see also id*. at 12 (explaining that DocGo "m[ight] not achieve the anticipated goals" of "developing contractual relationships" with "new healthcare provider partners"). Because this language identified "important factors that could realistically cause results to differ materially," DocGo provided meaningful cautionary language rendering these forward-looking statements inactionable. *Slayton*, 604 F.3d at 773.

*Second*, Plaintiff fails to plead with factual particularity that any Defendant had "actual knowledge" that the CBP Statements were false or misleading. *S.S. Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, --- F. Supp. 3d ----, 2023 WL 8287681, at *6 (S.D.N.Y. Nov. 30, 2023). As discussed *infra* Section III, Plaintiff pleads no particularized factual allegations of scienter *at all*. With respect to the CBP Statements, the Complaint contains no more than a conclusory assertion that the facts were "known" or that Mr. Capone "did not believe" what he was saying. ¶¶ 90(b), 92; *see Gray*, 454 F. Supp. 3d at 394. These assertions are patently insufficient to overcome the PSLRA's safe harbor.

III.     **Plaintiff Fails To Plead Facts Raising A Strong Inference Of Scienter (Count I).**

The Complaint should be dismissed for the independent reason that Plaintiff fails to plead particularized factual allegations of scienter. To survive dismissal, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state

19

of mind," 15 U.S.C. § 78u-4(b)(2)(A)—i.e., with "an intent to deceive, manipulate, or defraud," *In re Weight Watchers*, 504 F. Supp. 3d at 255. Unlike the pleading standard in most cases, the Court does *not* draw all inferences in favor of the plaintiff. Instead, the Court must balance the permissible inferences, and "an inference of scienter . . . must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314, (2007).

In the Second Circuit, scienter can be alleged through either "motive and opportunity" to commit fraud or "conscious misbehavior or recklessness," which "'generally consists of deliberate, illegal behavior.'" *In re Weight Watchers*, 504 F. Supp. 3d at 258 (quoting *In re Lululemon*, 14 F. Supp. 3d at 573). To plead motive and opportunity, a plaintiff must allege a "concrete and personal benefit to the individual defendants resulting from the fraud," not a general "desire for the corporation to appear profitable." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). And "recklessness" means "highly unreasonable" conduct that "represents an extreme departure from the standards of ordinary care to the extent that *the danger was either known to the defendant or so obvious that the defendant must have been aware of it*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (quotation marks omitted). Recklessness requires "'a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'" *Id.* (quoting *Novak*, 216 F.3d at 312). And when "the defendant is a corporate entity," the alleged "facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

Here, the Complaint fails to plead scienter. In stark contrast to the vast run of securities complaints, Plaintiff does not cite a single document, confidential witness, or other direct evidence

20

of scienter.  And while many securities complaints contain lengthy sections devoted to scienter allegations, this one does not even contain the word scienter.  Despite its bald assertions that "Defendants had actual knowledge" of the alleged misstatements, *see, e.g.*, ¶ 116, the Complaint fails to plead even a single allegation of *fact* supporting the claims that (1) any Defendant other than Mr. Capone knowingly or recklessly misrepresented Mr. Capone's educational history or (2) any Defendant at all possessed scienter with respect to the Interview Statements.

### A.    Plaintiff Fails To Plead That DocGo, Mr. Vashovsky, Or Mr. Oberholzer Had Any Idea That The Education Statements Were Inaccurate.

Plaintiff fails to plead any factual allegation suggesting that any Defendant other than Mr. Capone knew or had reason to know the Education Statements were inaccurate.

Plaintiff resorts to arguing that it was reckless for Messrs. Vashovsky and Oberholzer not to have discovered the facts through a background check, Dkt. 47 at 3, but this argument does not fill the vast hole in the pleadings.  The kind of recklessness required for scienter approximates to "actual intent."  *In re Weight Watchers*, 504 F. Supp. 3d at 258 (emphasis omitted).  And Plaintiff pleads no facts to suggest that the danger of Mr. Capone misrepresenting his education "was either known to [Mr. Vashovsky or Mr. Oberholzer] or so obvious that [they] must have been aware of it."  *Id.* (emphasis omitted).  The scienter inquiry centers on a defendant's understanding about challenged *statements*, not human resources practices, and here there is no allegation that Messrs. Vashovsky and Oberholzer had the slightest reason to doubt the Education Statements. *See In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 530 (S.D.N.Y. 2020) (dismissing, for lack of scienter, conclusory allegations that defendants were "'sufficiently knowledgeable' with respect to falsity of the challenged statements"); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[C]onclusory allegations—that Defendants . . . 'knew or were reckless in not knowing' [certain] things—do not satisfy the requirements of Rule 9(b).").

21

Even as a critique of DocGo's hiring practices, Plaintiff's argument falters. There is no allegation that DocGo believed it needed to vet Mr. Capone as it might vet an unknown candidate for the CEO role. To the contrary, the Complaint acknowledges that Mr. Capone transitioned into an officer role at DocGo shortly after the Company was created and was later promoted to CEO. ¶ 17. He had been making the Education Statements since before joining the Company, ¶¶ 37, 70, and the Complaint pleads no reason why any other Defendant should have doubted those statements. There certainly is no factual allegation that Messrs. Vashovsky and Oberholzer, as DocGo executives, were responsible for performing background checks or believed that any required diligence was not performed.

