UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| JOE NACLERIO, Individually and on Behalf of All Others Similarly Situated, | x : : : | |
| Plaintiff, | : : : | No. 1:23-cv-09476-KPF |
| v. | : : | |
| DOCGO INC., STAN VASHOVSKY, ANTHONY CAPONE, and ANDRE OBERHOLZER, | : : : | |
| Defendants. | : x | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANTS DOCGO INC., VASHOVSKY, AND OBERHOLZER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.   The Opposition Confirms Plaintiff's Failure To Plead An Actionable Misstatement........ 2

       A.  Messrs. Vashovsky And Oberholzer Made No Disputed Statements.......................... 2

       B.  All Claims Made Before April 29, 2022 Must Be Dismissed. .................................... 3

       C.  The Education Statements Are Immaterial. ................................................................ 4

       D.  The Interview Statements Are Unrefuted. .................................................................. 5

    II.  The Opposition Does Nothing To Cure Plaintiff's Failure To Allege Scienter. ................ 7

    III. Plaintiff Fails To Plead A Scheme........................................................................................ 9

    IV. Plaintiff Fails To Plead A Section 20(a) Claim (Count II). ............................................. 10

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004)............................................................................8

*In re Avon Sec. Litig.*,
    2019 WL 6115349 (S.D.N.Y Nov. 18, 2019).................................................................4

*In re Barclays PLC Sec. Litig.*,
    2024 WL 757385 (S.D.N.Y. Feb. 23, 2024)...............................................................4, 10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)........................................................................................................4

*In re BHP Billiton Ltd. Sec. Litig.*,
    276 F. Supp. 3d 65 (S.D.N.Y. 2017).............................................................................4, 7

*Blank v. TriPoint Global Equities, LLC*,
    338 F. Supp. 3d 194 (S.D.N.Y. 2018)..............................................................................7

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
    2021 WL 1416025 (S.D. Tex. Apr. 14, 2021) ................................................................3

*In re CarLotz, Inc. Sec. Litig.*,
    667 F. Supp. 3d 71 (S.D.N.Y. 2023)................................................................................3

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)..............................................................................9

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009).............................................................................................4

*Francisco v. Abengoa, S.A.*,
    559 F. Supp. 3d 286 (S.D.N.Y. 2021)............................................................................10

*Greenhouse v. MCG Cap. Corp.*,
    392 F.3d 650 (4th Cir. 2004) ......................................................................................4, 5

*Harrington v. Tetraphase Pharms. Inc.*,
    2017 WL 1946305 (D. Mass. May 9, 2017)....................................................................6

*Hoffman v. TD Waterhouse Inv. Servs., Inc.*,
    148 F. Supp. 2d 289 (S.D.N.Y. 2001)..............................................................................3

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019)...............................................................................3

*In re Initial Pub. Offering Sec. Litig.*,
  358 F. Supp. 2d 189 (S.D.N.Y. 2004)..............................................................................5

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) (per curiam)...........................................................................7

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).........................................................................................................2

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000).................................................................................9

*Khanukayev v. Times Square All.*,
  2010 WL 2000552 (S.D.N.Y. May 20, 2010) ................................................................10

*LaSala v. TSB Bank, PLC*,
  514 F. Supp. 2d 447 (S.D.N.Y. 2007)...............................................................................3

*Lemen v. Redwire Corp.*,
  2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) .................................................................3

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
  265 F.R.D. 106 (S.D.N.Y. 2010) ......................................................................................5

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus.*,
  54 F.4th 82 (2d Cir. 2022) ................................................................................................3

*Moradpour v. Velodyne Lidar, Inc.*,
  2022 WL 2391004 (N.D. Cal. July 1, 2022).....................................................................3

*In re Mullen Auto. Sec. Litig.*,
  2023 WL 8125447 (C.D. Cal. Sept. 28, 2023) .................................................................3

*Norsul Oil & Mining, Ltd. v. Texaco Inc.*,
  309 F. Supp. 1242 (S.D.N.Y. 1970)..................................................................................3

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..............................................................................................9

*SEC v. Carter*,
  2011 WL 5980966 (N.D. Ill. Nov. 28, 2011) ...................................................................2

*SEC v. Farnsworth*,
  692 F. Supp. 3d 157 (S.D.N.Y. 2023)..............................................................................10

iv

*SEC v. Mercury Interactive, LLC*,
    2011 WL 5871020 (N.D. Cal. Nov. 22, 2011) ...............................................................2

