UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | : : : : : : : : : : : : : : : : | Civil Action No. 1:23-cv-09476-KPF |
| | | CLASS ACTION |
| Plaintiff, | | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER: (1) CERTIFYING THIS ACTION AS A CLASS ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23; (2) APPOINTING LEAD PLAINTIFF AS CLASS REPRESENTATIVE; AND (3) APPOINTING ROBBINS GELLER RUDMAN & DOWD LLP AS CLASS COUNSEL |
| vs. | | |
| DOCGO INC., and ANTHONY CAPONE, | | |
| Defendants. | | |
| | x | |

4899-1168-9302.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND ......................................................................................2

      A.    Summary of the Allegations ............................................................................2

      B.    The Proposed Class Representative ................................................................4

III.  THE PROPOSED CLASS SATISFIES RULE 23 ......................................................4

      A.    The Proposed Class Satisfies Rule 23(a) .......................................................4

            1.    The Proposed Class Is Sufficiently Numerous ...................................5

            2.    Questions of Law and Fact Are Common to the Class .......................5

            3.    The Proposed Class Representative's Claims Are Typical ..............6

            4.    Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class.................................................................................7

      B.    The Proposed Class Satisfies Rule 23(b)(3) ..................................................8

            1.    Common Questions of Law and Fact Predominate ............................8

                  a.    Lead Plaintiff is Entitled to the Fraud-on-the-Market Presumption of Reliance ................................................................10

                        (1)   The *Cammer* Factors...........................................................11

                        (2)   The *Krogman* Factors..........................................................13

                  b.    Lead Plaintiff's Damages Model Is Consistent with the Proposed Class's Theory of Liability.............................................14

            2.    Class Treatment Is Superior to Other Methods of Adjudication ...................15

      C.    The Proposed Class Is Ascertainable ..........................................................16

      D.    Robbins Geller Should Be Appointed Class Counsel.............................................16

IV.   CONCLUSION ..........................................................................................................17

4899-1168-9302.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................................8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................................4, 9, 10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)......................................................................................................2, 10

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. 150 (S.D.N.Y. 2012) .....................................................................................8, 11

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) .................................................................................11, 13

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ...............................................................................4, 12, 13, 14

*Erickson v. Jernigan Cap., Inc.*,
   692 F. Supp. 3d 114 (S.D.N.Y. 2023)...............................................................................6, 8

*Gruber v. Gilbertson*,
   2019 WL 4439415 (S.D.N.Y. Sep. 17, 2019), *modified*
   *on other grounds*, 2021 WL 3524089
   (S.D.N.Y. Aug. 10, 2021) .................................................................................................6

*Guadagna v. Zucker*,
   332 F.R.D. 86 (E.D.N.Y. 2019) ........................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)........................................................................................................10

*In re Allergan PLC Sec. Litig.*,
   2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)........................................................................1

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) ....................................................................................4, 9

*In re Am. Realty Cap. Props., Inc. Litig.*,
   No. 1:15-mc-00040-AKH, ECF 1316 (S.D.N.Y. Jan. 21, 2019).............................................8

*In re Aphria, Inc. Sec. Litig.*,
   342 F.R.D. 199 (S.D.N.Y. 2022) ...................................................................................7, 12

**Page**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret.*
    *Income Sec. Act (ERISA) Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ...................................................................................5, 7

*In re Barrick Gold Sec. Litig.*,
    314 F.R.D. 91 (S.D.N.Y. 2016) ...................................................................................11, 15

*In re Initial Pub. Offering Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008)...............................................................................11

*In re JPMorgan Chase & Co. Sec. Litig.*,
    2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)..................................................................11

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................6, 15, 16

*In re NIO, Inc. Sec. Litig.*,
    2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)................................................... *passim*

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) .............................................................................1, 5, 15

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)..............................................................................................16

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) .....................................................................................8, 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) ............................................................4, 6, 7, 16

*In re Vale S.A. Sec. Litig.*,
    2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ......................................................................15

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ........................................................................................6

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) .............................................................................11, 13, 14

*Martínek v. AmTrust Fin. Servs., Inc.*,
    2022 WL 326320 (S.D.N.Y. Feb. 3, 2022)..................................................................11, 14

