UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

GENESEE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

DOCGO INC. and ANTHONY CAPONE,

Defendants.

—————————————————————— x

: Civil Action No. 1:23-cv-09476-KPF
:
: CLASS ACTION
:
:
: LEAD PLAINTIFF'S MEMORANDUM OF
: LAW IN SUPPORT OF UNOPPOSED
: MOTION FOR PRELIMINARY APPROVAL
: OF SETTLEMENT, CERTIFICATION OF
: THE CLASS, AND APPROVAL OF
: NOTICE TO THE CLASS
:
:

4920-4881-6500.v2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   SUMMARY OF THE LITIGATION ................................................................3

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................6

    A.    Terms of the Settlement ............................................................................6

    B.    The Standards for Preliminary Approval of a Proposed Settlement.......................8

    C.    The Settlement Satisfies the Rule 23(e)(2) Factors ...............................10

        1.    Lead Plaintiff and Its Counsel Have Adequately Represented the Class.........................................................................................10

        2.    The Proposed Settlement Was Negotiated at Arm's Length ....................12

        3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal................................................................12

        4.    The Proposed Method for Distributing Relief Is Effective.......................14

        5.    Attorneys' Fees and Expenses .................................................................15

        6.    The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion .........................................16

        7.    Class Members Are Treated Equitably .....................................................16

    D.    The Settlement Also Satisfies the Remaining *Grinnell* Factors ...........................17

        1.    The Stage of the Proceedings.....................................................................17

        2.    The Risks of Maintaining the Class Action through Trial.........................17

        3.    The Ability of Defendants to Withstand a Greater Judgment...................18

        4.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................18

IV.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE ...........................................................................19

V.    CERTIFICATION OF THE CLASS IS APPROPRIATE.................................21

VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................24

**Page**

VII.   CONCLUSION.................................................................................................24

4920-4881-6500.v2

**TABLE OF AUTHORITIES**

Page

## CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)...................................................................23

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ....................................................22, 23

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ..........................................................23

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)......................................................18

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................13, 18

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................12

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated by*
  *Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................ *passim*

*Fulton Cnty. Emps.' Ret. Sys. v. Blankfein*,
  2022 WL 4292894 (S.D.N.Y. Sept. 16, 2022)....................................12

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................11

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)......................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................22

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) .....................................................18

*In re Am. Realty Cap. Props., Inc. Litig.*,
  No. 1:15-mc-0040-AKH, ECF 1315 (S.D.N.Y. Feb. 3, 2020) ...............11

**Page**

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................19

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret.*
  *Income Sec. Act (ERISA) Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ..................................................................22, 23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)..............................................................9, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................................................11, 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................18, 19

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..............................................................10, 20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................20

*In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ....................................................................13, 19

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................................16

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020)....................................................................18

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ..........................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998)....................................................................................8

*In re Patriot Nat'l Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) ...........................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)...............................................................................9

**Page**

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2019 WL 3001084 (S.D.N.Y. July 10, 2019) ......................................................................22

*In re Stock Exchs. Options Trading Antitrust Litig.*,
　2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ........................................................................20

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
　2017 WL 2062985 (S.D.N.Y. May 15, 2017) ......................................................................23

*In re XL Fleet Corp. Sec. Litig.*,
　2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024)......................................................................15

*Lea v. Tal Educ. Grp.*,
　2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ......................................................................16

*McIntosh v. Katapult Holdings, Inc.*,
　2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ......................................................................18

*Onate v. AHRC Health Care, Inc.*,
　2023 WL 8648167 (S.D.N.Y. Dec. 14, 2023) ......................................................................22

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
　No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) .............................................15

*Pearlstein v. BlackBerry Ltd.*,
　2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).....................................................................20

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
　349 F.R.D. 606 (S.D.N.Y. 2025) ..........................................................................................22

*Vaccaro v. New Source Energy Partners L.P.*,
　2017 WL 6398636 (S.D.N.Y. Dec 14, 2017) ................................................................13, 18

*Villella v. Chem. & Mining Co. of Chile Inc.*,
　333 F.R.D. 39 (S.D.N.Y. 2019) ............................................................................................11

*Volino v. Progressive Cas. Ins. Co.*,
　2025 WL 733251 (S.D.N.Y. Mar. 7, 2025) .........................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2005)......................................................................................................9

*Weinberger v. Kendrick*,
　698 F.2d 61 (2d Cir. 1982)....................................................................................................20

