UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GENESEE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:23-cv-09476-KPF |
| | : | |
| | : | <u>CLASS ACTION</u> |
| Plaintiff, | : | |
| | : | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |
| vs. | : | |
| | : | |
| DOCGO INC. and ANTHONY CAPONE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

4907-2355-1117.v1

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...............................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND...........................................3

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL...................................3

    A.   The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell* ...............3

    B.   The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23 and *Grinnell* Factors ........................................................................................6

        1.   The Class Was Adequately Represented .......................................................6

        2.   The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator.....................................8

        3.   The Relief Provided by the Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal............................9

            a.   The Complexity, Expense, and Likely Duration of Litigation....................................................................................................9

            b.   The Risks of Establishing Liability and Damages at Trial ............10

        4.   Stage of the Proceedings and the Amount of Discovery Completed.........12

        5.   The Recovery Is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation...............................................13

        6.   The Reaction of the Class Supports Final Approval..................................13

        7.   Maintaining Class-Action Status Through Trial........................................15

        8.   Defendants' Ability to Withstand Greater Judgment.................................15

        9.   Other Rule 23(e)(2) Factors Support Final Approval................................16

            a.   The Proposed Method of Distributing Relief Is Effective.............16

            b.   The Proposed Award of Attorneys' Fees Is Fair and Reasonable ...................................................................................16

            c.   Identification of Agreements in Connection with the Settlement ....................................................................................17

4907-2355-1117.v1

**Page**

       d.     The Settlement Treats All Class Members Equally Relative to One Another ................................................................................18

IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ...............................................................18

V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ..................................................19

VI.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS.................................................................................20

VII.    CONCLUSION.....................................................................................22

4907-2355-1117.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ...................................................................................14, 15

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).................................................................................................8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................................ *passim*

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).........................................................................................................10

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ....................................................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................3, 18

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................8, 13

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019).........................................................................5

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................................................18

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016).................................................................................11

4907-2355-1117.v1

**Page**

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd*, 822 F. App'x 40 (2d Cir. 2020)........................................................8, 13, 14, 18

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .....................................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................10

*In re GSE Bonds Antitrust Litig.*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) ................................................5, 14

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).........................................................9, 10, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..............................................13, 18

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................11

*In re Jernigan Cap., Inc. Sec. Litig.*,
No. 1:20-cv-09575-JLR-KHP, ECF 95
(S.D.N.Y. June 12, 2023)...............................................................................6, 17

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .....................................................................20

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)...............................................................4, 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) .....................................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).......................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................ *passim*

4907-2355-1117.v1

**Page**

*In re Sony SXRS Rear Projection Television Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................................................15

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................................................14, 19

*In re Waste Mgmt. Sec. Litig.*,
775 F. Supp. 3d 742 (S.D.N.Y. 2025).....................................................................7

*In re XL Fleet Corp. Sec. Litig.*,
2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024)..........................................................17

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................14, 17

*Martínek v. Antitrust Fin. Servs.*,
2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022)........................................................17

*McIntosh v. Katapult Holdings*,
2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ................................................. *passim*

*Mikhlin v. Oasmia Pharm. AB*,
2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..........................................................11

*Oleniak v. Time Warner Cable*,
2013 WL 12447094 (S.D.N.Y. Dec. 17, 2013) .......................................................14

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................................................3, 17, 21

*Rodriguez v. CPI Aerostructures, Inc.*,
2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)......................................................9, 21

*Synder v. Ocwen Loan Servicing, LLC*,
2019 WL 2103379 (N.D. Ill. May 14, 2019)............................................................5

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................5

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ...............................................................................20

4907-2355-1117.v1

**Page**

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005),
  *superseded by rule as stated in Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ..................................................................................3, 20

*Yang v. Focus Media Holding*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).............................................................3

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013).............................................................14

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b)................................................................................................................10, 19
  §78u-4(a)(7) ..............................................................................................................21

