UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

GENESEE COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

                      Plaintiff,

      vs.

DOCGO INC. and ANTHONY CAPONE,

                 Defendants.

———————————————————— x

: Civil Action No. 1:23-cv-09476-KPF

: <u>CLASS ACTION</u>

: MEMORANDUM OF LAW IN SUPPORT
: OF LEAD COUNSEL'S MOTION FOR AN
: AWARD OF ATTORNEYS' FEES AND
: EXPENSES

4911-7273-6140.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ........................................................................................................3

      A.   Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
           from the Common Fund....................................................................................3

      B.   The Court Should Apply the Percentage Method in Awarding Attorneys'
           Fees to Lead Counsel .......................................................................................4

      C.   The Requested 33% Fee Is Consistent with Fee Awards in Common Fund
           Cases in Courts in the Second Circuit..............................................................5

      D.   The Lodestar Cross-Check Confirms the Reasonableness of the Requested
           Attorneys' Fees ................................................................................................7

      E.   The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable................9

           1.   The Time and Labor Expended by Counsel .................................................9

           2.   The Magnitude and Complexity of the Litigation ......................................11

           3.   The Risk of the Litigation.........................................................................12

                a.   Contingent Nature of Lead Counsel's Representation...................12

                b.   Risk of Establishing Liability .........................................................13

                c.   Risk of Establishing Loss Causation and Damages........................14

           4.   The Quality of Representation Supports the Requested Fee ......................15

           5.   The Requested Fee in Relation to the Settlement ......................................15

           6.   Public Policy Considerations ....................................................................16

           7.   The Class's Reaction to the Fee Request Supports the Requested
                Fee............................................................................................................16

           8.   The Fee Request Is Supported by Lead Plaintiff .......................................17

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARY TO THE PROSECUTION OF THE ACTION..........................................17

IV.   CONCLUSION...................................................................................................18

4911-7273-6140.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...............................................................7

*Blum v. Stenson*,
465 U.S. 886 (1984)....................................................................................................6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).....................................................................................................3

*Burns v. FalconStor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) ...........................................................8

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............................................................11

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ...................................................................3, 6, 8, 11

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) .....................................................................5, 9

*Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)...........................................................................................3

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).................................................................................. *passim*

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..........................................6, 9, 11, 12

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings*,
2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)..............................................................6

*Hayes v. Harmony Gold Mining Co.*,
509 F. App'x 21 (2d Cir. 2013) ...................................................................................4

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..............................................................4

4911-7273-6140.v1

**Page**

*In re Akari Therapeutics PLC Sec. Litig.*,
No. 1:17-cv-03577 (KPF), ECF 24
(S.D.N.Y. Nov. 28, 2018) ..................................................................................................7

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................................5, 12

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................................11, 14

*In re Chic. Bridge & Iron Co. N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022) ...................................................................6

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................................................17

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014).............................................................................7, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................................8

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ..................................................................6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016).....................................................................6, 9, 10

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).................................................................12, 17

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................8, 18

*In re GSE Bonds*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) ..........................................................12, 16, 18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .................................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)...........................................................................17

4911-7273-6140.v1

**Page**

*In re Jernigan Cap., Inc. Sec. Litig.*,
No. 1:20-cv-09575-JLR-KHP, ECF 154
(S.D.N.Y May 29, 2025)..................................................................................................6

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................13, 15

*In re NYSE Specialists Sec. Litig.*,
No. 03-cv-8264, ECF 38
(S.D.N.Y. June 10, 2013)................................................................................................6

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...................................................................6

*In re Parking Heaters, Antitrust Litig.*,
2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)................................................................4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................................4, 5

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)...................................................................7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997)................................................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020)...........................................................15, 16

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................................................5, 13, 15, 17

*In re XL Fleet Corp. Sec. Litig.*,
2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024).................................................................6

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*,
2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ...............................................................7

*Kohari v. Met-Life Grp.*,
2025 WL 100898 (S.D.N.Y. Jan. 15, 2025) ..............................................................7, 16