The claims against DocGo based on the Education Statements are every bit as flawed. Mr. Capone's knowledge about his education cannot be imputed to the Company. "An employee's knowledge may be imputed to a corporation only if such knowledge was acquired by the employee while acting within the scope of employment, and for the employer's benefit, and if such knowledge relates to a matter to which the employee's authority extends." *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *11 (S.D.N.Y. Mar. 31, 1999). Thus, the court in *WRT Energy* held that it could not impute to a corporate defendant, Oppenheimer, allegedly "vast knowledge" that its employee attained while acting as an advisor to a different defendant, outside "the scope of [his] employment at Oppenheimer." *Id.*; *see also Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1470 (S.D.N.Y. 1983) (holding in Section 10(b) case that "it is clear that a director's knowledge may not properly be imputed to a corporation unless it is gained within the scope of his activity with respect to that corporation"); *Fid. Bank, Nat'l Ass'n v. Avrutick*, 740 F. Supp. 222, 237 (S.D.N.Y. 1990) (similar). Mr. Capone certainly did not gain knowledge of his own education by working at DocGo, so his statements cannot be attributed to the Company.

In addition, "[t]he adverse-interest exception directs a court not to impute to a corporation the bad acts of its agent [which were] committed for personal benefit." *Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *8 (S.D.N.Y. Sept. 8, 2017) (quotation marks omitted). Mr. Capone had been touting his inaccurate educational credentials from long before he started working at DocGo. ¶¶ 37, 70. Although Mr. Capone repeated the Education Statements while he worked at DocGo, he was speaking for himself, and the statements did not help DocGo "to survive—to attract investors and customers and raise funds for corporate purposes." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 277 (S.D.N.Y. 2013). Under these circumstances, it would be unjust to conflate his state of mind with that of the Company.

What's more, DocGo swiftly announced Mr. Capone's resignation the day after the *Times Union* reported on his educational credentials. ¶¶ 47, 97. The only reasonable inference from these allegations is that the other Defendants did *not* know about or condone errors regarding the Education Statements. Certainly, when balanced against the inference of guilt, the inference of innocence is far more compelling. *See Tellabs*, 551 U.S. at 314.

## B.    Plaintiff Fails To Plead Scienter For The Interview Statements.

As Plaintiff concedes, Mr. "Capone is the only defendant accused of making misstatements regarding the CBP contract and DocGo's Medicaid enrollment." Dkt. 47 at 3. Plaintiff pleads "no facts suggesting that Defendants had any knowledge of information contradicting" those statements. *Bratusov*, 2020 WL 3447989, at *13. Rather, Plaintiff's pre-conference letter asserts that "the allegations are more than sufficient to establish Capone's motive, opportunity, and recklessness in light of the crisis DocGo was facing at that time and the magnitude of the opportunity about which he dissembled." Dkt. 47 at 3. But they establish no such thing.

Plaintiff makes no attempt to plead that Mr. Capone had an intent to "deceive, manipulate, or defraud" when he discussed DocGo's interaction with potential Medicaid patients or the value

23

of the CBP contract. *In re Weight Watchers*, 504 F. Supp. 3d at 255. The Complaint fails to plead a single allegation of "concrete and personal benefit" to any Defendant that could support an inference of scienter based on motive and opportunity—let alone the strong one required to plead securities fraud. *Kalnit*, 264 F.3d at 139 (dismissal proper where plaintiff alleged only "generalized" corporate profit motives). The generic motive of a desire for corporate profit or "the appearance of corporate profitability" has been squarely rejected as a basis for scienter. *Novak*, 216 F.3d at 307. Plaintiff identifies no other motive with respect to the Interview Statements.

As for recklessness, Plaintiff again does not plead a single fact Mr. Capone knew or should have known that would have put him on notice that the statements he made were false or misleading. *S. Cherry St.*, 573 F.3d at 109. And when the *Times Union* journalist expressed confusion over the Medicaid Statements, Defendants immediately offered a clarification, refuting any possible inference that Defendants intended to deceive with respect to those statements. *See Slayton*, 604 F.3d at 777 (no scienter where the facts as pleaded did not show that the defendant "was trying to hide anything from its investors").

## IV.  Plaintiff Fails To Plead A Section 20(a) Claim (Count II).

To plead control person liability under Section 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). The Complaint fails on all three elements.

*First*, "[a]ny claim for 'control person' liability under § 20(a) of the Exchange Act must be predicated on a primary violation of securities law." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010) (footnote omitted). Plaintiff does not clear this initial hurdle.

The Complaint fails to state a claim for secondary liability under Section 20(a) because it fails to state a claim for primary liability under Section 10(b).  *See supra* Sections I–III.

*Second*, the Complaint also pleads no factual allegations regarding the extent to which any Defendant controlled another.  *See In re Alstom SA*, 406 F. Supp. 2d 433, 494–95 (S.D.N.Y. 2005) (officer or director status alone does not constitute control for the purposes of Section 20(a) liability); *see also In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 497 (S.D.N.Y. 2018) (dismissing Section 20(a) claim against CFO for failing to allege CFO "controlled" CEO).

*Third*, the Complaint fails to allege any culpable participation for the same reasons it fails adequately to plead their scienter.  *See, e.g.*, *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206, at *7–8 (S.D.N.Y. Mar. 23, 2018) (finding that inadequate scienter allegations also inadequately alleged culpable participation in a primary violation); *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *11 (S.D.N.Y. Aug. 12, 2014) (same).

## CONCLUSION

For the foregoing reasons, all the claims against Defendants DocGo, Vashovsky, and Oberholzer should be dismissed with prejudice.

DATED:  June 21, 2024               Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP
JASON J. MENDRO
LISSA M. PERCOPO (admitted *pro hac vice*)


/s/ Jason J. Mendro
JASON J. MENDRO

25

1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202/955-8500
202/467-0539 (fax)
jmendro@gibsondunn.com
lpercopo@gibsondunn.com

Attorneys for Defendants DocGo Inc., Stan
Vashovsky, and Andre Oberholzer

26