*SEC v. Siebel Sys., Inc.*,
    384 F. Supp. 2d 694 (S.D.N.Y. 2005)...........................................................................9

*In re Stillwater Capital Partners Inc. Litig.*,
    858 F. Supp. 2d 277 (S.D.N.Y. 2012)...........................................................................2

*Weintraub v. Texasgulf Inc.*,
    564 F. Supp. 1466 (S.D.N.Y. 1983)..............................................................................7

*In re WRT Energy Sec. Litig.*,
    1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) .................................................................7

*Xu v. Gridsum Holding Inc.*,
    624 F. Supp. 3d 352 (S.D.N.Y. 2022)...........................................................................2

**Statutes**

15 U.S.C. § 78j(b) ..............................................................................................................3

v

**PRELIMINARY STATEMENT**

The Opposition presents no reason to sustain this flawed lawsuit. For all of its disparagement of the unscripted Interview Statements, Plaintiff fails to show they were wrong. Plaintiff second-guesses Mr. Capone's estimate of a potential contract's value based on a newspaper article. But Plaintiff does not dispute that an informed analyst made estimates similar to Mr. Capone's or that the contract's value was changing—let alone plead any facts suggesting the newspaper was right. Plaintiff twists Mr. Capone's words to create the impression that he promised DocGo would win the contract, but he did not, and Plaintiff's criticisms of what Mr. Capone did say—that DocGo built credibility from its past work—are silly. Of course, experience builds credibility. Plaintiff's attack on Mr. Capone's statement that DocGo could earn future revenue from patients it "signed up" for Medicaid is flimsier still. Plaintiff *agrees* that Mr. Capone's point was that DocGo had future earnings potential from the patients it served before, and Plaintiff does not dispute that point. Moreover, the Opposition does not cite a single, factual allegation suggesting that Mr. Capone believed his Interview Statements were wrong.

All that remains is Plaintiff's attack on Mr. Capone's Education Statements. Mr. Capone knew where he went to school, but no one else had any idea that his statements were inaccurate. The Opposition does not argue otherwise. Instead, it attempts to tar the Company and its other executives through strained theories that they are guilty by imputation or for not fact-checking Mr. Capone's résumé. Those theories are meritless. The Company is not responsible for statements Mr. Capone made before it existed or contrary to its interests, and no principle of law subjects its other officers to liability for fraud for ineffective background checks. More fundamentally, Plaintiff fails to show that these statements mattered to anyone but Mr. Capone, and a securities fraud class action cannot be premised on misstatements that are immaterial.

In sum, the Opposition fails to salvage any claims. This lawsuit should be dismissed.

1

**ARGUMENT**

**I.    The Opposition Confirms Plaintiff's Failure To Plead An Actionable Misstatement.**

**A.    Messrs. Vashovsky And Oberholzer Made No Disputed Statements.**

The Opposition confirms that Messrs. Vashovsky and Oberholzer cannot be liable under Section 10(b) because they did not "make" any of the challenged statements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The Opposition declares that "Plaintiff never alleged Vashovsky or Oberholzer made [the Interview Statements] in the first place." Opp. 8 n.6. And it fails to show that they made the Education Statements either. Mr. Vashovsky did not "make" statements about Mr. Capone's education in DocGo's proxy statements simply because he signed the Notices of the Annual Meeting *attached* to those statements. *Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 363 (S.D.N.Y. 2022) (signing cover page of SEC filing did not make officer a "maker" of the attached press release). Plaintiff baldly asserts Mr. Oberholzer "oversaw" the preparation of the challenged statements, but it cites no factual allegation of oversight or control over them. Opp. 9 (citing ¶¶ 7, 77). Thus, Plaintiff raises no doubt that Mr. Oberholzer's role was "purely ministerial," *Xu*, 624 F. Supp. 3d at 363, that Mr. Capone had "ultimate authority" over his own biography, *id.* at 359, and that Mr. Oberholzer did not "make" the Education Statements.

The cases Plaintiff cites do not suggest otherwise. In *SEC v. Mercury Interactive, LLC*, the court *declined* to "resolve" whether an employee's signature on a proxy document was sufficient. 2011 WL 5871020, at *2 (N.D. Cal. Nov. 22, 2011). The court in *In re Stillwater Capital Partners Inc. Litig.*, 858 F. Supp. 2d 277, 287-88 (S.D.N.Y. 2012), found "adequate surrounding circumstances" beyond merely signing a statement for maker status. And *SEC v. Carter* also looked beyond a signature to assess whether the defendant "had ultimate authority for the statements" and "approved" their content. 2011 WL 5980966, at *2-3 (N.D. Ill. Nov. 28, 2011).