4899-1168-9302.v1

**Page**

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)..................................................................................5, 12

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  328 F.R.D. 86 (S.D.N.Y. 2018) ...........................................................................................12

*Onate v. AHRC Health Care, Inc.*,
  2023 WL 8648167 (S.D.N.Y. Dec. 14, 2023) .......................................................................5

*Pearlstein v. BlackBerry Ltd.*,
  2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...............................................................11, 14, 16

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ...........................................................................................12

*Puddu v. 6D Glob. Techs., Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ........................................................................9

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)..................................................................................................14

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  __ F. Supp. 3d __, 2025 WL 1903959
  (S.D.N.Y. July 10, 2025) ............................................................................................ *passim*

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd sub nom.*
  *Waggoner*, 875 F.3d 79.......................................................................................................12

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)....................................................................................................15

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008)..................................................................................................13

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017).........................................................................................9, 11, 13

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018).........................................................5, 9, 12, 14

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)............................................................................................................9
§78t(a)............................................................................................................9

Federal Rule of Civil Procedure
Rule 23 ........................................................................................................1, 4
Rule 23(a)................................................................................................*passim*
Rule 23(a)(1).................................................................................................5
Rule 23(a)(2).................................................................................................5
Rule 23(a)(3).................................................................................................6
Rule 23(a)(4).................................................................................................7
Rule 23(b) ....................................................................................................4
Rule 23(b)(3)..........................................................................................*passim*
Rule 23(b)(3)(A)-(D) ...................................................................................15
Rule 23(g)(1)...............................................................................................16
Rule 23(g)(1)(A) .........................................................................................16

4899-1168-9302.v1

Lead Plaintiff Genesee County Employees' Retirement System ("GCERS" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for an order: (i) certifying this action as a class action pursuant to Federal Rule of Civil Procedure (the "Rule(s)") 23; (ii) appointing Lead Plaintiff as Class Representative; and (iii) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    INTRODUCTION

Pursuant to Rules 23(a) and (b)(3), Lead Plaintiff moves for certification of a class consisting of: All persons and entities who purchased the publicly traded common stock of DocGo Inc. ("DocGo" or the "Company") between April 29, 2022 and September 15, 2023, inclusive (the "Class Period"), and were damaged thereby (the "Proposed Class").[1]

"Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws . . . ." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *17 (S.D.N.Y. Sept. 8, 2021); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009).  This securities case is no exception.

First, this action satisfies each requirement of Rule 23(a):

- *Numerosity*: During the Class Period, there were more than 260 institutional investors in DocGo common stock, and an average of 4 million shares of DocGo common stock traded on a weekly basis, meaning there are likely thousands of Proposed Class members who were harmed by Defendants' misconduct.

- *Commonality and Typicality*: Defendants' false and misleading public statements impacted all Proposed Class members.  Lead Plaintiff, like all Proposed Class members, was injured by Defendants' misconduct.

---

[1]    Excluded from the Proposed Class are: (i) defendants DocGo and Anthony Capone ("Capone") (collectively, "Defendants"); (ii) the officers and directors of DocGo, at all relevant times; (iii) members of the immediate families and legal representatives, heirs, successors, or assigns of the individuals identified in (i) or (ii); and (iv) any entity in which any of the Defendants has or had a controlling interest.

- *Adequacy*: Lead Plaintiff is an institutional investor that has engaged qualified counsel, actively litigated this case, participated in discovery, and is committed to prosecuting this action to maximize the recovery for the Proposed Class.

This action also satisfies Rule 23(b)(3)'s predominance and superiority requirements. Predominance is met because key questions – including whether Defendants made materially false or misleading statements – will be answered on a class-wide basis. Lead Plaintiff is also entitled to a presumption of class-wide reliance under the fraud-on-the-market theory set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Further, common issues regarding damages predominate because damages can be measured on a class-wide basis. A class action is also the superior method for adjudicating the Proposed Class's claims and promoting judicial economy, as the alleged misconduct damaged thousands of geographically dispersed investors, many of whom likely have claims too small to economically pursue individual litigation. Lead Plaintiff respectfully submits that its motion should be granted.