- v -

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)................................................................................................................3, 4
§78t(a)................................................................................................................3, 4
§78u-4(a)(7)...........................................................................................................2
§78u-4(a)(7)(A).....................................................................................................20
§78u-4(a)(7)(B).....................................................................................................20
§78u-4(a)(7)(C).....................................................................................................20
§78u-4(a)(7)(D).....................................................................................................20
§78u-4(a)(7)(E).....................................................................................................20
§78u-4(a)(7)(F).....................................................................................................20

Federal Rules of Civil Procedure
Rule 23...........................................................................................................2, 20
Rule 23(a)...............................................................................................2, 10, 22
Rule 23(a)(2)........................................................................................................22
Rule 23(b)......................................................................................................2, 10
Rule 23(b)(3)..................................................................................................22, 23
Rule 23(c)..............................................................................................................18
Rule 23(c)(2)(B)...................................................................................................20
Rule 23(e)....................................................................................................8, 22
Rule 23(e)(1)...................................................................................................2, 9
Rule 23(e)(1)(B)...................................................................................................20
Rule 23(e)(2)...............................................................................................2, 9, 10
Rule 23(e)(2)(A)...................................................................................................10
Rule 23(e)(2)(B)...................................................................................................12
Rule 23(e)(2)(C)(i)...............................................................................................12
Rule 23(e)(2)(C)(ii)..............................................................................................14
Rule 23(e)(2)(C)(iii).............................................................................................15
Rule 23(e)(2)(C)(iv).............................................................................................16
Rule 23(e)(2)(D)...................................................................................................16

**SECONDARY AUTHORITIES**

Laarni T. Bulan and Eric Tam,
    *Securities Class Action Settlements, 2024 Review & Analysis*,
    (Cornerstone Research 2025).................................................................................14

Lead Plaintiff Genesee County Employees' Retirement System ("Lead Plaintiff" or "GCERS") respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement in this Litigation; (ii) certification of the proposed Class for purposes of the Settlement; (iii) approval of the form and manner of the settlement notices to members of the Class; and (iv) the scheduling of a final fairness hearing ("Settlement Hearing"), along with setting deadlines in connection therewith.[1]  The requested relief is set forth in the Parties' agreed-upon form of [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") and exhibits thereto.

## I.    INTRODUCTION

The proposed Settlement, memorialized in the Stipulation filed concurrently herewith, provides a recovery of $12.5 million in cash (the "Settlement Amount") to resolve all of Lead Plaintiff's claims against defendants DocGo Inc. and Anthony Capone ("Defendants").  The Settlement comes after the Parties litigated Defendants' motion to dismiss, began fact discovery, and participated in arm's-length mediation overseen by Miles Ruthberg, of Philips ADR, an experienced mediator (the "Mediator").  The Settlement is the result of a knowledgeable and comprehensive assessment of the strengths and weaknesses of the claims asserted in this Litigation, the costs and risks of proceeding with the Litigation, and the benefit to Class Members of receiving a recovery without further delay.

As detailed herein, the Settlement represents a very favorable recovery for the Class, based on an estimate of Lead Plaintiff's reasonable recoverable damages.  The Settlement will eliminate

---

[1]    Unless otherwise noted, all capitalized terms herein have the meanings ascribed to them in the Stipulation of Settlement dated November 12, 2025 ("Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Christopher M. Wood ("Wood Decl.") in support of Lead Plaintiff's motion.

the risks and uncertainty of continued proceedings by ensuring that Class Members will receive compensation in the near-term – instead of many months or years from now, or perhaps never.

The Settlement satisfies Rule 23(e)(1) of the Federal Rules of Civil Procedure for the issuance of the Notice, as well as each of the Rule 23(e)(2) factors and those identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), which courts consider at the preliminary and final approval stages.[2] Accordingly, Lead Plaintiff respectfully requests preliminary approval of the Settlement so that notice may be provided to the Class pursuant to the proposed Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which will:

      (a)      preliminarily approve the Settlement on the terms set forth in the Stipulation;

      (b)      find that the Class satisfies each element of Rules 23(a) and 23(b)(3) and should be certified for settlement purposes;

      (c)      approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release form ("Proof of Claim"), Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"), and Postcard Notice, attached as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Stipulation;

      (d)      find that the procedures for distributing the Notice and Postcard Notice and publishing of the Summary Notice, as set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances and comply with the requirements of due process, Rule 23, and §21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

---

[2]      Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

- 2 -

(e)    establish a schedule and procedures for: (i) disseminating the Postcard Notice and Notice and publishing the Summary Notice; (ii) requesting exclusion from the Class; (iii) objecting to any aspect of the Settlement, Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees, charges, and expenses; (iv) submitting papers in support of final approval of the Settlement; and (v) the Settlement Hearing.