Federal Rules of Civil Procedure
  Rule 23 ...................................................................................................5, 6, 9, 21
  Rule 23(a)...........................................................................................................19, 20
  Rule 23(b)(3)......................................................................................................19, 20
  Rule 23(c)(1)(C).........................................................................................................15
  Rule 23(c)(2)(B)....................................................................................................20, 21
  Rule 23(e)..........................................................................................................1, 3, 20
  Rule 23(e)(1)(B)..........................................................................................................20
  Rule 23(e)(2)....................................................................................... *passim*
  Rule 23(e)(2)(A) ..........................................................................................................6
  Rule 23(e)(2)(B)............................................................................................................8
  Rule 23(e)(2)(C)(i).......................................................................................................9
  Rule 23(e)(2)(C)(ii).....................................................................................................16
  Rule 23(e)(2)(C)(iii)....................................................................................................16
  Rule 23(e)(2)(C)(iv)....................................................................................................16
  Rule 23(e)(2)(D) .....................................................................................................5, 16

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation:*
  *2025 Full-Year Review* (NERA Jan. 21, 2026)
  Edward Flores, Svetlana Starykh, and Ivelina Velikova ...........................................13

4907-2355-1117.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, lead plaintiff Genesee County Employees' Retirement System ("Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for final approval of the Settlement and approval of the Plan of Allocation.[1]

## I.    PRELIMINARY STATEMENT

After extensive litigation and arm's-length negotiations overseen by an experienced mediator, Lead Plaintiff and Lead Counsel obtained a $12.5 million cash recovery (the "Settlement") for the Class.  The Settlement represents an excellent result for the Class and should be approved as fair, reasonable, and adequate.

Over the course of over two years, Lead Plaintiff and Lead Counsel diligently prosecuted this Action on behalf of the Class; drafting and filing a detailed amended complaint; successfully in part defeating Defendants' motion to dismiss; moving for class certification; obtaining and analyzing tens of thousands of pages of documents produced by Defendants and third parties; and participating in arm's-length negotiations overseen by Miles Ruthberg, a highly experienced mediator with Philips ADR Enterprises.  Through these efforts, Lead Plaintiff and Lead Counsel developed a deep and thorough understanding of the facts and the relative strengths and weaknesses of Lead Plaintiff's claims.

While Lead Plaintiff and Lead Counsel believe in the merits of the claims asserted in this Action, they recognized that continued litigation posed significant risks, including because Defendants vehemently denied liability and damages.  Defendants argued that Lead Plaintiff would

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement filed on November 12, 2025 (ECF 101-1) (the "Stipulation") or in the accompanying Declaration of Christopher M. Wood in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Wood Declaration" or "Wood Decl.").  Unless otherwise noted, citations are omitted and emphasis is added.

4907-2355-1117.v1

not be able to prove loss causation or damages because DocGo's stock price declined as a result of

nonactionable factors unrelated to the alleged misstatements and omissions.  Wood Decl., ¶¶59-65.

If Defendants prevailed on any of their defenses at summary judgment or trial, the Class stood to

recover no (or significantly reduced) damages.  Moreover, even if the Class did ultimately prevail,

its ability to collect a judgment was uncertain.

With the foregoing in mind, and based on years of experience prosecuting securities fraud

class actions, Lead Counsel supports the Settlement.  The Settlement recovers over 20% of

reasonably recoverable damages.  Wood Decl., ¶6.  Moreover, Lead Plaintiff supports the

Settlement, and, although the deadline to object to the Settlement has not yet passed, there have been

no objections thus far.[2]  Nor have any Class Members sought exclusion from the Class.  *See*

Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C)

Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to

Date ("Murray Decl."), ¶16, submitted herewith.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation.  The Plan

of Allocation was developed in consultation with Lead Counsel's damages expert and was detailed

in the Court-approved Notice of Pendency and Proposed Settlement of Class Action ("Notice").  The

Plan of Allocation treats Class Members equitably.  The Plan of Allocation provides for the *pro rata*

distribution of the Net Settlement Fund to Authorized Claimants based on their recognized losses

while taking into account the Court's holdings in the motion to dismiss order.  The Plan of

Allocation calculates the Recognized Loss Amount based on the Net Settlement Fund divided by the

---

[2]  The deadline to object to the Settlement and Plan of Allocation is March 3, 2026.  If any objections are timely filed, Lead Counsel will respond in its reply brief, to be filed on March 17, 2026.