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)...............................................................12

- iv -

**Page**

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017)..........................................................................9

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1988)..........................................................................................................8

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................5, 7, 8, 17

*Martinek v. Amtrust Fin. Servs.*,
2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022)......................................................................6

*McIntosh v. Katapult Holdings*,
2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ...............................................7, 11, 16

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)....................................................................................................5, 8

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022) ......................................................4, 7

*Oleniak v. Time Warner Cable*,
2013 WL 12447094 (S.D.N.Y. Dec. 17, 2013) ...................................................4, 7

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)........................................................7

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999).......................................................................................5

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .............................................12, 14

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................5

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ........................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005), *superseded by rule as stated in*
*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) .................................................................................4, 8

4911-7273-6140.v1

**Page**

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................................................16

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(6) ..............................................................................................................5
    §78j(b)......................................................................................................................11
    §78t(a) .....................................................................................................................11

4911-7273-6140.v1

Lead Counsel respectfully submits this memorandum of law in support of its motion for attorneys' fees and expenses.[1]

## I.    INTRODUCTION

Through diligence and unwavering advocacy, Lead Counsel secured a $12.5 million cash recovery (the "Settlement") for the benefit of the Class.  As detailed in the Wood Declaration and in the Settlement Memorandum, Lead Counsel devoted considerable resources and brought a high level of skill and experience to the prosecution of this Action.  Lead Counsel, among other things: (1) drafted and filed a detailed amended complaint, based on an extensive investigation into the facts and potential claims and defenses; (2) successfully in part opposed Defendants' motion to dismiss; (3) moved for class certification and responded to discovery propounded by Defendants; (4) began conducting extensive fact discovery, including serving discovery requests on Defendants and 11 non-parties and propounding interrogatories and requests for admissions; (5) reviewed and analyzed over 20,000 pages of documents; (6) engaged in numerous meet and confers with Defendants and non-parties regarding the scope of discovery; (7) engaged in settlement negotiations, including a full-day mediation session with an experienced mediator, which included the exchange of mediation statements that set forth the Parties' respective positions on liability and damages; (8) negotiated and obtained the instant Settlement; (9) drafted and negotiated the Parties' term sheet; (10) drafted and

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement filed on November 12, 2025 (ECF 101-1) (the "Stipulation"), the accompanying Declaration of Christopher M. Wood in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Wood Declaration" or "Wood Decl."), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

4911-7273-6140.v1

negotiated the Stipulation and supporting documents; and (11) moved for preliminary approval of the Settlement. *See generally* Wood Decl.

Having obtained a substantial recovery on behalf of the Class, Lead Counsel now respectfully moves this Court for an award of attorneys' fees equal to 33% of the Settlement Amount and payment of $183,676.18 in litigation expenses, together with interest on both amounts. The requested fee is fair and reasonable under the standards set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and is fully supported by both the percentage-of-the-fund method and the lodestar cross-check. Lead Counsel's fee request is also consistent with fees awarded by courts in the Second Circuit in similar common fund cases, and the litigation expenses sought by Lead Counsel were reasonably incurred in connection with the prosecution of the Action.

The requested fee is also supported by the significant risks undertaken by Lead Counsel. Lead Counsel pursued this Action on behalf of the Class on a contingent fee basis, dedicating over 1,930 hours of time in the case and $183,676.18 in expenses without any promise of recovery, payment, or reimbursement. *See* Wood Decl., ¶¶87-88. Lead Counsel has not received any payment for the services it has performed and the expenses it has incurred over the course of over two years of litigation. The risk of no recovery was particularly pronounced here, where highly skilled and experienced defense counsel fiercely contested Lead Plaintiff's ability to establish materiality, scienter, loss causation, and damages.