**B.      All Claims Made Before April 29, 2022 Must Be Dismissed.**

The Opposition never identifies any connection between the pre-class period statements and DocGo securities. *See* 15 U.S.C. § 78j(b). A statement is made "in connection with" the purchase or sale of a security only if it "concern[s] the value of the securities purchased or sold, or the consideration received in return." *Hoffman v. TD Waterhouse Inv. Servs., Inc.*, 148 F. Supp. 2d 289, 290 (S.D.N.Y. 2001) (citing *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 108 (2d Cir. 1986)).

Plaintiff argues DocGo "exist[ed]" once Motion completed its IPO on October 19, 2020, Opp. 14-15, but Motion did not merge with Ambulnz to eventually form DocGo until November 5, 2021, ¶ 29. In any event, there is no connection between Mr. Capone's two pre-class period statements and DocGo shares or the merger. Neither the June 2021 statement in an Ambulnz contract proposal, ¶ 37, nor the September 2021 statement extracted from an AI podcast, ¶ 70, were about securities at all or were "made in a medium upon which a reasonable investor would rely." *LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447, 478 (S.D.N.Y. 2007).[1]

Plaintiff argues the Second Circuit's holding in *Menora Mivtachim Ins. Ltd. v. Frutarom Industries* is inapplicable because it is not suing an entity acquired in a merger, as the plaintiff in *Frutarom* did. Opp. 15. That distinction makes no difference. In the Second Circuit, "misstatements" must be about the purchased securities. *Frutarom*, 54 F.4th 82, 88 (2d Cir. 2022). Here, the pre-April 29, 2022 statements are not even alleged to be about the future DocGo.[2]

---

[1] *See also Norsul Oil & Mining, Ltd. v. Texaco Inc.*, 309 F. Supp. 1242, 1245 (S.D.N.Y. 1970) (statement "made to an administrative agency" not "in connection" with purchase or sale of security); *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 540-41 (W.D. Pa. 2019) (same for advertising statement).

[2] Ignoring *In re CarLotz, Inc. Sec. Litig.,* 667 F. Supp. 3d 71, 78-79 (S.D.N.Y. 2023) (cited at MTD 11), Plaintiff cites a series of out-of-circuit cases, but in each one the challenged statement was directly related to the merger or the acquiring company's future value. *See, e.g.*, *In re Mullen Auto. Sec. Litig.*, 2023 WL 8125447, at *2-3 (C.D. Cal. Sept. 28, 2023) (disputed statements announced merger and related to future earning potential); *Lemen v. Redwire Corp.*, 2023 WL 2598402, at *2-3 (M.D. Fla. Mar. 22, 2023) (disputed statements promoted the merger); *Moradpour v. Velodyne Lidar, Inc.*, 2022 WL 2391004, at *13-14 (N.D. Cal. July 1, 2022) (disputed statements related to executive's anticipated involvement in post-merger company); *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at *1, *3-6 (S.D. Tex. Apr. 14, 2021) (disputed statements about valuation of target company and post-merger entity).

### C.    The Education Statements Are Immaterial.

Claims challenging statements that were "obviously unimportant to a reasonable investor" should be dismissed. *In re Barclays PLC Sec. Litig.*, 2024 WL 757385, at \*10 (S.D.N.Y. Feb. 23, 2024) (citation omitted); *see also ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197, 207 (2d Cir. 2009) (affirming dismissal on materiality grounds). That is the case with the Education Statements, and nothing in the Opposition shows otherwise.

Despite Plaintiff's argument that Defendants "misstate the relevant standard," Opp. 7, the parties cite the same materiality standard from *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). *See* MTD 12-13; Opp. 7. But Plaintiff fails to allege how a reasonable investor would view the Education Statements as "significantly alter[ing] the 'total mix' of information" about DocGo. *Basic*, 485 U.S. at 232 (citation omitted). Plaintiff contends that "AI is central to materiality[,] . . . [that] DocGo touted a proprietary AI platform, purportedly developed by Capone himself, as the Company's largest differentiator in the industry." Opp. 6. Put simply, Plaintiff alleges that DocGo's AI capabilities were material. But those capabilities are *not challenged*. There is not a single allegation that DocGo misrepresented the quality of its technology.