## II.    FACTUAL BACKGROUND

### A.    Summary of the Allegations

This is a federal securities class action against DocGo and former DocGo CEO, Capone. DocGo is a healthcare transportation and mobile health services company. Lead Plaintiff alleges that during the Class Period, Defendants issued a series of materially false and misleading statements convincing investors that in an industry where companies had not figured out how to monetize artificial intelligence ("AI") in healthcare, Capone's unique educational background set DocGo apart from the herd. ¶¶31-47.[2] Defendants also misled investors about DocGo's ability to sign asylum seekers onto New York State Medicaid, and DocGo's ability to generate long-term revenue by transitioning these patients to DocGo's payor vertical. ¶60.

---

[2]    Unless otherwise indicated, all "¶__" and "¶¶__" references are to the Amended Complaint for Violations of the Federal Securities Laws (ECF 43) (the "Amended Complaint").

Before and during the Class Period, DocGo and Capone touted to investors Capone's impressive educational pedigree. According to Defendants, Capone graduated from SUNY Potsdam with *summa cum laude* degrees in computer science, philosophy, and law. *See* ¶¶37, 45. Also according to Defendants, Capone then earned a master's degree from Clarkson University in computational learning theory, a field of study in AI. *See, e.g.*, ¶¶37, 45, 72, 75. Capone told investors that his education (specifically, his graduate degree) was the secret ingredient that helped DocGo solve the issue of healthcare companies monetizing AI. *See* ¶¶73-76, 80-83, 85.

Additionally, toward the end of the Class Period, while dealing with the fallout from a controversial $432 million no-bid government contract to provide migrant services, Capone assured investors that DocGo had established that it could generate long-term revenue streams from government contracts by transitioning patients from the Company's government vertical (providing care for underserved populations) to its payor vertical (providing long-term care to patients through Medicaid) without incurring any customer acquisition costs. ¶¶60-61, 91. Specifically, Capone told investors that DocGo had "already signed up over 3,000 asylum seekers onto New York State Medicaid through United Healthcare." ¶60.

This all turned out to be too good to be true. Defendants' fraud began to unravel on September 10, 2023, when the *Times Union* reported that Capone's statements about signing migrants onto New York State Medicaid were false. ¶94. Then, on September 14, 2023, the *Times Union* published an article titled: "DocGo CEO Anthony Capone admits he didn't earn graduate degree," in which Capone admitted he did "'not have a master's degree from Clarkson University, nor from any other institution.'"[3] ¶96. As a direct result of these revelations, DocGo's stock price plummeted, causing tens of millions of dollars in damage to shareholders.

---

[3]    Emphasis is added and citations are omitted unless otherwise indicated.

- 3 -

4899-1168-9302.v1

### B.    The Proposed Class Representative

On January 17, 2024, GCERS was appointed Lead Plaintiff.  ECF 30.  Lead Plaintiff now seeks appointment as Class Representative pursuant to Rule 23.  *See* Ex. 1, ¶5.[4]  Lead Plaintiff is a public pension fund for over 1,000 participants from the county of Genesee, Michigan, with over $250 million assets under management.  ¶14.  During the Class Period, Lead Plaintiff purchased DocGo common stock at artificially inflated prices and was damaged thereby.  Ex. 1, ¶4; ECF 17-2 at 2-3.

## III.    THE PROPOSED CLASS SATISFIES RULE 23

"To be certified, a putative class must demonstrate that it satisfies all four of the requirements of Rule 23(a) and one of the categories of Rule 23(b) of the Federal Rules of Civil Procedure." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 73 (S.D.N.Y. 2015).  The relevant inquiry "is whether Plaintiff[s] meet[] Rule 23's requirements, not whether Plaintiff[s] will prevail on the merits." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *7 (S.D.N.Y. July 10, 2019); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries.").  "The Second Circuit has directed courts to adopt a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and . . . the benefits to the public provided by class actions." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 274-75 (S.D.N.Y. 2008).

### A.    The Proposed Class Satisfies Rule 23(a)

Rule 23(a) sets forth four requirements for class certification: (i) the class must be so numerous that joinder of all members is impractical; (ii) there must be questions of law or fact that are common to the class; (iii) the claims of the class representative must be typical of the class's claims; and (iv) the class

---

[4]    Unless otherwise indicated, all "Ex. __" references are to the declaration of Christopher M. Wood filed concurrently herewith in support of this motion ("Wood Decl.").