## II.    SUMMARY OF THE LITIGATION

On October 27, 2023, the above-captioned action was filed in the United States District Court for the Southern District of New York (the "Court") asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").  ECF 1.

By Order dated January 17, 2024, the Court appointed: (1) GCERS as Lead Plaintiff; and (2) its chosen counsel, Robbins Geller Rudman & Dowd LLP, as Lead Counsel.  ECF 30.

On March 20, 2024, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against Defendants and former defendants Stan Vashovsky and Andre Oberholzer ("Former Defendants) under §§10(b) and 20(a) of the Exchange Act.  ECF 43.

Prior to filing the Complaint, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Litigation.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, DocGo earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the other Defendants; (iii) other publicly available information and data concerning the Company; and (iv) the applicable law governing the claims and potential defenses.

4920-4881-6500.v2

On April 17, 2024, Defendants and Former Defendants filed their pre-motion to dismiss letter. ECF 44. Lead Plaintiff filed its response on April 22, 2024. ECF 47. On May 21, 2024, the Court adjourned as unnecessary the scheduled pre-motion conference, and directed the Parties to submit a briefing schedule for the motion to dismiss. ECF 57.

On June 21, 2024, DocGo and the Former Defendants filed their motion to dismiss the Complaint. ECF 61-62. On the same day, defendant Capone filed a motion joining his co-defendants' motion to dismiss and provided supplemental argument. ECF 63. On August 20, 2024, Lead Plaintiff filed its memorandum of law in opposition to the motion to dismiss, and Defendants and the Former Defendants filed their respective replies on September 19, 2024. ECF 65, 68, 72.

On March 28, 2025, the Court largely denied Defendants' motions to dismiss, upholding Lead Plaintiff's §§10(b) and 20(a) claims against Capone and Lead Plaintiff's §10(b) claims against DocGo related to their false and/or misleading statements regarding: (1) DocGo's former CEO Capone's educational background; and (2) DocGo's purported involvement in signing migrants up for New York State Medicaid. ECF 77. The Court granted the motion with respect to Vashovsky and Oberholzer. *Id*.

The Parties submitted a proposed case management plan and proposed protective order on May 2, 2025. ECF 86-87. On May 5, 2025, the Court granted the proposed protective order and proposed case management plan. ECF 88-89. On June 3, 2025, the Parties exchanged initial disclosures and submitted an electronically stored information agreement. Immediately thereafter, the Parties served discovery on each other that included requests for production of documents, interrogatories, and requests for admission. Lead Plaintiff also subpoenaed several third parties for documents and testimony – including analysts covering DocGo, investor and public relations firms,

educational institutions, and UnitedHealth – which thus far has yielded evidence in support of Lead Plaintiff's claims.

On July 21, 2025, Lead Plaintiff filed its motion for class certification. ECF 91-94.

The Parties began exploring the possibility of a settlement in the summer of 2025. Specifically, the Parties agreed to engage in mediation and subsequently retained Miles N. Ruthberg of Phillips ADR, to act as Mediator in the Litigation.

On September 9, 2025, Lead Counsel and Defendants' Counsel participated in a mediation session before the Mediator. In advance of the mediation, Lead Plaintiff and Defendants exchanged and submitted detailed opening mediation statements to the Mediator, which addressed both liability and damages issues. The Parties negotiated in good faith at the September 9, 2025 mediation, but no agreement was reached. Following additional negotiations facilitated by the Mediator, the Parties ultimately accepted the Mediator's proposal to settle the Litigation for $12.5 million, subject to the negotiation of the terms of a stipulation of settlement and approval by the Court. On October 1, 2025, the Parties notified the Court of the Settlement and requested a stay of the Litigation, which was granted the same day. ECF 97-98.

On November 12, 2025, following additional negotiations concerning specific settlement terms, the Parties executed the Stipulation. The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Parties.

Lead Plaintiff, through Lead Counsel, conducted an extensive investigation into the claims and the underlying events and transactions alleged in the Complaint, including the maximum amount of damages that Lead Counsel believes was potentially recoverable by the Class. Based upon their investigation, prosecution, and mediation of the case, and taking into consideration the immediate and significant monetary benefit that the Class Members will receive from the

Settlement, weighed against the significant risks of continued litigation and trial, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to Lead Plaintiff and to the other Class Members, and in their best interests, and have agreed to settle the claims raised in the Litigation pursuant to the terms and conditions of this Settlement.