- 2 -

total number of shares represented by the valid Claims of Authorized Claimants. Wood Decl., ¶¶75-79. To date, there have been no objections to the proposed Plan of Allocation.

For these and the reasons set forth below, the Court should grant final approval of the Settlement and approve the Plan of Allocation.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Wood Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund.

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.     The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell*

Rule 23(e) of the Federal Rules of Civil Procedure provides for final approval of a class action settlement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Second Circuit there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *see also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("'The law favors compromise and settlement of class action suits.'"); *Yang v. Focus Media Holding*, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) (citation modified) ("When exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors

- 3 -

settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," courts consider whether:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account:
>
>> (i)     the costs, risks, and delay of trial and appeal;
>>
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)     any agreement required to be identified under Rule 23(e)(3); and
>
> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in the Second Circuit also consider the following factors, which overlap with the Rule 23(e)(2) factors, in determining whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund . . . in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) ("'The factors set forth in Rule 23(e)(2) have been applied in

- 4 -

tandem with the Second Circuit's *Grinnell* factors . . . .'"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("[T]here is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

The Rule 23(e)(2) and *Grinnell* factors are analyzed holistically. *See Moses*, 79 F.4th at 243 ("Courts . . . must consider the four factors outlined in Rule 23(e)(2) holistically . . . ."); *McIntosh v. Katapult Holdings*, 2024 WL 5118192, at *8 (S.D.N.Y. Dec. 13, 2024) (alteration in original) ("Importantly, 'not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances.'"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances.").

The Court considered and found these factors to have been satisfied at the preliminary approval stage. *See* ECF 106. The Court's "conclusions [at preliminary approval] stand and counsel equally in favor of final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval[] . . . . has already explained in detail why the Rule 23 and *Grinnell* factors support approval . . . . The Court re-adopts that analysis here, and limits its focus to those few developments since . . . preliminary approval[] . . . ."); *see also Synder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at*4 (N.D. Ill. May 14, 2019) (noting at final approval that "[s]ignificant portions of the Court's [preliminary approval] analysis remain materially unchanged").

4907-2355-1117.v1

**B.      The Settlement Is Fair, Reasonable, and Adequate in Light of the
Rule 23 and *Grinnell* Factors**

**1.      The Class Was Adequately Represented**

In approving a settlement, courts are required to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The adequacy assessment typically "'entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest[s] of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020); *see also In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) ("[T]he primary factors [in assessing adequacy] are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'").

These requirements are readily satisfied here. Lead Plaintiff's claims "are typical of and coextensive with those of other Class Members and [it] has no interests antagonistic to those of other Class Members." *Signet*, 2020 WL 4196468, at *2. Like all other Class Members, Lead Plaintiff is alleged to have suffered losses as a result of Defendants' false and misleading statements. Lead Plaintiff purchased over 22,000 DocGo shares during the Class Period (ECF 17-2) and was "sufficiently motivated" to obtain the largest possible recovery for the Class. *See Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member"); *see also In re Jernigan Cap., Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 95 at 8 (S.D.N.Y. June 12, 2023) (Report & Recommendation adopted by ECF 103 (Sept. 14, 2023)) ("[Lead Plaintiff] had a large number of shares in JCAP and is interested in maximizing the financial recovery obtained through this suit – an interest shared by the proposed class.").

4907-2355-1117.v1

As detailed in Lead Plaintiff's declaration, Lead Plaintiff actively participated in the prosecution of this Action, including by reviewing pleadings, providing document discovery, and participating in numerous discussions with Lead Counsel regarding the evidentiary record, case developments, litigation strategy, and settlement negotiations. *See* Declaration of Tracy Khan in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses ("Khan Decl."), ¶¶4-5, submitted herewith.