Lead Plaintiff supports the Settlement and Lead Counsel's request for attorneys' fees and expenses. *See* Declaration of Tracy Khan in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Award of Attorneys' Fees and Expenses ("Khan Decl."), ¶¶5-6, submitted herewith. Moreover, to date, there have been no objections to the requested attorneys' fees and

- 2 -

4911-7273-6140.v1

expenses.  The absence of objections from the Class supports a finding that Lead Counsel's request for fees and expenses is fair and reasonable.[2]

Accordingly, Lead Counsel respectfully submits that the Court should grant its Motion for an Award of Attorneys' Fees and Expenses.

## II.    ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

An attorney who creates a common fund for the benefit of a class is entitled to reasonable fees from the fund.  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund."); *see also Goldberger*, 209 F.3d at 47 ("[A]ttorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."); *Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019).  The common fund doctrine is designed to "fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*10 (S.D.N.Y. May 9, 2014) (citing *Goldberger*, 209 F.3d at 47), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Here, Lead Counsel created a $12.5 million common fund for the Class and is entitled to reasonable attorneys' fees from the fund.  *See Boeing*, 444 U.S. at 478; *see also Goldberger*, 209 F.3d at 47.  Moreover, fairly compensating Lead Counsel for the risks associated with pursuing this

---

[2]    The deadline to object to the Settlement, Plan of Allocation, and Lead Counsel's requests for attorneys' fees and expenses is March 3, 2026.  If any objections are timely filed, Lead Counsel will respond in its reply brief to be filed on March 17, 2026.

4911-7273-6140.v1

Litigation is vital to the pursuit of "[s]uch actions" which "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.    The Court Should Apply the Percentage Method in Awarding Attorneys' Fees to Lead Counsel**

The trend in the Second Circuit has been to award attorneys' fees based on a percentage of the common fund. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (quoting *In re Parking Heaters, Antitrust Litig.*, 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019)); *Oleniak v. Time Warner Cable*, 2013 WL 12447094, at *8 (S.D.N.Y. Dec. 17, 2013) (Failla, J.) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'").

Courts in the Second Circuit have recognized that the percentage method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart*, 396 F.3d at 121; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund . . . aligns the interests of class counsel with those of the class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients . . . .").

- 4 -

4911-7273-6140.v1

Courts have also recognized that the percentage method avoids some of the pitfalls of the lodestar method (*see Goldberger*, 209 F.3d at 48-49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)), and "is consistent with and, indeed, is intended to mirror, practice in the private marketplace." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see also Payment Card Interchange*, 991 F. Supp. 2d at 440 ("The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . ."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) ("[T]he percentage method . . . is consistent with the system typically used by individual clients to compensate their attorneys.").

The text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports the use of the percentage-of-the-fund method. The PSLRA states: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have interpreted this provision of the PSLRA as indicating Congress' preference for the percentage method in common fund cases. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

In light of the foregoing, the Court should award attorneys' fees to Lead Counsel based on the percentage method.

### C. The Requested 33% Fee Is Consistent with Fee Awards in Common Fund Cases in Courts in the Second Circuit

In assessing the reasonableness of a fee award, the Supreme Court has recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). "'In tort suits,

- 5 -

an attorney might receive one-third of whatever amount the [Lead Plaintiff] recovers. In those cases, therefore, the fee is directly proportional to the recovery.'" *Blum v. Stenson*, 465 U.S. 886, 903 n* (1984).

Lead Counsel's request for attorneys' fees equal to 33% of the Settlement Amount is well within the range of percentage fees awarded by courts in the Second Circuit, as well as courts in this District, including this Court. *See, e.g.*, *Martinek v. Amtrust Fin. Servs.*, 2022 WL 16960903, at *1 (S.D.N.Y. Nov. 16, 2022) (Failla, J.) (awarding fee of 33-1/3% of $13 million settlement); *In re Jernigan Cap., Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 154 at 1-2 (S.D.N.Y May 29, 2025) (awarding 33-1/3% of $12 million settlement) (attached hereto as Exhibit B); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33-1/3% of $19.5 million settlement); *In re Chic. Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783 at *1 (S.D.N.Y. Aug. 5, 2022) (awarding fee of 33-1/3% of $44 million settlement); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding attorneys' fees of $6 million, plus interest, of $18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) (awarding 33-1/3% of $9 million settlement fund); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980 (S.D.N.Y. June 11, 2020) (awarding 33-1/3% of $18.5 million settlement); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *1, *14-*22 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of 33-1/3% of $7.5 million settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9, *11-*12 (S.D.N.Y. Nov. 9, 2015) (awarding attorneys' fees of 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *Aeropostale*, 2014 WL 1883494, at *20 (awarding attorneys' fees of 33% of $15 million settlement); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF 38, ¶19 (S.D.N.Y. June 10, 2013) (awarding attorneys' fees of 41% of $18.5 million settlement) (attached