Mr. Capone's repetition of the Education Statements does not make them important to anyone but him, and Plaintiff's reliance on *In re Avon* and *BHP Billiton* is misplaced. *See* Opp. 7. The statements in those cases were material because the defendants repeated them to "[a]ssure" or "reassure" investors about matters "particularly important to the company and investors." *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017); *see also In re Avon Sec. Litig.*, 2019 WL 6115349, at \*16 (S.D.N.Y Nov. 18, 2019) (similar). Plaintiff does not allege the Education Statements reassured investors about any concern. No one questioned the qualifications of DocGo's leadership, much less its officers' particular academic credentials.

Plaintiff argues that *Greenhouse v. MCG Capital Corp.* "does not support [Defendants']

4

contentions" because there the misstated educational credentials "only appeared in one SEC filing." Opp. 8. Not so. In *Greenhouse*, the incorrect educational credentials of the CEO/Chairman were included in multiple forms filed with the SEC in advance of the company's initial public offering. 392 F.3d 650, 654 & n.3 (4th Cir. 2004). In both *Greenhouse* and here, "uncountable other pieces of information . . . ma[de] up the 'total mix' of information," and both plaintiffs "advanced no credible theory as to why a reasonable investor would consider [one executive's educational history] . . . so important that it would alter" this mix. *Id.* at 658.[3]

### D.    The Interview Statements Are Unrefuted.

The Opposition cites no factual allegation that Mr. Capone's unscripted Interview Statements on August 9, 2023 were false or misleading.

***CBP Statements.*** Plaintiff specifies no reason to doubt the truth of Mr. Capone's statements about the "Size of the CBP Contract." Opp. 10. Instead, Plaintiff presses its bare conclusion that the CBP contract "was worth only $2 billion," based on a single press report that cited a third party's different estimate and noted the value "'was in flux.'" *Id.* (quoting MTD 14). Plaintiff has no response to the fact that an analyst *on which the Complaint relies* estimated that the CBP contract "could turn into ~$4B over ~5+ years". MTD 14 (quoting Dkt. 62-2).

Unable to defend the allegations it pleaded, Plaintiff pivots to new allegations from outside the Complaint. Opp. 10. This tactic confirms the Complaint's inadequacy. "[A] plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265

---

[3] Plaintiff relies on a distinguishable case for the proposition that a résumé misrepresentation can be material. Opp. 6. In *In re Initial Public Offering*, the court held that the misrepresentation regarding an outside director's degree in Computer Engineering from Stanford University was material given the "cachet" associated with that degree at a time when many successful "dot.com" companies had been run "by persons with computer engineering degrees from Stanford University" and such degrees were considered "an indicator of success." 358 F. Supp. 2d 189, 199–200, 211 (S.D.N.Y 2004). Plaintiff makes no such allegation here regarding Clarkson University or SUNY Potsdam.

F.R.D. 106, 122-23 (S.D.N.Y. 2010).  This argument also does not help Plaintiff.  Plaintiff claims a press article shows DocGo "refused" to prove that the contract was worth $4 billion.  Opp. 10 (emphasis omitted) (citing Dkt. 65-2).  But the article actually says that a DocGo spokesperson "disputed" the claim that Mr. Capone misrepresented the contract, cited supporting facts, but said he was "not at liberty" to provide documentation the reporter requested.  Dkt. 65-2 at 2.  The Company's unwillingness to produce documents to a critical newspaper is not a factual allegation the statements were false.

Regarding the safe harbor, *see* MTD 17-19, Plaintiff argues only that the cautionary language prong does not apply to the oral version of the statement, Opp. 11-12, but that is wrong. A "cautionary statement at the end of . . . [a] conference call transcript" can be "sufficient to invoke the safe harbor," even where "no such cautionary statement was made" during the call. *Harrington v. Tetraphase Pharms. Inc.*, 2017 WL 1946305, at *9 (D. Mass. May 9, 2017).  In any event, the statements are forward-looking, and Plaintiff comes nowhere close to alleging scienter *at all*, never mind actual knowledge.  *See infra* at 7-9.  Thus, the statements are inactionable.

Plaintiff has no serious response to Defendants' showing that Mr. Capone's statements about DocGo's credibility are inactionable puffery and opinions; Plaintiff merely asserts "[i]t was not," with a meaningless cross-reference to that same section of its brief.  Opp. 11.  Nor does Plaintiff dispute that the information that supposedly contradicted DocGo's credibility was public and part of the context in which the statements were made.  MTD 15.  Plaintiff argues that the analyst who interviewed Mr. Capone did not know that the CBP contract had not been awarded, Opp. 22, but the analyst's knowledge is not determinative of the market's knowledge more broadly and was irrelevant to the subject matter of the claim:  DocGo's credibility.