- 4 -

4899-1168-9302.v1

representative must fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  This action satisfies each requirement.

### 1.     The Proposed Class Is Sufficiently Numerous

Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'Numerosity is presumed when the putative class has forty or more members.'"  *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, __ F. Supp. 3d __, 2025 WL 1903959, at \*1 (S.D.N.Y. July 10, 2025) (quoting *Onate v. AHRC Health Care, Inc.*, 2023 WL 8648167, at \*3 (S.D.N.Y. Dec. 14, 2023)).  In securities actions, "'"the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."'"  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012).

During the Class Period, over 260 institutions held DocGo common stock, an average of 4 million shares of DocGo common stock traded weekly, and the Company had roughly 50.5 million shares outstanding.  Ex. 2 ("Cain Rpt.").  These facts easily establish numerosity.  *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 423 (S.D.N.Y. 2014) (numerosity satisfied with 32.9 million outstanding shares and weekly trading volume of 6 million shares); *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at \*4 (S.D.N.Y. Aug. 13, 2018) (numerosity satisfied with 22.7 million shares outstanding).

### 2.     Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "'Even a single common legal or factual question will suffice.'"  *NYSE Specialists*, 260 F.R.D. at 70.  Accordingly, "[t]his requirement has been characterized as a '"low hurdle."'"  *McIntire*, 38 F. Supp. 3d at 424.  "The standard is particularly permissive in the context of securities fraud litigation."

4899-1168-9302.v1

*In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *5 (E.D.N.Y. Aug. 8, 2023). *See also Dentsply*, 2025 WL 1903959, at *2 ("Commonality is a low bar, especially in securities-fraud actions.").

Lead Plaintiff easily clears this low threshold. As in *Signet Jewelers*, this case

raises common questions of law and fact, including whether (i) statements disseminated to the Class by Defendants during the Class Period misrepresented or omitted material facts; (ii) the alleged fraud was material to the putative Class; and (iii) Defendants acted knowingly or recklessly.

2019 WL 3001084, at *8; *see also Gruber v. Gilbertson*, 2019 WL 4439415, at *3 (S.D.N.Y. Sep. 17, 2019) ("[T]he class proceeding will generate common answers to several key questions, including whether defendants engaged in deceptive conduct."), *modified on other grounds*, 2021 WL 3524089 (S.D.N.Y. Aug. 10, 2021).

### 3. The Proposed Class Representative's Claims Are Typical

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met if "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 126 (S.D.N.Y. 2023). Typicality does not require "'factual identity between the named [Lead Plaintiff] and the class members,'" and, accordingly, "is 'not demanding'" to satisfy. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). "In securities cases alleging dissemination of allegedly false or misleading statements, the nature of the common injury generally satisf[ies] typicality." *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 443 (S.D.N.Y. 2013).

Here, Lead Plaintiff's and the Proposed Class's claims are founded on the same facts and legal theories – *i.e.*, that Defendants' misrepresentations artificially inflated DocGo's stock price, which caused injury to investors when the relevant truth was revealed through a series of partial disclosures and DocGo's stock price subsequently dropped. Accordingly, proving Lead Plaintiff's claims will prove the

- 6 -

4899-1168-9302.v1

Proposed Class's claims, and typicality is satisfied. *See Bank of Am.*, 281 F.R.D. at 139 (typicality satisfied where "[a]s with the proposed class members, the class [Lead Plaintiff] assert[s] that they acquired [company] securities at prices allegedly inflated by defendants' misstatements and/or omissions, and have an interest in maximizing their recovery").

### 4. Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)'s final requirement is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when: (i) the class representative's interests are not antagonistic to the class's interests; and (ii) class counsel is qualified, experienced, and generally able to conduct the litigation. *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 204-05 (S.D.N.Y. 2022). "'Only a fundamental conflict will defeat the adequacy of representation requirement.'" *Guadagna v. Zucker*, 332 F.R.D. 86, 96 (E.D.N.Y. 2019).