Defendants have denied, and continue to deny, any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Defendants have denied, and continue to deny, *inter alia*, the allegations that they failed to disclose any material information to investors, or that Lead Plaintiff or Class Members have suffered any damages or were otherwise harmed by the conduct alleged in the Litigation. Defendants have asserted, and continue to assert, that their conduct was, at all times, proper, that they acted, at all times, in good faith and in compliance with all applicable provisions of law, and that the claims asserted against Defendants are without merit. In addition, Defendants maintain that they have meritorious defenses to all of the claims alleged in the Litigation. Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Terms of the Settlement

The Settlement resolves all of the Class's claims against Defendants. The Stipulation provides that Defendants will pay, or cause to be paid, the Settlement Amount ($12.5 million) within 20 calendar days after the later of: (i) the entry date of the Preliminary Approval Order; or

(ii) Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account. Stipulation, ¶2.2. For the Class's benefit, the Settlement Amount will be invested in instruments backed by the full faith and credit of the U.S. Government or an agency thereof, or fully insured by the U.S. Government or an agency thereof, and reinvested as those instruments mature in similar instruments at their then-current market rates. *Id.*, ¶2.8.

The recovery to individual Class Members will depend on variables outlined in the proposed Plan of Allocation (set forth in the Notice), including the number and aggregate amount of claims submitted by eligible Class Members, and the timing and amount of their purchases and sales of DocGo common stock.

The Settlement Amount, plus accrued interest, comprises the Settlement Fund. The cost of Settlement administration – including the costs of notice to the Class, Taxes, and Tax Expenses – will be funded by the Settlement Fund. Stipulation, ¶5.2. Lead Plaintiff proposes an experienced and nationally-recognized class-action settlement administrator, Verita Global ("Verita" or the "Claims Administrator"), to disseminate notice to the Class in accordance with the process set forth in the Preliminary Approval Order. *Id.*, ¶1.3. If the Court grants preliminary approval, the Claims Administrator will email or mail the Postcard Notice (Exhibit A-4 to the Stipulation) to Class Members who can be identified with reasonable effort. Preliminary Approval Order, ¶9(b). The Claims Administrator will also cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *Id.*, ¶9(c).

The Notice, which will be posted to a website established for purposes of the Settlement, explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim, under the Plan of Allocation

- 7 -

and subject to this Court's approval; and there will be no reversion to Defendants.  *See generally*

Stipulation, Ex. A-1.  The Notice also describes: (i) Lead Counsel's application for attorneys' fees

and expenses; (ii) the procedures for requesting exclusion from the Class or objecting to the

Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and expenses;

and (iii) the date and time for the Settlement Hearing.  *See* Stipulation, Ex. A-1.

In exchange for the benefits provided by the Settlement, Class Members will release any and

all claims against Defendants "arising out of, or in connection with: (i) any purchase or acquisition

of publicly traded DocGo common stock during the period between November 5, 2021, and

September 15, 2023, inclusive; and (ii) the conduct, allegations, acts, facts, matters, occurrences,

transactions, disclosures, filings, representations, statements, or omissions that were or could have

been alleged by Lead Plaintiff or any other Member of the Class in the Litigation."  Stipulation,

¶1.25.[3]

As detailed herein, the proposed Settlement is a favorable result for the Class and provides a

certain cash recovery now without the risks and delays of further litigation.

### B.    The Standards for Preliminary Approval of a Proposed Settlement

Rule 23(e) requires judicial approval for settling claims brought as a class action.  Fed. R.

Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes

of settlement – may be settled . . . only with the court's approval.").  The settlement of class-action

litigation is favored and encouraged.  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d

Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class

---

[3]    The Stipulation also describes the general terms of DocGo's option to terminate the Settlement in its sole discretion if the opt-out threshold defined in the Supplemental Agreement is exceeded and not cured in accordance with the terms of the Supplemental Agreement.  Stipulation, ¶7.3.

- 8 -

action context"); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)) (same), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020).

Under Rule 23(e)(1), the issue at preliminary approval is whether the Court "'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment;
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  These factors largely overlap with, but do not displace (*In re Payment Card*, 330 F.R.D. at 29) the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;

- 9 -

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *Volino v. Progressive Cas. Ins. Co.*, 2025 WL 733251, at *2 (S.D.N.Y. Mar. 7, 2025). As discussed below, the proposed Settlement satisfies each of the factors identified in Rule 23(e)(2), as well as each of the applicable *Grinnell* factors.[4] In addition, each of the Rule 23(a) and (b) factors are met for certification of the Class for settlement purposes. Accordingly, notice of the proposed Settlement should be sent to the Class.