Lead Counsel has extensive experience litigating complex class actions. *See* accompanying Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. D (firm résumé). Lead Counsel has substantial experience in securities class actions, including in this District, and has been found adequate in a multitude of cases. *See, e.g.*, *In re Waste Mgmt. Sec. Litig.*, 775 F. Supp. 3d 742, 766 (S.D.N.Y. 2025) ("Robbins Geller has substantial experience in prosecuting securities fraud class actions, having served as lead or co-lead counsel in many securities class actions.").

Lead Counsel also adequately represented the Class in this Action, vigorously prosecuting this case for over two years. *See generally* Wood Decl. Lead Counsel drafted and filed an amended complaint. Lead Counsel also defeated in large part Defendants' motion to dismiss and moved for class certification. Lead Counsel also aggressively pursued discovery, including propounding discovery requests, interrogatories, and requests for admissions on Defendants, serving 11 non-party subpoenas, reviewing and analyzing over 20,000 pages of documents, and participating in numerous meet and confers to address the scope of discovery. Lead Counsel also participated in settlement negotiations and drafted the settlement-related documents. *See generally* Wood Decl. Through these efforts, Lead Counsel was able to obtain an excellent recovery for the Class.

- 7 -

4907-2355-1117.v1

Accordingly, the adequacy factor is satisfied and weighs in favor of final approval of the Settlement.

### 2. The Proposed Settlement Was Negotiated by Experienced Counsel at Arm's Length Before an Experienced Mediator

Rule 23(e)(2)(B), which analyzes whether the settlement was the product of arm's length negotiations, favors approval. *See Moses*, 79 F.4th 235 at 243 ("[T]he arms-length quality of the negotiations remain a factor in favor of approving the settlement (one whose absence would count significantly against approval).").

Here, the proposed Settlement was the result of arm's-length negotiations, and was only reached after two years of hard fought litigation, and with the benefit of a comprehensive documentary record. On September 9, 2025, the Parties participated in a full-day mediation overseen by Miles Ruthberg, an experienced mediator. In advance of the mediation, the Parties submitted and exchanged mediation statements. During the mediation session, the Parties engaged in substantive discussions regarding the documentary evidence and their respective positions on liability and damages. A settlement was not reached during that session. Nevertheless, the Parties, aided by Mr. Ruthberg, continued their settlement negotiations. In the weeks that followed, the Parties, with a thorough understanding of the strengths and weaknesses of their respective positions, accepted Mr. Ruthberg's recommendation to settle the Action for $12.5 million in cash.

Accordingly, the Settlement warrants approval because it was the result of arm's-length negotiations by experienced counsel overseen by a mediator, whose involvement "helps to ensure that the proceedings were free of collusion and undue pressure." *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *In re Bear Stearns Cos.,*

4907-2355-1117.v1

*Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding settlement procedurally fair where the parties engaged in arm's-length negotiations before an experienced mediator).

### 3. The Relief Provided by the Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Courts must consider the adequacy of a settlement in light of "the costs, risks, and delay of trial and appeal" and other factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This Rule 23 factor overlaps with the first, fourth, and fifth *Grinnell* factors (*i.e.*, the complexity, expense and likely duration of the litigation; the risks of establishing liability; and the risks of establishing damages). *See Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *11 (E.D.N.Y. Feb. 16, 2023) ("'The first factor set forth under Rule 23(e)(2)(C), "the costs, risks, and delay of trial and appeal," "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages . . .'"); *Namenda*, 462 F. Supp. 3d at 311 ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors . . . .'"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94 (S.D.N.Y. 2019) (analyzing the adequacy factor alongside the first, fourth, and fifth *Grinnell* factors). As detailed below, each of these factors weigh in favor of final approval.

### a. The Complexity, Expense, and Likely Duration of Litigation

"Courts recognize that 'securities class actions are generally complex and expensive to prosecute,'" and litigating such actions "is notably difficult and notoriously uncertain." *Signet*, 2020 WL 4196468, at *4 (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same). This Action is no different.