- 6 -

4911-7273-6140.v1

hereto as Exhibit C); *Maley*, 186 F. Supp. 2d at 370 (awarding attorneys' fees of 33-1/3% of $11.5 million settlement and finding requested fees fell "comfortably within the range of fees typically awarded in securities class actions"); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*, 2022 WL 3127633, at *4 (E.D.N.Y. Apr. 12, 2022) (awarding attorneys' fees of one-third of $10 million as "reasonable and consistent with awards in similar cases in this Circuit"); *Oleniak*, 2013 WL 1244709, at *27 (Failla, J.) ("Class Counsel's request for one-third of the Qualified Settlement Fund, or the Maximum Settlement Amount . . . , is reasonable and 'consistent with the norms of class litigation in this Circuit.'"); *In re Akari Therapeutics PLC Sec. Litig.*, No. 1:17-cv-03577 (KPF), ECF 24, ¶1(S.D.N.Y. Nov. 28, 2018) (awarding one-third of the Settlement Fund) (attached hereto as Exhibit A).[3]

### D. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Attorneys' Fees

Courts may use the value of services on an hourly basis or lodestar as a "'cross check,'" *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). The lodestar method involves a two-part analysis,

> first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court

---

[3]     *See also Kohari v. Met-Life Grp.*, 2025 WL 100898, at *11 (S.D.N.Y. Jan. 15, 2025) (awarding attorneys' fees of 33-1/3%); *McIntosh v. Katapult Holdings*, 2024 WL 5118192, at *1 (S.D.N.Y. Dec. 13, 2024) (awarding attorneys' fees of 33-1/3%); *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) ("Class counsel's request for one-third of the gross settlement fund is reasonable within this circuit."); *Noom*, 2022 WL 2705354, at *10 ("A fee equal to one-third of a settlement fund is routinely approved in this Circuit."); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding attorneys' fees of 33-1/3% of $31.9 million settlement); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (awarding attorneys' fees of 33% of the approximately $7.7 million settlement and finding award "well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

4911-7273-6140.v1

> adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.

*Aeropostale*, 2014 WL 1883494, at *13. "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the[ir] lodestar."). Here, the lodestar method confirms the reasonableness of Lead Counsel's fee request.

In the aggregate, Lead Counsel has spent over 1,930 hours of attorney and paraprofessional time, amounting to $1,440,804.50 in lodestar based on Lead Counsel's current hourly rates in contingent cases, which are consistent with rates charged by firms performing comparable work on behalf of plaintiffs and defendants.[4] Lead Counsel's request for attorneys' fees equal to 33% of the Settlement Amount represents a lodestar multiplier of 2.86, which is well within the range of multipliers approved in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33% "reasonable" based on cross-

---

[4]    "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the . . . inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Jenkins*, 491 U.S. at 283-84; *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1988) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

4911-7273-6140.v1

check multiplier of 4.75); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases).[5]  Moreover, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for [the] time that they will be required to spend administering the settlement going forward, also supports their fee request."  *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, ¶49 (S.D.N.Y. Aug. 24, 2017); *Facebook*, 2015 WL 6971424, at *10.

### E. The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit identified several factors that district courts should consider in assessing the reasonableness of a fee award in common fund cases, under either the multiplier or lodestar methods.  These factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *See Goldberger*, 209 F.3d at 50.  Each of these factors supports the reasonableness of the fee request here.