***Medicaid Statements.***  To any reasonable investor, Mr. Capone's unscripted reference to

"sign[ing] up" asylum seekers for Medicaid could only refer to DocGo's efforts to *facilitate* Medicaid sign-ups "through United Healthcare." MTD 15-16. Plaintiff does not seriously dispute that and *agrees* that Mr. Capone's core message to investors was that DocGo had the "ability to generate long-term revenue opportunities from" working on contracts like "the HPD contract." Opp. 14. Plaintiff does not deny *that* message is true: facilitating Medicaid enrollments, no less than completing them directly, created revenue opportunities for DocGo. There was no falsehood.

## II.    The Opposition Does Nothing To Cure Plaintiff's Failure To Allege Scienter.

Aside from Mr. Capone's knowledge about his own education, the Opposition fails to allege any particularized facts creating an inference of scienter. MTD 19-24; *see* Opp. 15-23.

***Education Statements.*** Plaintiff argues Mr. Capone's knowledge about his education must be imputed to DocGo, *see* Opp. 16-18, but its own authority disagrees. "There is no formulaic method" for "employee scienter to be imputed to the corporation." *In re BHP Billiton*, 276 F. Supp. 3d at 90-91 (citation omitted) (imputing to corporation knowledge executives learned from an independent audit).[4]

Plaintiff did not—and could not—allege that Mr. Capone "acquired . . . within the scope of employment" knowledge about his education. *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *11 (S.D.N.Y. Mar. 31, 1999); *see also Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1470 (S.D.N.Y. 1983) (similar); MTD 22. Because Mr. Capone learned the facts contradictory to the Education Statements long before his DocGo employment, that knowledge cannot be imputed to the Company. Plaintiff's only attempt to distinguish *WRT* relies on its nonsensical argument that

---

[4] Imputation of an executive's scienter to the company in *Blank v. TriPoint Global Equities, LLC* is not instructive; neither defendants nor the factual circumstances alleged indicated an exception would apply. 338 F. Supp. 3d 194, 215 (S.D.N.Y. 2018). Similarly, the Second Circuit's affirmance of dismissal in *Jackson v. Abernathy*, 960 F.3d 94 (2d Cir. 2020) (per curiam), where plaintiff failed to plead scienter for any defendant, does not change the analysis here.

because Capone never learned he *did* have a graduate degree, *WRT* does not apply.  Opp. 17.

Plaintiff separately contends that the adverse-interest exception does not apply.  *See* Opp. 18.  But Plaintiff's assertion that Mr. Capone "lie[d] about his education in order to attract new customers" is completely conclusory, *id.*, and such a lie obviously clashes with DocGo's interests.  Once again, Plaintiff also resorts to documents outside the Complaint—confirming the Complaint is deficient.  *Id.* (relying on Dkt. 65-3); *see supra* at 5.  But the extrinsic material merely shows that the Company entered into a transition agreement with Mr. Capone—without the title or pay of CEO—to preserve "business continuity."  Dkt. 65-3 at 3.  Protecting investor interest in this fashion does not remotely imply that the Company knew about Mr. Capone's misstatements.

As to Mr. Vashovsky and Mr. Oberholzer, Plaintiff makes the bare assertion that they must have known or "acted with reckless disregard" by failing personally to confirm Mr. Capone's educational credentials.  Opp. 19.  Again, Plaintiff pleads no factual allegations in support—no facts about what Mr. Vashovsky or Mr. Oberholzer knew, and no facts supporting the assertion that these two senior executives were responsible for double-checking Mr. Capone's résumé.  Opp. 19-20.  The case Plaintiff cites only confirms that where an officer is not "given information that should have alerted" him of the allegedly false information, he does not act with scienter.  *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 497 (S.D.N.Y. 2004) (rejecting inference of scienter for officer who had no information that the company's financials were false).