No fundamental conflicts exist here – rather, Lead Plaintiff's and the Proposed Class's interests are directly aligned. Like all Proposed Class members, Lead Plaintiff purchased DocGo common stock at inflated prices during the Class Period and were injured by Defendants' misconduct. Thus, Lead Plaintiff is incentivized to establish Defendants' liability and maximize its and the Proposed Class's recovery. *See Signet Jewelers*, 2019 WL 3001084, at *9 (Adequacy is satisfied where "all members of the proposed Class allege claims arising from the same wrongful conduct. Lead Plaintiff's legal theories, if vindicated, would vindicate the interests of the Class."). *See also Dentsply*, 2025 WL 1903959, at *2 (adequacy established where "[p]laintiffs' claims are identical to those of all class members").

Lead Plaintiff has also demonstrated its willingness and ability to vigorously prosecute this action by: (i) successfully moving for appointment as lead plaintiff; (ii) filing the comprehensive Amended Complaint; (iii) largely defeating Defendants' motion to dismiss; (iv) consulting with Robbins Geller regarding key case events; (v) reviewing court filings and other key documents; and (vi) complying with

4899-1168-9302.v1

its discovery obligations. Ex. 1, ¶7. Lead Plaintiff also understands the requirements and responsibilities of serving as class representative, and intends to continue to work with counsel to maximize the Class's recovery. *Id.*

Lead Plaintiff has also demonstrated its adequacy by retaining capable attorneys with considerable experience litigating securities class actions. *See* Ex. 3. As many courts have recognized, Robbins Geller is "'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012); *see also Jernigan*, 692 F. Supp. 3d at 127 ("[Robbins Geller] has substantial experience in securities class actions, including in this District, and has been found adequate in a multitude of cases."); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH, ECF 1316 at 55:13-18 (S.D.N.Y. Jan. 21, 2019) ("[T]he role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."); *Dentsply*, 2025 WL 1903959, at \*2 ("[P]laintiffs' counsel [Robbins Geller] are highly experienced and successful securities-fraud litigators."). In short, Robbins Geller is qualified and able to prosecute this action on the Proposed Class's behalf.

In summary, all of Rule 23(a)'s requirements are easily met.

### B.    The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that: (i) common questions of law or fact predominate over individual questions; and (ii) a class action is superior to alternative methods of resolving the dispute. Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

"Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Pfizer Inc. Sec. Litig.*, 282

4899-1168-9302.v1

F.R.D. 38, 52 (S.D.N.Y. 2012) ("'In securities fraud class actions . . . common issues of law and fact will generally predominate over individual issues.'").  "'Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).  Importantly, predominance does not require Lead Plaintiff to prove that "***questions*** common to the class . . . will be answered, on the merits, in favor of the class."  *Amgen*, 568 U.S. at 459 (emphasis in original).  And it requires only "'that common questions predominate, not that the action include only common questions.'"  *Wilson*, 2018 WL 3913115, at *8.

Lead Plaintiff alleges Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by making false and misleading statements in violation of U.S. Securities Exchange Commission ("SEC") Rule 10b-5.  Accordingly, Lead Plaintiff must establish: (i) Defendants made material misrepresentations; (ii) a connection with the purchase or sale of a security; (iii) scienter; (iv) reliance; (v) economic loss; and (vi) loss causation.  *See Amgen*, 568 U.S. at 460-61; *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *9-*11 (S.D.N.Y. Mar. 30, 2021).  Common questions here include whether: (i) Defendants made false and misleading statements and omissions; (ii) those statements and omissions were material; (iii) Defendants made those statements and omissions with scienter; and (iv) Defendants injured investors.  *See Alstom*, 253 F.R.D. at 281; *see also Amgen*, 568 U.S. at 475 ("[L]oss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions."); *Pfizer*, 282 F.R.D. at 52 ("All of these [§10(b)] elements, other than reliance . . . , are subject to class-wide proof in securities litigation . . . .").

4899-1168-9302.v1

Finally, individual issues regarding reliance will not predominate because Lead Plaintiff is entitled to a presumption of class-wide reliance under *Basic*'s fraud-on-the-market theory. 485 U.S. at 241.

### a. Lead Plaintiff is Entitled to the Fraud-on-the-Market Presumption of Reliance

The fraud-on-the-market theory premises that, "'in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'" *Id.* at 241-42 (alteration in original); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 270 (2014) ("'[T]he market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'"). Accordingly, "'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton*, 573 U.S. at 268 (alteration in original).