### C. The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1. Lead Plaintiff and Its Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel unquestionably satisfy the adequacy requirements of Rule 23(e)(2)(A), because they have diligently litigated this case throughout on behalf of the Class. They thoroughly investigated the facts and potential legal claims. These efforts continued and resulted in the preparation of the Complaint. Lead Counsel litigated Defendants' motion to dismiss which the Court granted in part and denied in part. The Parties exchanged written discovery and responses and initial productions, and Lead Plaintiff subpoenaed eleven third parties, who produced over 5,440 documents, totaling over 20,440 pages. These efforts also provided Lead Plaintiff with an understanding of the potential strengths and weaknesses of the theories of liability asserted and upheld, and of its challenges in moving forward with the Litigation. This understanding positioned

---

[4]     Since notice of the proposed Settlement has not been approved by the Court or disseminated to the Class, consideration of this factor is premature at the preliminary approval stage. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y. 2019) ("The Court need not consider *Grinnell* factor #2 . . . because consideration of this factor is generally premature at the preliminary approval stage.").

Lead Plaintiff to prepare an effective mediation statement and presentation to Mr. Ruthberg, and ultimately to successfully resolve this Litigation.

Lead Plaintiff also participated actively in this Litigation, reviewing pleadings and collecting and producing documents in response to the discovery request, and providing sworn responses to interrogatories. In addition, Lead Plaintiff closely monitored the progress of the Litigation, maintained ongoing communication with Lead Counsel, and participated in key strategic decisions, including those pertaining to the resolution of the case.

In addition, Lead Counsel has substantial experience in prosecuting complex securities class actions in the District and nationwide, and that experience directly led to the favorable result here. *See, e.g.*, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-0040-AKH, ECF 1315 at 184:10-11 (S.D.N.Y. Feb. 3, 2020) ("I believe that, in this case, as I said before, the services delivered by the Robbins Geller firm were outstanding . . . .") (excerpt of transcript attached as Exhibit 2 to the Wood Decl.); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation," which reflect "its ability to manage this litigation"). *See also* www.rgrdlaw.com.

Bringing this experience and knowledge to bear, and given the unique challenges present in this case, Lead Counsel believes that the Settlement is in the best interests of the Class. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing that "great weight is accorded to counsel's recommendation" if a settlement is reached by experienced counsel after arm's-length negotiations); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("'"[G]reat" weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.'").

- 11 -

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations with sophisticated counsel conducted through an experienced and neutral mediator. The Parties worked on developing an understanding of the strengths and weaknesses of their claims and defenses and balanced those considerations against the risks of continued litigation. Here, the Mediator was instrumental in separately working with the Parties to achieve a reasonable result.

The Parties attended a virtual mediation on September 9, 2025, preceded by the submission and exchange of detailed mediation statements. Although the Parties negotiated in good faith, the mediation was not successful. Further discussions and negotiations subsequently took place with the Mediator, and ultimately, the Parties accepted a Mediator's proposal to resolve the Litigation for $12.5 million, subject to the negotiation of final settlement terms and Court approval.

In short, negotiations were well-informed and at arm's-length, and facilitated by a neutral, third-party mediator experienced in evaluating and resolving litigation of this nature. Accordingly, Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the "'product of serious, informed, non-collusive negotiations,'" *Fulton Cnty. Emps.' Ret. Sys. v. Blankfein*, 2022 WL 4292894, at *2 (S.D.N.Y. Sept. 16, 2022), and was "based on the suggestion [of] . . . a neutral mediator." *Facebook*, 343 F. Supp. 3d at 408-09. *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

Assessing a settlement requires balancing the benefits offered to the class against the costs, risks, and delay of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps

- 12 -

with the first (the complexity, expense, and likely duration of the litigation), fourth (the risks of establishing liability), and fifth (the risks of establishing damages) *Grinnell* factors.

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages. *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("'In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.'"); *Flag Telecom*, 2010 WL 4537550, at *15 (recognizing that complex securities class actions are "notably difficult and notoriously uncertain") (citation modified).

While Lead Plaintiff believes that evidentiary support exists for the allegations, it recognizes that significant hurdles stand in the way of continuing to develop evidence, proving liability, establishing damages, and proceeding to – and prevailing at – trial. Indeed, although Lead Plaintiff believes its case is strong, it acknowledges that Defendants would contest, *inter alia*, the materiality of alleged misstatements regarding Capone's education, and that they would contest loss causation regarding alleged misstatements about DocGo's purported Medicaid contract.

The proposed Settlement represents approximately 23% of reasonably recoverable damages. This recovery is well above the range of settlements that have been approved within this Circuit and District. *See, e.g.*, *In re Patriot Nat'l Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages); *In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"). The recovery also exceeds the 8.4% median settlement as a percentage of plaintiff-style

- 13 -

damages in 2024 (the last year for which data is available) in cases with estimated damages between $25 million and $74 million. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements, 2024 Review & Analysis* at 7, fig. 5 (Cornerstone Research 2025).[5] Thus, compared to other recent, similarly situated settlements, the Settlement is a very favorable outcome for the Class.