4907-2355-1117.v1

This case involved complex and disputed issues concerning, among other things, materiality, scienter, loss causation, and damages.  This case arose from alleged misrepresentations concerning DocGo's former CEO Capone's educational background, DocGo's purported involvement in signing migrants up for New York State Medicaid, and a purported $4 billion contract with U.S. Customs and Border Patrol ("CBP").  The Defendants and Former Defendants argued that the alleged misrepresentations were immaterial, or that they lacked sufficient scienter with respect to them.  Although the Court largely denied the motion to dismiss, it dismissed the Former Defendants from the case entirely, and dismissed the CBP statements for failing to adequately allege any Defendants' scienter with respect to them.  Wood Decl., ¶¶28-30.  Whether Lead Plaintiff would ultimately succeed at summary judgment or at trial on the remaining claims against the remaining defendants was by no means guaranteed.  This Settlement eliminates the risks of unfavorable outcomes at further stages of the case.

**b.      The Risks of Establishing Liability and Damages at Trial**

In assessing the fairness, reasonableness, and adequacy of a settlement, "[a] court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'"  *GSE*, 414 F. Supp. 3d at 694; *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[T]he Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.").

To prevail on a §10(b) claim, Lead Plaintiff must establish all elements of the claim, including falsity, materiality, loss causation, and scienter.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Defendants need to succeed on only one defense to defeat the entire case.

As detailed herein and in the Wood Declaration, Defendants vehemently disputed liability. They argued that Lead Plaintiff would be unable to prove materiality for statements regarding

- 10 -

Capone's education. Wood Decl., ¶59. They also argued that investors did not understand Capone to mean that DocGo was literally signing asylum seekers up for New York State Medicaid, but rather that it was facilitating signups through United Healthcare. *Id.* In addition, Defendants would likely contend that Lead Plaintiff would not be able to establish loss causation, including because a portion of the final drop in DocGo's stock price was caused by the revelation that the CBP contract was not as high as Capone claimed and that claim was dismissed from the case. *Id.*, ¶61. Defendants would also likely contend that it was Capone's departure as CEO, and not the revelation of his educational background, that was the sole cause of DocGo's stock price drop, and that measuring that drop over multiple days would be inappropriate. *Id.* While Lead Plaintiff and Lead Counsel believe they had meritorious responses, they recognized that Defendants' success on any one of these arguments posed risks to the Class's ability to recover if the Litigation continued.

To prove loss causation and damages, Lead Plaintiff would have relied heavily on expert testimony. This would have invariably led to *Daubert* challenges and a "battle of the experts" with unpredictable results. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) (alteration in original) ("'[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.'"), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of

- 11 -

experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . . .'").

In sum, the Settlement provides the Class with a substantial and immediate cash benefit while avoiding the risks and costs of continued litigation, which would have included litigating class certification, completing fact discovery, expert discovery, summary judgment, trial, and a possible appeal. Thus, this factor weighs in favor of final approval.

### 4. Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings factor examines "'whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *Signet*, 2020 WL 4196468, at *7 (ellipsis in original). Here, Lead Plaintiff and Lead Counsel had more than enough information to assess the strengths and weaknesses of Lead Plaintiff's claims, and the propriety of the Settlement. By the time the Settlement was reached, the Litigation was well underway: Lead Counsel had largely defeated Defendants' motion to dismiss; moved for class certification; commenced party and non-party discovery; reviewed and analyzed over 20,000 pages of documents; consulted with an expert on damages; and participated in settlement negotiations with mediator Miles Ruthberg. Therefore, Lead Plaintiff and Lead Counsel "had a sufficient record to intelligently assess the strengths and weaknesses of their claims and the value of the case," *id.*, which supports final approval of the Settlement.

- 12 -

4907-2355-1117.v1

### 5.    The Recovery Is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of a recovery "may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011). Moreover, when there are "serious challenges to establishing liability," the best recovery must be adjudged against "the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270.