#### 1. The Time and Labor Expended by Counsel

Lead Counsel devoted significant time and resources to the prosecution of this Action.  Over the course of more than two years of litigation, Lead Counsel and its paraprofessionals devoted more than 1,930 hours to the prosecution of this Action, on a wholly contingent basis, with no guarantee of compensation.  As detailed in the Wood Declaration, which is being submitted herewith, Lead Counsel performed significant work throughout the Litigation.  Lead Counsel, among other things:

---

5    *See also Colgate-Palmolive*, 36 F. Supp. 3d at 353 (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable"); *Guevoura*, 2019 WL 6889901, at *18 ("[M]ultipliers of between three and four times . . . have been routinely awarded in this Circuit.").

- 9 -

- conducted an extensive legal and factual investigation and drafted the amended complaint;

- opposed and defeated in part Defendants' motion to dismiss;

- moved for class certification and responded to Defendants' discovery requests;

- engaged in discovery, including serving document requests, interrogatories and requests for admissions on Defendants, serving subpoenas on 11 third parties, and participating in numerous discovery conferences concerning the scope of discovery and the production of documents;

- reviewed and analyzed over 20,000 pages of documents;

- consulted with a financial expert regarding loss causation and damages;

- participated in a full-day mediation session overseen by an experienced mediator, Miles Ruthberg of Phillips ADR Enterprises;

- worked with a damages expert to develop a Plan of Allocation that treats the Lead Plaintiff and the other Class Members fairly and equally;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting materials submitted therewith;

- worked with the Court appointed Claims Administrator to provide notice to the Class; and

- drafted the final approval motion and supporting materials submitted therewith.

*See generally* Wood Decl. Moreover, Lead Counsel will continue to provide services to the Class in connection with the implementation and administration of the Settlement, including responding to Class Members' inquiries, helping with the completion and submission of Proof of Claim and Release forms, overseeing the claims administration process, and working with the Claims Administrator to resolve any issues that may arise. Lead Counsel's provision of these additional services further supports the reasonableness of the requested fee. *See Facebook*, 2015 WL 6971424, at \*10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will

- 10 -

4911-7273-6140.v1

necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."); *see also McIntosh*, 2024 WL 5118192, at \*12 (noting that counsel "will incur additional time in connection with implementation of the Settlement").

In sum, Lead Counsel's commitment of over 1,930 hours to the prosecution of this Action and procurement of a $12.5 million cash recovery strongly supports a finding that the 33% fee request is reasonable.

### 2.    The Magnitude and Complexity of the Litigation

Courts in this District recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *see also Guevoura*, 2019 WL 6889901, at \*5 (Securities class actions are by their very nature complicated, and courts in this Circuit have long recognized that securities class actions are "notably difficult and notoriously uncertain" to litigate.) (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.") (citation modified).  This Action was no different.

Lead Plaintiff's claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 involved complex, contested issues concerning, among other things, the elements of materiality, scienter, and loss causation.  Moreover, Defendants heavily disputed Lead Plaintiff's ability to prove damages, which would have been the subject of expert testimony and factual disputes.  As detailed in the Settlement Memorandum, navigating these contested and complex factual and legal issues required significant skill, diligence, and expertise from Lead Counsel to achieve the current Settlement.  Thus, this factor weighs in favor of the requested fee.  *See Aeropostale*, 2014 WL

- 11 -

1883494, at \*16 (finding second *Goldberger* factor favored settlement where case involved "difficult, complex, hotly disputed, and expert-intensive issues").

### 3.    The Risk of the Litigation

"Courts have held that this factor [*i.e.*, the risk of litigation] is often 'the most important *Goldberger* factor.'" *In re GSE Bonds*, 2020 WL 3250593, at \*4 (S.D.N.Y. June 16, 2020). Here, the risk of litigation was substantial, including because Lead Plaintiff pursued this case as a class action, on a contingency basis. *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*12 (S.D.N.Y. Nov. 30, 2021) ("'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'").