***Interview Statements.***  Confusingly evoking the "boy who cried wolf," the Opposition fails to cite *any* specific allegations of scienter related to the Interview Statements.  Opp. 20-23.  Plaintiff says that "Capone knew or had access to information indicating the CPB [sic] contract was worth far less than . . . $4 billion," Opp. 20, but Plaintiff never identifies the "information" or says how Mr. Capone had access to it.  That is fatal.  Neither the size of the potential contract nor

8

the length of time DocGo worked to win it, *see* Opp. 20-21, says anything about Mr. Capone's state of mind in projecting its value.  And Plaintiff cites an analyst report that agreed the CBP opportunity "could turn into ~$4B over ~5+ years."  MTD 14 (quoting Dkt. 62-2 at 1).  If an analyst believed the contract was worth that much, why couldn't Mr. Capone?  Plaintiff's only answer is "speculation and conclusory allegations."  *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 335 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

Plaintiff fails to explain how Mr. Capone's discussion of the HPD contract was meant to "mislead a reasonable investor."  *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (citation omitted).  The Company quickly clarified a reporter's misunderstanding of Mr. Capone's statements, *see* ¶¶ 68, 94, but did not "admit[]" the statements were "false," as Plaintiff claims, Opp. 21.  That DocGo could not literally sign up patients for Medicaid is a fact "so basic that a reasonable investor could be expected to know it," *SEC v. Siebel Sys., Inc.*, 384 F. Supp. 2d 694, 708 n.13 (S.D.N.Y. 2005), and Plaintiff offers no basis to infer Mr. Capone thought otherwise, MTD 15-16.

Finally, Plaintiff says that because DocGo did not win the CBP contract it must have known that it "did not have the credibility to win" it.  Opp. 21 (cleaned up).  "But these sorts of 'should have known' allegations are insufficient to allege scienter."  *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 425 (S.D.N.Y. 2020).  Plaintiff peddles its own view of how the HPD contract affected DocGo's credibility, but Plaintiff's self-serving opinions are no substitute for specific, factual allegations of scienter.  A CEO is entitled to believe his company's experience enhances its credibility to win new work—which is what Mr. Capone said.

The balance of inferences from the allegations weighs decisively in favor of innocence.

## III.    Plaintiff Fails To Plead A Scheme.

The Opposition confirms Plaintiff has not pled a scheme claim.  Plaintiff's argument that

Defendants "waived" their challenge to Plaintiff's scheme allegations is baseless.  Opp. 26.

Defendants disputed Plaintiff's vague "scheme" claim, *see* MTD 10, and did so in few words

because the Amended Complaint contains no supporting factual allegations.  As this Court has

explained, "scheme liability is triggered where the defendant 'performed an inherently deceptive

act that was distinct from an alleged misstatement: *i.e.*, sham agreements, sham transactions, sham

companies, or undisclosed payments.'"  *SEC v. Farnsworth*, 692 F. Supp. 3d 157, 189 (S.D.N.Y.

2023) (citation omitted).  In *Farnsworth*, the CEO of MoviePass not only made allegedly

misleading statements but also did "something more" by "artificially restricting users' ticket usage"

to "manipulate key metrics . . . relevant to investors." *Id.* at 189-90.  There are no such allegations

here.  The Education Statements did not "manipulate key metrics" relevant to investors or "create[]

a false impression" of DocGo's performance.  *Id.* at 190.[5]

## IV.    Plaintiff Fails To Plead A Section 20(a) Claim (Count II).

Plaintiff's failure to plead a primary violation requires dismissal of the Section 20(a) claim.

MTD 24-25.  Contrary to Plaintiff's argument, this claim should likewise be dismissed because

Plaintiff fails to allege culpable participation. *See In re Barclays PLC Sec. Litig.*, 2024 WL 757385,

at *10.  "The majority of courts in this District hold that . . . culpable participation . . . must be

pleaded with the same particularity as scienter." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286,

322 (S.D.N.Y. 2021) (citation omitted).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

---

[5] Plaintiff waited until its Opposition to explain its theory of scheme liability.  *See* Opp. 25-26.  In deciding a motion to dismiss, "a court considers only the allegations made in the complaint and any documents attached thereto, . . . and thus disregards allegations made in a memorandum of law." *Khanukayev v. Times Square All.*, 2010 WL 2000552, at *2 n.4 (S.D.N.Y. May 20, 2010).

DATED:  September 19, 2024         Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP
JASON J. MENDRO
LISSA M. PERCOPO (admitted *pro hac vice*)


*/s/ Jason J. Mendro*
JASON J. MENDRO

1700 M Street, N.W.
Washington, DC  20036
Telephone:  202-955-8500
202-467-0539 (fax)
jmendro@gibsondunn.com
lpercopo@gibsondunn.com

Attorneys for Defendants DocGo Inc., Stan
Vashovsky, and Andre Oberholzer

11