The fraud-on-the-market presumption is available where: (i) the alleged misrepresentations were publicly known; (ii) the misrepresentations were material; (iii) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed (*i.e.*, during the Class Period); and (iv) the stock traded in an efficient market. *See id.* at 277-78. These requirements are met here. First, Lead Plaintiff alleges that Defendants made materially false and misleading statements in public earnings calls and SEC filings. *See, e.g.*, ¶¶25-92. Second, although materiality must be proved at trial to invoke the *Basic* presumption, it "is not a prerequisite to class certification." *Amgen*, 568 U.S. at 459. Third, Lead Plaintiff purchased DocGo common stock between the time the misrepresentations were made and the end of the Class Period. *See* ECF 17-2 at 3. The final element is satisfied, as the market for DocGo common stock was efficient during the Class Period. Cain Rpt., ¶¶1, 3, 27-91.

4899-1168-9302.v1

In evaluating market efficiency, courts consider the factors outlined in both *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001). *See Waggoner*, 875 F.3d at 94 ("[D]istrict courts in this and other Circuits regularly consider five factors first set forth in *Cammer*."); *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at \*5-\*7 (S.D.N.Y. Sept. 29, 2015) (analyzing the *Cammer* and *Krogman* factors); *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at \*15-\*16 (S.D.N.Y. Jan. 26, 2021) (same). Moreover, because DocGo traded on the NASDAQ throughout the Class Period – one of the world's most efficient forums for stock trading – the market for DocGo common stock "'is presumed to be efficient.'" *See, e.g.*, *Billhofer*, 281 F.R.D. at 159; *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2008) ("[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency."); Cain Rpt., ¶¶33-36, 47.

### (1)    The *Cammer* Factors

The five *Cammer* factors are: "(1) the [stock's] average weekly trading volume; (2) the number of analysts who follow the stock; (3) the existence of market makers and arbitrageurs; (4) the ability of the company to file [SEC] Form S-3; and (5) evidence of share price response to unexpected news." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 101 n.55 (S.D.N.Y. 2016). "The Second Circuit has clearly and repeatedly instructed that, in ruling on market efficiency, district courts must conduct 'a holistic analysis based on the totality of the evidence presented' rather than a check-the-box approach to the various factors." *NIO*, 2023 WL 5048615, at \*13. Accordingly, "market efficiency does not turn on whether any one or combination of factors is satisfied, but rather on whether the evidence as a whole makes it more likely than not" that DocGo common stock traded in an efficient market. *Martínek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at \*10 (S.D.N.Y. Feb. 3, 2022).

- 11 -

4899-1168-9302.v1

***DocGo's High Average Trading Volume***. "'[A]verage weekly trading of 2% or more'" creates a "'strong presumption'" of market efficiency. *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018). High trading volume indicates efficiency "'because it implies significant investor interest in the company . . . [and], in turn, implies a likelihood that many investors are executing trades on the basis of newly available . . . corporate information.'" *Strougo v. Barclays PLC*, 312 F.R.D. 307, 316 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner*, 875 F.3d 79. During the Class Period, DocGo's average weekly trading volume was 3.9%, which creates a strong presumption of market efficiency. Cain Rpt., ¶35.

***Many Securities Analysts Followed DocGo***. Analyst coverage supports market efficiency because analysts facilitate the flow and digestion of information within the marketplace. *See id.*, ¶34; *see also Carpenters*, 310 F.R.D. at 79. During the Class Period, 10 analyst firms followed and collectively published over 100 reports about DocGo. Cain Rpt., ¶39. This significant coverage supports market efficiency. *See id.*, ¶¶36-39; *NIO*, 2023 WL 5048615, at *11 (five analysts support efficiency); *Aphria*, 342 F.R.D. at 206 (over 100 reports indicated efficiency).

***DocGo Had Numerous Market Makers***. Market makers support efficiency because they "'react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level.'" *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 95 (S.D.N.Y. 2018). During the Class Period, DocGo had at least 77 market makers, which further supports market efficiency. Cain Rpt., ¶46; *cf. McIntire*, 38 F. Supp. 3d at 432 ("The Court is satisfied that [company's] 20-market-maker average supports a presumption of market efficiency."); *Wilson*, 2018 WL 3913115, at *10 (78 market makers indicated market efficiency).