### 4.   The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. Preliminary Approval Order, ¶¶9(b)-9(c). In addition, a Settlement-specific website will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

If approved by the Court, the Claims Administrator, Verita, will use standard methods to process claims and distribute relief after final settlement approval. Specifically, Class Members will submit the Court-approved Proof of Claim, either by mail or online through the Settlement website's claims filing portal. Based on the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate in the Settlement by, among other things, calculating their respective claims based on the Court-approved Plan of Allocation. *See* Stipulation, ¶¶5.4-5.5. Lead Plaintiff's claim is subject to the same standard of review. The Claims Administrator will notify claimants of any deficiencies in their claims or conditions of ineligibility and claimants will be afforded the opportunity to cure any deficiencies or to contest the

---

[5]  Attached as Exhibit 3 to the Wood Decl. and available at www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

rejection of their claims.  *Id.*, ¶5.7.  Any claims dispute that cannot be resolved may be presented to the Court for resolution.  *Id.*

Upon the occurrence of the Effective Date and the completion of the claims administration process, the Claims Administrator will distribute the Net Settlement Fund to Authorized Claimants. In the event there are un-claimed funds after the initial distribution, and it would be economically feasible to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (after the deduction of the estimated expenses and costs of doing so).  Any additional distributions will proceed in the same manner until it is no longer economically feasible to do so.  Stipulation, ¶5.10.

### 5.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The proposed Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to 33% of the Settlement Amount and litigation expenses not to exceed $250,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 at 3.  The anticipated fee request is in line with awards in other securities settlements recently approved.  *See, e.g., In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding 33-1/3% of $19.5 million recovery, plus expenses); *Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) (awarding 33-1/3% of $7.5 million recovery, plus expenses) (attached as Exhibit 4 to the Wood Decl.); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding 33-1/3% of $18 million recovery, plus expenses); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *14-*17 (E.D.N.Y. Jan. 21, 2022) (awarding 33-1/3% of $9 million recovery, plus expenses); *Lea v. Tal Educ. Grp.*, 2021 WL

5578665, at \*12-\*13 (S.D.N.Y. Nov. 30, 2021) (awarding 33-1/3% of $7.5 million recovery, plus expenses).

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel after the Court executes the Judgment and an order awarding such fees and expenses.  Stipulation, ¶6.2.

### 6. The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires disclosure of any other agreement between the parties.  The parties have entered into a standard supplemental agreement which provides DocGo with the option to terminate the Settlement if opt-out requests by Class Members exceed a certain threshold.  *See* Stipulation, ¶7.3.

### 7. Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), considers whether Class Members are treated equitably. As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, and will recover based on the timing of their purchases and sales of DocGo common stock, as well as the strength of their claims taking into account the Court's motion to dismiss order.  Authorized Claimants will receive their respective *pro rata* shares of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.  Where, as here, the proposed Plan of Allocation calls for the *pro rata* distribution of settlement proceeds it is "presumptively reasonable."  *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).

- 16 -

### D.    The Settlement Also Satisfies the Remaining *Grinnell* Factors

#### 1.    The Stage of the Proceedings

Although the Settlement was reached at a relatively early stage of the litigation, Lead Plaintiff and Lead Counsel approached settlement negotiations with a deep understanding and knowledge of the merits, and the strengths and weaknesses of their claims.  This knowledge is based on a prolonged, in-depth, and extensive investigation, drafting the Complaint, briefing Defendants' motion to dismiss, filing the motion for class certification, propounding and responding to written discovery requests, and subpoenaing and reviewing documents from key third parties.  All this work provided the foundation for a productive mediation and ultimately successful negotiations.

Lead Counsel also consulted with its damages expert, who provided useful guidance in evaluating and valuing the claims based on the facts alleged.  This insight was essential.  It allowed Lead Plaintiff and Lead Counsel to realistically assess the prospect of establishing damages, while enabling them to develop an effective plan to negotiate an eventual resolution.  The Mediator's involvement was also indispensable.  Mr. Ruthberg provided guidance based on his candid assessment of the strengths and weaknesses of the claims and defenses and interfaced with each side to drill down on potential points of compromise.

This process allowed Lead Plaintiff and Lead Counsel to develop adequate information about the claims to negotiate a favorable resolution.