Here, the $12.5 million Settlement represents an outstanding recovery. The Settlement represents over 20% of reasonably recoverable damages. This result far exceeds the median settlement recovery of 1.5% of "NERA-Defined Investor Losses" in securities cases revolved in 2025. Edward Flores, Svetlana Starykh, and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* at 28 fig. 24 (NERA Jan. 21, 2026).[3] Finally, the $12 million Settlement is within the range of reasonableness because it was "agreed upon" by Lead Counsel after "careful consideration" of the substantial risks of no recovery. *See Facebook*, 343 F. Supp. 3d at 414 (finding agreed upon $35 million settlement within the range of reasonable where there was a risk of obtaining zero or minimal damages).

### 6.    The Reaction of the Class Supports Final Approval

"'The favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry' into the fairness and adequacy of the Settlement." *Signet*, 2020 WL 4196468, at *6 (alteration in original); *see also In re Hi-Crush*

---

[3]    In cases with investor losses of between $50 and $99 million, where this case falls, the median settlement value as a percentage of NERA-Defined Investor Losses between 2016 and 2025 was 4.4%. *Id.* at 27, fig. 23. This Settlement recovers approximately five times that percentage.

- 13 -

*Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *6 (S.D.N.Y. Dec. 19, 2014) ("The reaction of the . . . Class to the Settlement is a significant factor in assessing its fairness and adequacy." The absence of objections and opt outs "provides evidence of Class Members' approval of the terms of the Settlement and desire to share in the proceeds thereof."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) ("It is 'well-settled' that the reaction of the class to a settlement is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

While the deadline for submitting objections has not yet passed, there have been no objections to, or requests for exclusion from, the Settlement. *See* Murray Decl., ¶16. The Class's reaction thus far weighs in favor of approval. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (citation modified) ("[T]he absence of objections may itself be taken as evidencing the fairness of a settlement."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also GSE*, 2020 WL 3250593, at *2 ("'A favorable reception by the Class constitutes "strong evidence" that a proposed settlement is fair.'"); *Oleniak v. Time Warner Cable*, 2013 WL 12447094, at *6 (S.D.N.Y. Dec. 17, 2013) (Failla J.) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness."); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *6 (S.D.N.Y. Oct. 2, 2013) ("This favorable response [*i.e.*, no objections and only eight opt outs] demonstrates that the class approves of the settlement and supports final approval."); *Facebook*, 343 F. Supp. 3d at 410 ("The overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor of [final approval].").

- 14 -

### 7.    Maintaining Class-Action Status Through Trial

A class certification order "may be altered or amended before final judgment."  *See* Fed. R. Civ. P. 23(c)(1)(C).  Consequently, courts routinely find that this factor weighs in favor of final approval when there is a risk that defendants would oppose class certification.  *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *13 (finding this factor weighed in favor of approval where there remained a risk that defendants would oppose class certification if the case went to trial); *GSE*, 414 F. Supp. 3d at 694 (alterations in original) ("Although the 'risk of maintaining a class through trial is present in [every] class action,' 'this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated.").

Lead Plaintiff's opening class certification motion was filed at the time the settlement was reached.  Defendants would likely have vigorously opposed the motion.  Failure to obtain class certification would effectively end the case.  Therefore, this factor supports class certification.

### 8.    Defendants' Ability to Withstand Greater Judgment

A defendant's ability to withstand a potentially larger settlement "does not necessarily preclude a finding that the settlement is fair."  *McIntosh*, 2024 WL 5118192, at *11; *see also Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011) ("'[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"); *Aeropostale*, 2014 WL 1883494, at *9 ("Courts . . . generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.").  Moreover, a "defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *In re Sony SXRS Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).

- 15 -

4907-2355-1117.v1

Here, there was substantial doubt about Defendants' ability to satisfy a judgment.  Indeed, DocGo stock is currently trading at under $1 a share, and it appears it would be unable to pay a substantial judgment entered against it.

### 9.    Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) requires courts to consider the following additional factors: (i) the effectiveness of the proposed method of distributing relief to the class; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  Each of these factors support final approval of the proposed Settlement.