### a.    Contingent Nature of Lead Counsel's Representation

"The Second Circuit . . . recognize[s] that courts should consider the risks associated with . . . undertaking a case on a contingent fee basis." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*21 (S.D.N.Y. Mar. 24, 2014); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *Bank Note Holographics*, 127 F. Supp. 2d at 433 (finding it "appropriate to take [contingent-fee] risk into account in determining the appropriate fee"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Lead Counsel pursued this Action on a contingency basis, assuming significant risks without any guarantee of recovery. *See Guevoura*, 2019 WL 6889901, at \*19 ("Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no

- 12 -

guarantee of ever being compensated for their investment of such time and money."). The risk of no recovery in securities class actions, including this Action, is real. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *See Veeco*, 2007 WL 4115808, at *6.

Lead Counsel's assumption of the contingency-fee risk strongly supports the reasonableness of the requested fee. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.      Risk of Establishing Liability

Lead Plaintiff believes that there was evidentiary support for its claim that statements regarding DocGo's former CEO's educational background, DocGo's purported involvement in signing migrants up for New York State Medicaid, and a purported $4 billion contract with U.S. Customs and Border Patrol ("CBP") were materially false and misleading. More specifically, Lead Plaintiff alleged that DocGo and Capone falsely represented that Capone had earned a triple *summa cum laude* undergraduate degree from SUNY Potsdam and had earned a Masters of Computational Learning Theory from Clarkson University. Wood Decl., ¶21. Lead Plaintiff also alleged that Capone misled investors by telling them that: (i) DocGo had secured a five-year contract with CBP for over $4 billion to allow DocGo to treat asylum seekers after crossing the border; and (ii) DocGo had been working with UnitedHealthcare to sign up over 3,000 asylum seekers and counting onto New York State Medicaid. *Id.*, ¶22. Lead Plaintiff alleged that as a result of these material misrepresentations, the price of DocGo common stock was artificially inflated until the truth regarding Capone's educational background and the CBP and New York State Medicaid contracts was revealed, causing the Company's stock price to drop and damaging Class Members.

4911-7273-6140.v1

Nevertheless, Defendants disputed liability.  At summary judgment and trial, Defendants would have argued, as they did at the motion to dismiss stage, that the statements at issue were not materially false and misleading, and that they did not possess the requisite scienter for certain statements.  *See* Wood Decl., ¶¶25, 59; Settlement Memorandum at III.B.3.

### c.       Risk of Establishing Loss Causation and Damages

"Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *JPMorgan*, 2014 WL 1224666, at *11; *see also AOL*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").  This case is no exception.

Even if Lead Plaintiff established that the allegedly false and misleading statements were material and made with scienter, Defendants would have continued to vigorously attack Lead Plaintiff's ability to prove loss causation and establish damages.  *See* Wood Decl., ¶¶61-63, Settlement Memorandum at III.B.3.  Defendants would likely argue that a portion of the final drop in DocGo's stock price was caused by the revelation that the CBP contract was not as high as Capone claimed, and that claim was dismissed from the Complaint.  Wood Decl., ¶61.  Defendants would also likely assert that it was Capone's departure as CEO, not the revelation of his educational background, that was the sole cause of DocGo's stock price drop.  *Id.*  Defendants would also assert that Lead Plaintiff and the Class were only entitled to recover the portion of the stock price declines between September 10 and September 15, 2023, if any, that Lead Plaintiff could prove was attributable to the revelations about Capone's education and the New York State Medicaid issue, which may have been a small fraction of the stock price drop.  *Id.*, ¶62.  Defendants' success on any of these arguments posed significant risk to the Class's ability to obtain any recovery.

- 14 -

4911-7273-6140.v1

### 4.    The Quality of Representation Supports the Requested Fee

In assessing the quality of counsel's representation, courts consider, among other things, "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Lead Counsel is recognized as a leader in securities class actions and complex litigations. *See* accompanying Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Fee Decl."), Ex. D (firm résumé). Lead Counsel respectfully submits that this factor is best illustrated by the result achieved. In a case where liability and damages were heavily contested, Lead Counsel, through a high-level of skill, hard work, and determination, secured a $12.5 million cash recovery for the Class.