4899-1168-9302.v1

***DocGo Was Eligible to File Forms S-3***.  A company's ability to file a Form S-3 indicates market efficiency because it is associated with other characteristics that correlate with efficiency, including size and number of shares traded.  *See Carpenters*, 310 F.R.D. at 79.  Accordingly,

> it would be helpful to allege the Company was entitled to file an S-3 Registration Statement in connection with public offerings or, if ineligible, such ***ineligibility was only because of timing factors*** . . . .  Again, it is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency.

*Cammer*, 711 F. Supp. at 1287.  Here, DocGo was able to file a Form S-3 throughout the Class Period, which supports a finding of market efficiency.  Cain Rpt., ¶52.

***DocGo Stock Reacted to New, Company-Specific Information***.  The final *Cammer* factor focuses on whether a company's stock price reacts quickly to new, company-specific information.  *See Cammer*, 711 F. Supp. at 1287.  To test DocGo's responsiveness to new information, Lead Plaintiff's expert, Dr. Matthew Cain, who holds a Ph.D. in finance and teaches at the New York University School of Law, conducted an event study analyzing DocGo's stock price movements on days that Company-specific news was publicly released and comparing those movements to other days in the Class Period.  Cain Rpt., ¶¶56-65.  "An event study that correlates the disclosures of unanticipated, material information about a security with corresponding fluctuations in price has been considered *prima facie* evidence of the existence of . . . ." a cause-and-effect relationship.  *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 207-08 (2d Cir. 2008); *Carpenters*, 310 F.R.D. at 80.  As detailed in his report, Dr. Cain's event study identified – at a 99% confidence level – a cause-and-effect relationship between the release of new, DocGo-specific information and movement in DocGo's stock price.  Cain Rpt., ¶¶66-75.

### (2)      The *Krogman* Factors

The *Krogman* factors are: (i) the company's market capitalization; (ii) the stock's bid-ask spread; and (iii) the stock's float.  *See Krogman*, 202 F.R.D. at 467; *Waggoner*, 875 F.3d at 94-95.

- 13 -

***DocGo's Large Market Capitalization***.  A large market capitalization indicates efficiency because "'there is a greater incentive for stock purchasers to invest in more highly capitalized corporations.'" *Martínek*, 2022 WL 326320, at *13.  DocGo's market capitalization averaged $870.4 million over the Class Period (Cain Rpt., ¶78) which strongly supports market efficiency.  *See Carpenters*, 310 F.R.D. at 92 ($0.5 to $3.2 billion market capitalization supported efficiency).

***DocGo's Narrow Bid-Ask Spread***.  The bid-ask spread is the difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares; a low bid-ask spread indicates a more efficient market.  *See Krogman*, 202 F.R.D. at 478.  DocGo's bid-ask spread averaged just 0.17% during the Class Period, which further supports market efficiency.  Cain Rpt., ¶¶82-84; *NIO*, 2023 WL 5048615, at *12 (bid-ask spread of 0.17% fell "below bid-ask spreads which have shown efficiency in prior cases").

***DocGo's Large Public Float***.  A stock's "float" is the number of shares outstanding, excluding shares held by insiders and affiliated corporate entities.  *See Krogman*, 202 F.R.D. at 478.  A large public float supports efficiency because it shows a large percentage of shares were "available to non-insiders who could trade without restrictions and profit by trading on new information."  *BlackBerry*, 2021 WL 253453, at *16.  DocGo's public float was over 85%, which strongly supports market efficiency.  Cain Rpt., ¶¶87-88; *see Wilson*, 2018 WL 3913115, at *15 (average public float of 82.41% "exceeds amounts other courts have deemed sufficient to suggest a finding of market efficiency").

      **b.**      **Lead Plaintiff's Damages Model Is Consistent with the Proposed Class's Theory of Liability**

It is "'well-established' in this Circuit that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *see also Carpenters*, 310 F.R.D. at 74 ("Issues and facts surrounding damages have rarely been an obstacle to establishing predominance in section 10(b)

- 14 -

cases."). "All that is required at class certification is that '[Lead Plaintiff] must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015). Lead Plaintiff has done just that.