#### 2.    The Risks of Maintaining the Class Action through Trial

While Lead Plaintiff is confident that the Court would grant the pending class certification motion, there are certainly no guarantees.  Further, if Lead Plaintiff was successful in achieving class certification, Defendants could have sought to appeal that order, or moved at any time to

- 17 -

decertify the class or to shorten the class period. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); Fed. R. Civ. P. 23(c) (authorizing decertification at any time). This factor therefore supports preliminary approval of the Settlement.

### 3.    The Ability of Defendants to Withstand a Greater Judgment

DocGo stock price and market capitalization have declined substantially since this action was filed; although Defendants may have been able to withstand a greater judgment, this fact "does not necessarily preclude a finding that the settlement is fair." *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *11 (S.D.N.Y. Dec. 13, 2024); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020). This is particularly true where, as here, the other factors overwhelmingly weigh in favor of approval. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *14 ("Plaintiffs concede it is likely that Alibaba could have withstood [a greater judgment], but correctly note that 'where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'"); *Vaccaro*, 2017 WL 6398636, at *6 ("Although [d]efendants may have had the ability to withstand a greater judgment, this factor does not render the settlement unfair, given the force of the other *Grinnell* factors.").

### 4.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged not "'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "'the uncertainties

of law and fact in any particular case and the concomitant risks and costs necessarily inherent'" in taking any litigation to completion. *Giant Interactive*, 279 F.R.D. at 162.

The Settlement represents a favorable result for the Class. Lead Plaintiff has estimated reasonably recoverable damages likely would not exceed $53 million, but could be significantly less, depending on various scenarios. Thus, the Settlement of over 20% of maximum estimated recoverable damages falls well within the range of reasonableness and supports preliminary approval. *See* §III.C.3.

An additional compelling consideration that militates in favor of the reasonableness of the Settlement is that the Settlement provides for payment to the Class now, rather than the speculative possibility of payment years later. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

## IV.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of notice under the Due Process Clause or Federal Rules, a court will look to its reasonableness. *Merrill Lynch*, 246 F.R.D. at 166. "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail or email the Postcard Notice to all potential Class Members who can be identified with reasonable effort. Stipulation, Ex. A, ¶9(b). The Claims Administrator will also publish the Summary Notice in the national edition of *The Wall Street Journal* and once over a

- 19 -

national newswire service. *Id.*, ¶9(c). Additionally, the Claims Administrator will establish and maintain a Settlement-related website on which the Notice and Proof of Claim and other relevant materials will be readily available to Class Members.

Courts have approved similar notice programs in a multitude of cases. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *8-*9 (S.D.N.Y. Sept. 29, 2022) (Rule 23(c)(2)(B) satisfied where notice plan provided for mail and/or email notice and publication notice); *GSE*, 414 F. Supp. 3d at 702 (Rule 23(e)(1)(B) and Rule 23(c)(2)(B) satisfied where notice provided for individual mail notice and publication notice); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184-85 (S.D.N.Y. 2012) (mailed notice to 1,813 banks, brokerage companies, and institutional investors and notice via publishing an approved form of summary notice through newspapers and via electronic newswires found adequate).

The proposed form of notice also comports with the requirements of due process, the PSLRA, and Rule 23, and is similar to that routinely approved in other cases. Notice is reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (The notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'") (alteration in original).

The proposed Notice contains all of the information required under the PSLRA.[6] 15 U.S.C. §78u-4(a)(7)(A)-(F). *See* Stipulation, Ex. A-1. It advises recipients that they have the right to

---

[6]    The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event

request exclusion from the Class or to object to any aspect of the Settlement, the Plan of Allocation, or Lead Counsel's fee and expense application. It provides recipients with the contact information for the Claims Administrator (Verita) and Lead Counsel, and directs recipients to the Settlement website for further information (including electronic copies of the Notice and Proof of Claim). And it advises Class Members of the date, time, and location of the Settlement Hearing. This information is also presented in a way that is accessible to the reader and is in a format similar to notices approved in other cases.

## V.    CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Class. The Class is defined as:

> [A]ll Persons who purchased DocGo publicly traded common stock between November 5, 2021, and September 15, 2023, inclusive, and were damaged thereby. Excluded from the Class are: (i) Defendants and Former Defendants and members of their immediate families; (ii) the officers and directors of DocGo during the Class Period and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant or Former Defendant has or had a controlling interest. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion.

Stipulation, ¶1.4.

---

plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of a representative of counsel for the class who will be reasonably available to answer questions about any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court.

4920-4881-6500.v2

The proposed Class satisfies the requirements of Federal Rules 23(a), 23(b)(3), and 23(e), and should be certified for settlement purposes.  In addition, Lead Plaintiff should be appointed Class Representative and Lead Counsel should be appointed Class Counsel.