### a.    The Proposed Method of Distributing Relief Is Effective

The methods for processing Class Members' Claims and distributing relief to Authorized Claimants is well-established and effective.  Here, the Court-appointed Claims Administrator, Verita Global, *see* ECF 106, ¶9, will review and process Claims under the guidance of Lead Counsel, allow claimants the opportunity to cure any deficiencies in their Claims or request the Court's review of a denial of their Claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the proposed Plan of Allocation.  *See* Stipulation, ECF 101-1, ¶¶5.6-5.10.  This proposed method of distributing settlement proceeds is "standard in securities and other class actions and is effective."  *Christine Asia*, 2019 WL 5257534, at *14.

### b.    The Proposed Award of Attorneys' Fees Is Fair and Reasonable

As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Fee Memorandum"), Lead Counsel is applying for an award of 33% of the Settlement Amount as compensation for the services it rendered

- 16 -

on behalf of the Class, as well as payment of litigation costs and expenses in the amount of $183,676.18. The attorneys' fees requested by counsel are reasonable in light of the work performed and the results obtained, and a 33% fee award is consistent with fees awarded by courts in the Second Circuit, including in this District, in similar common-fund cases. *See, e.g.*, *Jernigan*, ECF 95; *Martínek v. Antitrust Fin. Servs.*, 2022 WL 16960903, at \*2-\*3 (S.D.N.Y. Nov. 16, 2022) (Failla, J.) (awarding 33%⅓ fee in $13 million settlement); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at \*1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33⅓% of the settlement fund); *McIntosh*, 2024 WL 5118192, at \*11-\*13 (awarding attorneys' fees of 33⅓% of the settlement fund); *Pearlstein*, 2022 WL 4554858, at \*10 ("Class counsel's request for one-third of the gross settlement fund is reasonable within this circuit."); *Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33⅓% of the class settlement fund] is well within th[e range of fees awarded by courts in the Second Circuit] and falls comfortably within the range of fees typically awarded in securities class actions."). Notably, the Court's consideration of the requested attorneys' fees is separate from its consideration of approval of the Settlement, the Settlement is not subject to termination based on the Court's ruling on attorneys' fees, and the Class was notified of the terms of the proposed award of attorneys' fees, including the timing of such payments. *See* Stipulation, ECF 101-1, ¶¶6.1, 6.4.

  **c. Identification of Agreements in Connection with the Settlement**

As previously disclosed, the Settling Parties have entered into a confidential supplemental agreement pursuant to which DocGo may terminate the Settlement if requests for exclusion (*i.e.*, opt-outs) reach a certain threshold. *See* Stipulation, ¶7.3. This type of agreement is standard in securities class action settlements and has "no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at \*15.

4907-2355-1117.v1

**d.      The Settlement Treats All Class Members Equally
Relative to One Another**

The Settlement treats Class Members equally.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, their, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation.  Lead Plaintiff is subject to the same distribution formula as every other Class Member.

In sum, the Rule 23(e)(2) and *Grinnell* factors support final approval of the Settlement.

## IV.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approving a plan of allocation is the same as the standard for approving a settlement – namely, the plan must be "fair, reasonable, and adequate." *Signet*, 2020 WL 496468 at *13; *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157-58 (S.D.N.Y. 2013) ("The plan of allocation is subject to the same test of fairness, reasonableness, and adequacy as the settlement itself.").  A plan of allocation "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *McIntosh*, 2024 WL 5118192, at *11; *Christine Asia*, 2019 WL 5257534, at *15; *see also Advanced Battery*, 298 F.R.D. at 180 ("'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"); *In re Hi-Crush Partners L.P.*, 2014 WL 7323417, at *10 (same).