Courts also consider the quality of the adversary when evaluating counsel's performance. *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a fee award was that defendants were represented by "one of the country's largest law firms"). Lead Counsel was opposed in this Litigation by experienced and skilled defense counsel at Gibson, Dunn & Crutcher LLP and Finn Dixon & Herling LLP, who employed a number of defenses, arguments, and strategies in an attempt to obtain the dismissal of this case and were expected at class certification. In the face of this formidable opposition, Lead Counsel persisted and obtained an excellent result for the Class.

### 5.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July

- 15 -

21, 2020) (citation modified).  As discussed in detail in §II.C, *supra*, the requested fee of 33% of the Settlement Amount is well within the range of percentage fee awards that courts in this Circuit have awarded in comparable cases.  Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.      Public Policy Considerations

Public policy supports rewarding Lead Counsel for taking on the risk of pursuing this private securities class action.  *See Kohari*, 2025 WL 100898, at *12 ("Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis."); *McIntosh*, 2024 WL 5118192, at *12 (same); *Signet*, 2020 WL 4196468, at *21 ("A strong public policy concern exists for rewarding firms for bringing successful securities litigation."); *GSE*, 2020 WL 3250593, at *5 ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage future securities class actions").

### 7.      The Class's Reaction to the Fee Request Supports the Requested Fee

The Claims Administrator has disseminated a total of 13,280 Postcard Notices to potential Class Members and nominees.  *See* accompanying Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, ¶11.  The time to object to Lead Counsel's fee request expires on March 3, 2026.  To date, no Class Member has objected to the fee and expense amounts set forth in the Postcard Notice and Notice.  The Class's reaction supports a finding that the requested fee is fair and reasonable.  *See, e.g., Signet*, 2020 WL 4196468, at *21 ("The absence of

- 16 -

any objections to the requested attorneys' fees . . . supports a finding that the request is fair and reasonable.").[6]

### 8.    The Fee Request Is Supported by Lead Plaintiff

Lead Plaintiff, which has overseen Lead Counsel's litigation activities since the inception of the case, supports the fee request. *See* Khan Decl., ¶6. Lead Plaintiff's endorsement of Lead Counsel's fee request supports approval of the request. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request.").

All of these factors weigh in favor of Lead Counsel's fee request.

## III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THE ACTION

Lead Counsel respectfully requests an award of $183,676.18 in reasonable costs, charges, and expenses in connection with the prosecution of this Action. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (In a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation.") (citation modified); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

---

[6]    *Flag Telecom*, 2010 WL 4537550, at *29 ("If th[e] important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

4911-7273-6140.v1

clients, as long as they were incidental and necessary to the representation of those clients.") (citation modified).

Lead Counsel's expenses are consistent with the stage of the Action at the time the Settlement was reached, and include, for example, expert and consultant fees, document management costs, legal research costs, mediation fees, and filing fees. These fees are routinely charged and awarded in common fund cases. *See, e.g.*, *GSE*, 2020 WL 3250593, at *6 (awarding counsel for, among other things, expert-related expenses, copying costs, online research, and filing and service fees); *Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

The expenses incurred by Lead Counsel are described in detail in the accompanying Fee Decl. To date, there have been no objections to Lead Counsel's expense request.

## IV.    CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court grant its motion for an award of attorneys' fees of 33% of the Settlement Amount, payment of $183,676.18 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund.

DATED:  February 17, 2026          Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
CHRISTOPHER M. WOOD (admitted *pro hac vice*)


*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

- 18 -

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
ERIC I. NIEHAUS (admitted *pro hac vice*)
JOSEPH J. TULL (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
ericn@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel

- 19 -

4911-7273-6140.v1

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)</u>

I, Christopher M. Wood, hereby declare that this document contains 5,824 words, and complies with the word-count limitation provided by Local Rule 7.1(c).

DATED:  February 17, 2026

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

4911-7273-6140.v1