As described in Dr. Cain's report, damages can be calculated using the same methodology – the out-of-pocket measure – for all Proposed Class members. Cain Rpt., ¶¶92-109. Courts routinely find that this methodology is consistent with §10(b) liability and capable of calculating damages on a class-wide basis. *See Barrick Gold*, 314 F.R.D. at 105-06 (finding out-of-pocket methodology "entirely consistent with [Lead Plaintiff'] theory of Section 10(b) liability and would be measurable on a class-wide basis" and noting "securities class actions routinely seek out-of-pocket damages for fraudulent misrepresentations"); *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *19 (E.D.N.Y. Jan. 11, 2022) (same). Because the methodology for calculating per-share damages will be the same for each Proposed Class member, damages constitute a common question, and predominance is satisfied.

### 2. Class Treatment Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It is widely recognized that "[s]ecurities suits easily satisfy the Superiority Requirement of Rule 23(b)(3)." *MF Glob.*, 310 F.R.D. at 239; *NIO*, 2023 WL 5048615, at *17 ("[T]his case, like many other securities actions, would be best adjudicated as a class action."); *NYSE Specialists*, 260 F.R.D. at 80 (same). When assessing superiority, courts consider: (i) class members' interests in individually controlling separate actions; (ii) whether other litigation has already commenced; (iii) the desirability of concentrating claims in one forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, interest in individually prosecuting separate actions is minimal, as the expense of doing so would be prohibitive when weighed against potential recoveries. A class action in this District also

- 15 -

ensures efficient resource expenditure and consistent rulings. This District is also a desirable forum, as individual Proposed Class members are geographically dispersed and DocGo's headquarters are in this District. Lead Plaintiff does not foresee any management difficulties that would preclude proceeding as a class action. Indeed, Lead Plaintiff has already efficiently undertaken document discovery and motion briefing in this Court. In short, a class action is the superior method for litigating the Proposed Class's claims. *See MF Glob.*, 310 F.R.D. at 239 ("Securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because 'the alternatives are either no recourse for thousands of stockholders' or 'a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake.'"). *Dentsply*, 2025 WL 1903959, at *5 ("Like most other securities actions, a class action efficiently and effectively provides recourse to Dentsply's many stockholders, while avoiding inconsistent rulings and proliferating litigation.").

### C.    The Proposed Class Is Ascertainable

The "Second Circuit has [also] recognized an implied requirement that the class be 'ascertainable.'" *BlackBerry*, 2021 WL 253453, at *5 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017)). The Proposed Class here is ascertainable because it "clearly delineates the class's boundaries by the dates of investors' transactions in [DocGo] stock. Ascertaining the members of the class will be easily administrable by references to investor records." *BlackBerry*, 2021 WL 253453, at *13; *see also Signet Jewelers*, 2019 WL 3001084, at *9 (same).

### D.    Robbins Geller Should Be Appointed Class Counsel

A "court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, courts consider: (i) counsel's work in "identifying or investigating potential claims"; (ii) "experience in handling class actions"; (iii) "knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead

- 16 -

Plaintiff's chosen counsel, Robbins Geller, satisfies these requirements and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including in this District. *See* Ex. 3; *see also supra*, §III.A.4. Robbins Geller has also already vigorously prosecuted this action, including extensively investigating the claims and drafting the comprehensive Amended Complaint, successfully opposing Defendants' motion to dismiss, engaging in discovery, and pursuing class certification. Lead Plaintiff respectfully requests that the Court appoint Robbins Geller as Class Counsel.

## IV.    CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) certify this action as a class action; (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint Robbins Geller as Class Counsel.

DATED:  July 21, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD (admitted *pro hac vice*)


s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

- 17 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC I. NIEHAUS (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ericn@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

- 18 -

4899-1168-9302.v1

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)**

I, Christopher M. Wood, hereby declare that this document contains 5,243 words and complies with the word-count limitation provided by Local Rule 7.1(c).

DATED:  July 21, 2025

/s Christopher M. Wood
_____
CHRISTOPHER M. WOOD

- 1 -

4899-1168-9302.v1