**First**, during the Class Period, there were more than 260 institutional investors in DocGo common stock, and an average of 4 million shares of DocGo common stock traded on a weekly basis.  *See* ECF 93 at 1.  Thus, the Class likely consists of thousands of members and numerosity is satisfied.  "'Numerosity is presumed when the putative class has forty or more members.'"  *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 349 F.R.D. 606, 610 (S.D.N.Y. 2025) (quoting *Onate v. AHRC Health Care, Inc.*, 2023 WL 8648167, at *3 (S.D.N.Y. Dec. 14, 2023)). "'In securities fraud class actions relating to publicly owned and nationally listed corporations, "the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."'"  *Id*. (quoting *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012)).

**Second**, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class.  *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public . . . ."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("'Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement.'").  The facts here raise common questions as to whether: "(i) statements disseminated to the Class by Defendants during the Class Period misrepresented or omitted material facts; (ii) the alleged fraud was material to the putative Class; and (iii) Defendants acted knowingly or recklessly." *In re Signet Jewelers Ltd. Sec. Litig.*,

2019 WL 3001084, at *8 (S.D.N.Y. July 10, 2019). These common questions readily establish commonality. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (commonality satisfied in securities case involving similar questions).

*Third*, Lead Plaintiff's claims are typical of the Class's because they share the same factual and legal underpinnings. ECF 93 at 6-7; *see Bank of Am.*, 281 F.R.D. at 139 ("In a securities class action . . . the claims and nature of evidence 'are generally considered sufficient to satisfy the typicality requirement.'").

*Fourth*, Lead Plaintiff is an adequate class representative because its interests are aligned with, and not antagonistic to, those of other Class Members, and Lead Counsel is "qualified, experienced and able to conduct the litigation." *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); www.rgrdlaw.com. Lead Plaintiff purchased DocGo common stock at inflated prices during the Class Period and was injured by the same alleged material misrepresentations and omissions and subsequent stock price declines that injured all Class Members. It also "actively supervised and monitored the progress of this litigation." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to separate and disjointed individual adjudications. *See* ECF 93 at 8-16. Because the elements of Lead Plaintiff's claims present common questions of law and fact that predominate over individualized ones, the predominance requirement is "readily met" here. *See Billhofer*, 281 F.R.D. at 158. Superiority is also readily met because adjudicating individual claims would significantly waste judicial resources. Lead Plaintiff is unaware of any other related litigation, and no management difficulties preclude this Litigation from being maintained as a class action for settlement purposes.

- 23 -

Accordingly, class certification is appropriate here for purposes of the Settlement.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests approval of the following schedule for the Court's review:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Postcard Notice ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 7 calendar days after the Notice Date |
| Posting and filing of Lead Plaintiff's motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Lead Plaintiff's reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

## VII.    CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; (iii) certification of the Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

- 24 -

4920-4881-6500.v2

DATED:  November 12, 2025       Respectfully submitted,

                       ROBBINS GELLER RUDMAN
                         & DOWD LLP
                       CHRISTOPHER M. WOOD (admitted *pro hac vice*)


                               *s/ Christopher M. Wood*
                          CHRISTOPHER M. WOOD

                       200 31st Avenue North
                       Nashville, TN  37203
                       Telephone:  615/244-2203
                       615/252-3798 (fax)
                       cwood@rgrdlaw.com

                       ROBBINS GELLER RUDMAN
                         & DOWD LLP
                       SAMUEL H. RUDMAN
                       DAVID A. ROSENFELD
                       58 South Service Road, Suite 200
                       Melville, NY  11747
                       Telephone:  631/367-7100
                       631/367-1173 (fax)
                       srudman@rgrdlaw.com
                       drosenfeld@rgrdlaw.com

                       ROBBINS GELLER RUDMAN
                         & DOWD LLP
                       ERIC I. NIEHAUS (admitted *pro hac vice*)
                       JOSEPH J. TULL (admitted *pro hac vice*)
                       655 West Broadway, Suite 1900
                       San Diego, CA  92101
                       Telephone:  619/231-1058
                       619/231-7423 (fax)
                       ericn@rgrdlaw.com
                       jtull@rgrdlaw.com

                       Lead Counsel for Lead Plaintiff

- 25 -

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

4920-4881-6500.v2

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)</u>

I, Christopher M. Wood, hereby declare that this document contains 7,393 words and complies with the word-count limitation provided by Local Rule 7.1(c).

DATED:  November 12, 2025

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

4920-4881-6500.v2