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Counsel's damages expert, is fair, reasonable, and adequate.  *See* Wood Decl., ¶¶75-79; *Facebook*, 343 F. Supp. 3d at 414 ("Plaintiffs' Plan of Allocation was prepared by experienced counsel along with a damages expert – both indicia of reasonableness.").  The proposed Plan of Allocation

- 18 -

provides that the Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on their recognized losses. Wood Decl., ¶¶75-79; *see also McIntosh*, 2024 WL 5118192, at *11 (approving plan of allocation that distributed settlement funds to class members on a *pro rata* basis to class members as appropriate and consistent with prior cases). The proposed Plan of Allocation is consistent with the §10(b) claims alleged in the Action, and accounts for the findings in the Court's motion to dismiss order. Wood Decl., ¶76. Moreover, the Plan of Allocation was set forth in the Notice and, to date, no objections to the Plan of Allocation have been filed. This favorable response from the Class supports approval of the Plan of Allocation as fair and reasonable. *See Signet*, 2020 WL 4196468, at *6 ("The reaction of the Class also supports approval of the Plan of Allocation."); *Vecco*, 2007 WL 4115809, at *14 ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation.").

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim, could be issued. *See* ECF 100. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Class for purposes of settlement. ECF 106, ¶3. In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel. *Id.*, ¶4.

4907-2355-1117.v1

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.

## VI.  THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e) requires that notice of a proposed class action settlement be given to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B), and that the notice be "the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort[s]." Fed. R. Civ. P. 23(c)(2)(B). In addition, a notice of settlement must satisfy due process and include the information outlined in Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7). A notice that fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'" satisfies Rule 23(e) and due process. *Wal-Mart*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members thereunder.") The notice plan used here satisfies these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator, Verita Global, disseminated 13,280 copies of the Court-approved Postcard Notice to potential Class

- 20 -

Members and nominees.  Murray Decl., ¶11.  The Claims Administrator also published the Summary

Notice in *The Wall Street Journal* and transmitted it over *Business Wire*.  *Id.*, ¶12.  In addition, the

Claims Administrator provided potential Class Members with the Court-approved Notice online

through the Settlement website.  *Id.*, ¶14.

The Court-approved Notice provides Class Members with the necessary information to make

an informed decision about the proposed Settlement.   The Notice provides recipients with

information concerning: (i) the nature of the Action and the claims asserted therein; (ii) the definition

of the Class; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation and

estimated average per share recovery; (v) the maximum amount of attorneys' fees and expenses that

will be sought; (vi) Class Members' rights to request exclusion from the Class or to object to the

Settlement, the Plan of Allocation, and/or a request for attorneys' fees or expenses (including the

method and timing for requesting exclusion or objecting to the Settlement); (vii) the binding effect of

a judgment on Class Members; and (viii) the contact information for Lead Counsel and the Claims

Administrator.  *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7).  The Notice also provides

information concerning how to submit a Proof of Claim and Release and the date, time, and location

of the Settlement Hearing.

Here, the Court-approved notice plan, which combines individual email or First-Class Mail

notice with publication of a Summary Notice in a widely-circulated publication and internet

newswire, satisfies the requirements of Rule 23, due process, and the PSLRA, and constitutes the

"best notice . . . practicable under the circumstances."  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also*

*Rodriguez*, 2023 WL 2184496, at *9-*10 (finding First-Class Mail combined with print and internet-

based publication of settlement was "the best notice practicable under the circumstances");

*Pearlstein*, 2022 WL 4554858, at *8-*9 (Rule 23(c)(2)(B) satisfied where notice plan provided for

- 21 -

4907-2355-1117.v1

mail and/or email notice and publication notice); *Signet*, 2020 WL 4196468, at \*14 (alteration in original) ("Th[e] combination of individual mail to all Class Members . . . supplement[ed] by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, was the 'best notice . . . practicable under the circumstances.'").

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and Plan of Allocation, and certify the Class for settlement purposes.

DATED:  February 17, 2026          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD (admitted *pro hac vice*)

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

4907-2355-1117.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
ERIC I. NIEHAUS (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ericn@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

- 23 -

4907-2355-1117.v1

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)</u>

I, Christopher M. Wood, hereby declare that this document contains 6,738 words, and complies with the word-count limitation provided by Local Rule 7.1(c).

DATED:  February 17, 2026

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

4907-2355-1117.v1